Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com

*Attorneys for Defendant Kevin Long*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHERYL TOMAC, an individual and trustee of the Tomac Trust, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> COLLIERS INTERNATIONAL GROUP, INC., et al., <br><br> Defendants. | DEFENDANT KEVIN LONG'S MOTION TO DISMISS <br><br><br> Civil No. 2:24-cv-00774-DBP <br><br> Chief Magistrate Judge Dustin B. Pead |

### RELIEF SOUGHT AND GROUNDS FOR THE RELIEF

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR7-1,

defendant Kevin G. Long ("Long") hereby moves the Court to dismiss with prejudice plaintiffs'

Second Amended Complaint [Dkt. 173] (the "SAC ") as to Long.  The grounds for the requested

relief are that (i) with respect to the First Cause of Action for violation of Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, plaintiffs fail

to satisfy the heightened pleading requirements under both Federal Civil Rule of Procedure Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including the requirement to plead with particularity facts demonstrating Long acted with the requisite state of mind, or "scienter"; (ii) the Second Cause of Action for control person liability fails as a matter of law where plaintiffs fail to (a) sufficiently plead actual control by Long over one or more alleged "primary violators" and (b) plead a primary violation that satisfies the heightened pleading requirements under Rule 9(b) and the PSLRA, including scienter by the alleged primary violator(s); and (iii) the remaining state law claims must be dismissed for lack of jurisdiction after the dismissal of the federal claims giving rise to federal question jurisdiction.

<u>INTRODUCTION</u>

This case involves eighteen (18) separately named plaintiffs, against nine (9) separate defendants, arising from no less than seventeen (17) separate transactions over an approximate nine (9) month period, in which plaintiffs acquired tenant-in-common interests ("TIC interests") in two (2) separate commercial real properties where the tenants on those properties ultimately defaulted in their rent obligations.  Consequently, because the plaintiffs' claims largely sound in fraud, and thus are governed by heightened pleading requirements, it is imperative that plaintiffs plead their claims with particularity to allow Long (and other defendants) to understand and have notice of what exactly is complained against him (and each defendant), so he can respond to the SAC intelligently rather than being forced to give general "denials."

Plaintiffs' SAC, however, largely constitutes a "group pleading" that impermissibly groups Long and the other defendants together, without distinguishing the basis for Long's individual alleged culpability or liability.  Moreover, the few allegations that are asserted

specifically against Long fail to explain how the alleged misrepresentations are false, the "who, what, when and where" of the alleged fraud, or facts from which "scienter" can be inferred. The SAC's causes of action against Long also constitute threadbare recitals of the elements of each claim, supported by mere conclusory statements. Thus, the facts set forth in support of those causes of action do not qualify as well-pleaded allegations. Likewise, for purposes of the "control person liability" claim under the Second Cause of Action, plaintiffs also fail to sufficiently plead a primary violation by any of the alleged "Liable Persons" or that Long had actual control over one or more of the alleged primary violators. Plaintiffs' control person liability claim therefore fails. Since the federal claims against Long must be dismissed as a matter of law, the remaining state law claims must be dismissed because the alleged basis for jurisdiction in this case – federal question jurisdiction – no longer exists.

ARGUMENT

"Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted." *IHC Health Servs., Inc. v. Tyco Integrated Sec., LLC*, No. 2:17-CV-00747-DN, 2018 WL 3429932, at *1 (D. Utah July 16, 2018) (citing *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). In addition, to withstand a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A complaint that merely alleges a "possible" or "conceivable" claim is insufficient. *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570); *see also Warnick*

*v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018). A plaintiff must allege sufficient factual matter

that shows he or she is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Although pleadings at the motion to dismiss stage are liberally construed, before

accepting a plaintiff's allegations as true, "they must be <u>well-pleaded</u> allegations." *Warnick,* 895

F.3d at 751 (emphasis in original). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not count as well-pleaded facts." *Id.* (internal

quotations omitted) (quoting *Iqbal*, 556 U.S. at 678). Here, plaintiffs fail to assert allegations

giving rise to a cognizable federal claim against Long, and thus this Motion should be granted.

I.    <u>PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE
      EXCHANGE ACT</u>.

    A.    <u>Pleading Standards under Rule 9(b) and the PSLRA</u>.

Under Federal Rule of Civil Procedure 9(b), when "alleging fraud or mistake, a party <u>must

state with particularity</u> the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b)

(2024) (emphasis added). Rule 9(b) applies to <u>all</u> claims that are "based on the same core

allegations of deception, false misrepresentations, and fraudulent conduct." *Security Sys., Inc. v.

Alder Holdings, LLC*, 421 F.Supp.3d 1186, 1194 (D. Utah 2019). "To satisfy Rule 9(b)'s

heightened pleading standard, among other things, a pleading must 'set forth the time, place and

contents of the false representation, the identity of the party making the false statements and the

consequences thereof.'" *Combs v. SafeMoon LLC*, Case No. 2:22-cv-00642-DBB-JCB, 2024

WL 1347409, *4 (D. Utah March 29, 2024), *citing Schwartz v. Celestial Seasonings, Inc.*, 124

F.3d 1246, 1252 (10th Cir. 1997).

In two keyways, Congress heightened the pleading standard above that provided for in

Rule 9(b) for federal securities fraud claims with the passage of the PSLRA. First, the PSLRA

increased the burden on the pleading of the first element of a securities fraud claim – that the

defendant made an untrue or misleading statement of material fact, or failed to state a material

fact necessary to make statements made not misleading.  *See Adams v. Kinder-Morgan, Inc.*, 340

F.3d 1083, 1095 (10th Cir. 2003).  For this element, the PSLRA requires that:

> the Complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1) (2024).

Second, regarding the pleading of the "scienter" or intent to defraud element, the PSLRA

superseded this part of Rule (9)(b) by imposing a more stringent rule of pleading:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, <u>with respect to each act or omission alleged to violate this chapter</u>, state with particularity facts giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind.

*See Adams,* 340 F.3d at 1096, *citing* 15 U.S.C. § 78u-4(b)(1) (2024) (emphasis added).

Regarding the scienter element, the PSLRA requires scienter to be found with respect to

<u>each</u> defendant and with respect to <u>each</u> alleged violation.  *See TDC Lending LLC v. Priv. Cap.*

*Grp.*, 340 F.Supp.3d 1218, 1227 (D. Utah 2018).  Further, the required "strong inference" of

scienter must be more than merely reasonable or permissible – "it must be cogent, thus strong in

light of other explanations.  A complaint will survive only if a reasonable person would deem the

inference of scienter cogent and at least as compelling as any plausible opposing inference one

could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

310, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).  To determine whether the plaintiff has alleged

facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible,

nonculpable explanations for the defendant's conduct. *See id.* at 323-24. Additionally, "allegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.' Generalized imputations of knowledge do not suffice, regardless of defendants' positions within the company." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1263-64 (10th Cir. 2001) (citations omitted).

    B.   <u>Plaintiffs Fail to Satisfy the Pleading Standards under Rule 9(b) and the PSLRA.</u>

    The First Cause of Action for violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, should be dismissed in its entirety with prejudice because plaintiffs have failed to allege well-pled facts to establish any violation by Long. To state a claim under Section 10(b)/Rule 10b-5, a plaintiff must plead: "(1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance." *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020). Here, plaintiffs fail to adequately plead facts satisfying the heightened pleading standards described above, or that Long acted with scienter.

    For example, paragraphs 58 through 84 of the SAC purport to allege a litany of misrepresentations and/or omissions against defendants. Paragraphs 59, 61, 67, 68, 69, 70, and 71, however, are alleged collectively against all "Defendants," a practice known as "group

pleading."[1]  Those allegations do not set forth the time or place of such misrepresentations, and

"group pleading" against "Defendants" is impermissible under Rule 9(b) and the PSLRA.  *See*

*TDC Lending LLC v. Priv. Cap. Grp.*, 340 F. Supp. 3d 1218, 1227 (D. Utah 2018) ("Group

pleading, in contrast, allows a plaintiff to group defendants together without distinguishing the

bases for each defendant's culpability.  This is incompatible with the purpose of the PSLRA….").

Any claim of securities fraud for these alleged misrepresentations and/or omissions, therefore,

must be dismissed.

In other instances, such as paragraphs 58, 72 and 73, plaintiffs specifically name four or

more individuals, as well as "others" or "other agents," as making the same misrepresentation.

Substantively, however, this is no different than impermissible group pleading.  It alleges the

same misrepresentation, allegedly made by <u>all</u> (or nearly all) defendants, to <u>all</u> plaintiffs,

presumably <u>at the same time</u>.  This functionally is no different than simply alleging "Defendants"

made the misrepresentation, and thus does not satisfy the heightened pleading requirements.[2]

The misrepresentations asserted specifically against Long are sparse and insufficiently

pled.  For example, paragraph 72 alleges in conclusory fashion that <u>all</u> of "Kevin Long,

Rutherford, Smith, Machlis and the other Agents lied" to <u>all</u> plaintiffs (about the payment of rent

by NGX).  In addition to constituting impermissible group pleading, that paragraph does not

satisfy the "time and place" requirements of Rule 9(b), and does not satisfy the scienter

---

[1] Paragraphs 1-4 of the "Introduction and Background," as well as paragraphs 49, 50 and 57, likewise are nothing more than "group pleading" allegations.
[2] To allow this practice would allow claimants to circumvent the PSLRA and Rule 9(b)'s heightened pleading requirements, and the law prohibiting "group pleading," by simply listing by name all (or almost all) defendants, together with "and others," "and other Defendants," or "and other agents."  Moreover, unless plaintiffs are alleging <u>all</u> such defendants made the <u>exact</u> same misrepresentation <u>at the same time</u> to <u>all plaintiffs</u>, it fails Rule 9(b) and the PSLRA's pleading requirements.

requirements as to Long (or the other individuals listed). Similarly, paragraph 73 alleges Long (as well as Smith and other unidentified agents of Millcreek, Millrock and Colliers) misrepresented that "the South Jordan had or was about to get a certificate of occupancy." No facts are alleged specifying <u>when</u> or to <u>whom</u> Long allegedly made this misrepresentation. Without such specific facts, Long has no way of knowing how to respond to the allegation. Additionally, the timing of the alleged misrepresentation is important in this case because a certificate of occupancy was in fact issued for the South Jordan property, rendering the alleged "misrepresentation" likely true. [See Certificate of Occupancy, attached as Exhibit "A."][3]

Paragraph 81 appears to be the only attempt by plaintiffs to satisfy the heightened pleading requirements under Rule 9(b) and the PSLRA as to Long (and other Defendants), but the allegations contained therein are also deficient and fail. Only three of the alleged communications/misrepresentations in paragraph 81 are attributed to Long. Plaintiffs appear to allege that Long emailed plaintiff James Tucker on August 23, 2023, and in the email stated that the lease had been "approved" by the tenant Neuragenex or "NGX." No explanation is provided as to why this statement was false or facts alleged from which it can be inferred that Long knew this was false, as required. In fact, Neuragenex had previously signed a lease on the South Jordan property in January 2023 – 8 months prior to this alleged misrepresentation. [*See* Lease Agreement, dated January 31, 2023, attached as Exhibit "B."]

---

[3] On a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and other documents "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Here, plaintiffs make specific reference to the Certificate of Occupancy.

Next, non-party Thom Belchak appears to allege that, by email dated October 10, 2023, Long made one or more representations, including "6.5 NNN," or that NGX is a great tenant that was paying rent and occupying the property. Plaintiffs list three separate representations that were allegedly made by Long, defendant Scott Rutherford, and/or non-party Mike Bersie, but it is unclear whether they claim all three individuals made all three alleged misrepresentations, thereby prejudicing Long's ability to respond to the allegations. Regardless, no effort is made to demonstrate the alleged falsity of the statements, or that Long knew any of the representations were false, including that any opinion he had that NGX was a "great tenant" was demonstrably false at that time.

Lastly, plaintiff Janice Young claims that Long and defendant Brent Smith were "copied" on an email regarding Young's Purchase & Sale Agreement, which supposedly was "premised" on an offering memorandum that allegedly had some uncorrected errors in it. This is not a misrepresentation by Long (or Smith). There is no allegation that the email that Long was copied on contained any misrepresentation, or that Long somehow made a misrepresentation in connection with that email. Any alleged misrepresentation would be in the offering memorandum, but plaintiffs do not identify or specify those misrepresentations. In short, none of Tucker, Belchak, or Young's specific allegations of misrepresentations by Long come close to satisfying the pleading requirements for their securities fraud claims against Long. Accordingly, the First Cause of Action must be dismissed as to Long.[4]

---

[4] Importantly, the specific allegations asserted against Long in paragraph 81 are only asserted by plaintiffs Herbert (as assignee of Tucker), Belchak and Young. Since no other plaintiffs have identified specific misrepresentations allegedly made by Long to them, there can be no dispute that the First Cause of Action must be dismissed as to those plaintiffs.

II.   THE SECOND CAUSE OF ACTION -- FOR CONTROL PERSON LIABILITY -- MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST LONG.

Under the Second Cause of Action, plaintiffs purport to assert a control person liability claim arising under Section 20(a) of the Exchange Act (15 U.S.C. § 78t (a)) against Long (and defendants Adam Long and Lew Cramer).  To state a prima facie case of control person liability, plaintiffs must establish (1) a primary violation of the securities laws and (2) "control" over the primary violator by the alleged controlling person.  *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998) (citation omitted).  The Tenth Circuit has cited with approval SEC Rule 405's definition of "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  *Id.*  Under the Second Cause of Action, Millcreek, Millrock and Colliers are alleged to have violated Section 10(b)/Rule 10b-5, as alleged under the First Cause of Action.  The control person liability claim fails as to Long, however, because plaintiffs do not allege any primary violation that satisfies Rule 9(b) and the PSLRA's heightened pleading requirements, and no facts are alleged establishing Long "controlled" Colliers or Millrock.

A.   No Primary Violation by Millrock or Control of Millrock by Long.

Any claim of control person liability arising against Long for any acts or omissions of Millrock fails because plaintiffs fail to sufficiently allege any violation of securities laws by Millrock, or that Long "controlled" Millrock.  Regarding any alleged "control" over Millrock, the only allegations in the SAC that appear to relate to control of Millrock by Long are found in paragraph 23, which states that Long was an owner (among others) and shareholder of Millrock. Long's ownership interest in Millrock, through a limited liability company, or alleged status as a

10

"shareholder," is insufficient by itself under Tenth Circuit law to establish "control" for purposes of imposing Section 20 liability.  *See Maher,* 144 F.3d at 1306 (concluding that an alleged owner's interest in a corporation, even when combined with familial ties to an officer or employee of the corporation, did not confer control person status).  Consequently, any control person liability claim against Long purportedly arising from a primary violation of securities law by Millrock fails and must be dismissed.

Moreover, the SAC fails to sufficiently set forth specific allegations establishing any violation of Section 10(b)/Rule 10-5 by Millrock for purposes of the First Cause of Action.  The only misrepresentation in which Millrock is specifically identified is found in paragraph 73, which sets forth a "group pleading" allegation that "Kevin Long, Smith and other agents of Millcreek, Millrock and Colliers, also misrepresented that the South Jordan property had or was about to get a certificate of occupancy."  This single sentence falls woefully short of sufficiently pleading a securities fraud claim against Millrock.  The allegation does not set forth the time or place of this alleged misrepresentation, or to whom it was even made.  It does not even identify the agent or representative of Millrock who made the alleged misrepresentation.  Finally, no facts are alleged satisfying the scienter requirements under the PSLRA as to Millrock.  No control person liability can therefore arise against Long for any alleged violation by Millrock of the securities laws.

B.    No Sufficiently Pled Primary Violation by Millcreek.

Any claim of control person liability arising against Long for any acts or omissions of Millcreek fails because plaintiffs fail to sufficiently allege any violation of securities laws by Millcreek.  Three paragraphs in the SAC appear to relate to alleged misrepresentations by

Millcreek (as opposed to specifically identified "agents" of Millcreek), but none of them satisfy the heightened pleading requirements under Rule 9(b) and the PSLRA.  Paragraph 59 references an isolated statement taken from Millcreek's website stating:  "[r]est assured that our portfolio is rock solid.  We rigorously vet every property that we offer."  These statements all constitute "puffery" and are not actionable.  *See City of Austin Police Retirement System v. Kinross Gold Corp.*, 957 F.Supp.2d 277, 297 (S.D.N.Y. 2013) (mining exploration company's statements as to the extent and quality of due diligence it performed in anticipation of acquisition of West African gold mining operation were mere puffery, and as such not actionable as securities fraud); *City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1064 (N.D. Cal 2012) (statements technology company made in investment conference calls regarding its "strong partners" and "robust" product portfolio were merely expressions of confidence in the company's outlook, and, as puffery, not actionable).  Further, plaintiffs do not explain "when" these representations were made to them and/or which, if any, of them reviewed these representations.[5] Finally, no allegations give rise to a "strong inference" that Millcreek acted with an intent to defraud or recklessness in making those statements on its website.

Paragraph 65 purports to state information in different versions of the "offering memorandum" for the South Jordan property.  No explanation is given for why the statements are misleading, other than changes made to the total expected purchase price for all TIC interests in the property, projected annual rent in year one, square footage, and the description of

---

[5] The website excerpt contains general marketing information about 1031 exchanges and TIC ownership that existed two to three years prior to any purchase by plaintiffs of their respective TIC interests.  It is not (and plaintiffs do not allege otherwise) specific to any property such as the South Jordan or Lehi properties for which Millcreek marketed TIC interests.

Neuragenex.  Moreover, the fact that updates and revisions were allegedly provided in the offering memorandum during a one-year period demonstrates no scienter exists for any of these alleged "misrepresentations," and indeed plaintiffs provide no allegations giving rise to a strong inference of fraud on Millcreek's part in connection with these statements.

Paragraph 73 alleges "Long, Smith and other agents of Millcreek" misrepresented that the "South Jordan property had or was about to get a certificate of occupancy."  For the same reasons this allegation does not satisfy the pleading requirements for Millrock, it also fails as to Millcreek.  The allegation does not set forth the time or place of this alleged misrepresentation, or to whom it was made.  It does not even identify the agent or representative of Millcreek who made the alleged misrepresentation.  Finally, no facts are alleged satisfying the scienter requirements under the PSLRA as to Millcreek.

In the Second Cause of Action, while plaintiffs identify Millcreek (and Millrock and Colliers) as a "Liable Person," or primary violator, they do not identify in the claim any specific agent of Millcreek for which they claim Long is liable as a control person.  In the SAC, plaintiffs identify Brian Martinez, Mike Bersie, Michael Cruz, Scott Rutherford/Equity Summit Group and Nicholas Ledbetter as agents of Millcreek responsible for selling TIC interests.  [SAC, ¶¶ 28-30, 41.]  Even if the Second Cause of Action were construed to include these agents as "Liable Persons" or primary violators for control person liability purposes against Long, the claim would still fail.

Paragraphs 58 and 59 allege that Rutheford, Smith, Martinez, Bersie, Cruz and Taylor made certain misrepresentations about leases in place in the TIC properties with tenants (¶ 58) and the "puffery" statements about Millcreek's portfolio and due diligence.  For reasons

explained above, these statements are insufficient because (i) there is no explanation of their falsity, (ii) there are no facts alleged identifying who made which representation <u>to whom</u> and <u>when,</u> (iii) the bare facts that are alleged constitute mere "group pleading," and (iv) "puffery" is not actionable.  Most of the alleged "agent misrepresentations" are found in paragraph 81.  These alleged "misrepresentations" consist almost entirely of short blurbs and incomplete sentences from either alleged calls or emails with plaintiffs.  Again, for most or all of these alleged "misrepresentations," no explanation of their falsity is provided.  Indeed, some are plainly opinions or "puffery" like statements that NGX was a "great" tenant.

Even if the allegations in paragraphs 58, 59, or 81 satisfied the heightened pleading requirements by satisfactorily setting forth "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof,'" *Combs,* 2024 WL 1347409 at *4, as well as explaining how <u>each</u> alleged misrepresentation is misleading (which they do not), the allegations still fail for the simple reason that plaintiffs fail to allege facts establishing that any of these "agents" acted with scienter.  The SAC is devoid of any allegations supporting a strong inference that any of the "agents" knew or were reckless in making the alleged misrepresentations.

Paragraph 58 simply asserts in conclusory fashion that "Rutherford, Martinez, Taylor, Bersie, Cruz and others made these representations [regarding guaranteed leases on properties with operating tenants] to plaintiffs in 2023 <u>and in each instance they knew the representations were false.</u>"  [SAC ¶ 58 (emphasis added).]  Conclusory allegations of scienter, such as these, do not satisfy the PSLRA's heightened pleading requirements.  *See In re Gold Resource Corporation Securities Litigation*, 776 F.3d 1103, 1109 (10th Cir. 2015) (it is not enough for a

plaintiff to allege generally that the defendant acted with scienter) *citing In re Level 3 Communications, Inc. Securities Litigation*, 667 F.3d 1331, 1333 (10th Cir. 2012).

Moreover, for paragraphs 59 and 81, plaintiffs do not even make bald, conclusory allegations that these "agents" acted with the requisite state of mind.  In fact, they do not make any factual allegations from which a strong inference could arise that each agent knew that each of the statements was untrue or misleading, and that they would in fact mislead the plaintiffs.[6]  In the absence of facts alleged from which a strong inference of an intent to defraud by these "agents" could arise, any control person liability claim against Long on the basis of any alleged primary violations by these individuals of Section 10(b)/Rule 10b-5 fails as a matter of law and must be dismissed.  *See City of Philadelphia,* 264 F.3d at 1271 (concluding control person liability claims were properly dismissed where primary violation claims were properly dismissed).

C.   No Primary Violation by Colliers or Control of Colliers by Long.

Any claim of control person liability arising against Long for any acts or omissions of Colliers fails because plaintiffs fail to sufficiently allege any violation of securities laws by Colliers, or that Long "controlled" Colliers.  Regarding any alleged "control" over Colliers, the only allegations in the SAC that appear to relate to control of Colliers by Long are found in paragraph 23, which states that Long was "an employee and agent of Colliers, serving as Senior Vice President of Colliers' Utah division."  [SAC ¶ 23.]  Any status of Long as an employee or agent of Colliers does not, by itself, constitute "control" or "the possession, direct or indirect, of

---

[6] Any attempt to hold Long liable as a control person for any alleged primary violations by Spencer Taylor, Mike Bersie, Michael Cruz, or Nicholas Ledbetter is curious given plaintiffs are not proceeding with any securities fraud claims against these individuals.

the power to direct or cause the direction of the management and policies of" Colliers.  Likewise, Long's alleged status at the time as a vice president <u>of a division</u> of Colliers (and not the broader corporation), without more, does not constitute "control" for purposes of Section 20 control person liability.  *See e.g. Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1109 (10th Cir. 2003) ("A high-ranking position within the corporation, however, standing alone, is unlikely to satisfy the "control" element of a control-person claim, unless the circumstance of the defendant's position and the nature of the underlying violation would lead to an inference that the person had control.").  Indeed, under Tenth Circuit precedent, a person's status as a director of a corporation (which Long never served as, or is alleged to have served as, for Colliers) is not, *ipso facto,* a control person.  *See id.* at 1108.  Any control person liability claim against Long for alleged primary violations of securities laws by Colliers, therefore, fails and must be dismissed.

Further, even if the "control" element were satisfied solely by Long's status as a vice president of a division of Colliers (and it is not), plaintiffs fail to adequately plead any primary violation of securities laws by Colliers.  Plaintiffs identify no specific misrepresentations by Colliers; rather, they appear to rely on the same alleged misrepresentations by the same "agents" as alleged against Millcreek (i.e., Martinez, Rutherford, Cruz, Taylor, Bersie, etc.).  As explained in Section II.B. above, however, plaintiffs fail to adequately plead any primary violation of securities laws by these individuals, including failing to sufficiently plead any misrepresentations or scienter on their part.  Any claim for control person liability against Long for alleged primary violations by Colliers (through its alleged agents) must also be dismissed.

In sum, plaintiffs fail to sufficiently allege control by Long over Millrock or Colliers, and they fail to sufficiently allege any primary violations of the securities laws by Millrock,

Millcreek and Colliers.  The Second Cause of Action must therefore be dismissed as to Long.  *See City of Philadelphia,* 264 F.3d at 1271.

III.    THE REMAINING STATE LAW CLAIMS MUST BE DISMISSED.

The stated basis for this Court's exercise of jurisdiction in this matter is 28 U.S.C. § 1331, or "federal question" jurisdiction.  [SAC, ¶¶ 32-33.]  The only federal claims asserted in this matter are the First and Second Causes of Action.  For the reasons explained above in Sections I and II, both of these causes of action must be dismissed as to Long.  Upon dismissal of these federal claims, the Court must dismiss the remaining state law claims as well.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  Accordingly, the entire SAC, and all causes of action asserted therein against Long, must be dismissed.

CONCLUSION

For the foregoing reasons, plaintiffs' Second Amended Complaint and this lawsuit must be dismissed.

DATED this 31st day of October, 2025.

PARR BROWN GEE & LOVELESS


By: _/s/ Rodger M. Burge_
    Terry E. Welch
    Bentley J. Tolk
    Rodger M. Burge
    Attorneys for Defendant Kevin Long

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of October, 2025 a true and correct copy of the

foregoing DEFENDANT KEVIN LONG'S MOTION TO DISMISS was served via electronic

service on all counsel of record.

/s/ Rodger M. Burge