DocuSign Envelope ID: EC1B34A1-E9B3-4D7C-A910-CF23953FFA1D

# LEASE AGREEMENT

## (Single Tenant -Build-to-Suit)

## BY AND BETWEEN

## 13 Investments, LLC ("LANDLORD")

## AND

## Neuragenex Treatment Centers, LLC ("TENANT")

## FOR SPACE AT 3583 WEST 9800 SOUTH, SUITES 102 AND 202

## SOUTH JORDAN, UT 84095

## Dated: JANUARY 31, 2023

2277 Fort Union Blvd., Salt Lake City, UT

# TABLE OF CONTENTS

Page

1. Demise; Premises ............................................................................. 1

2. Term and Delivery of Premises. ..................................................... 1

3. Rent ................................................................................................. 2

4. Renewals ......................................................................................... 5

5. Use of Premises .............................................................................. 5

6. Assignment/Subletting ................................................................... 6

7. Operating Expenses and Utilities ................................................... 7

8. Landlord's Work ............................................................................. 10

9. Trade Fixtures and Signage .......................................................... 10

10. Tenant Alterations ......................................................................... 11

11. Environmental ................................................................................ 12

12. Damage to Premises by Fire or Casualty ...................................... 14

13. Eminent Domain. ........................................................................... 15

14. Right of Entry by Landlord ............................................................. 16

15. Indemnity ....................................................................................... 16

16. Default and Remedies. .................................................................. 17

17. Insurance ....................................................................................... 21

18. Tenant's Maintenance Responsibilities ......................................... 24

19. Brokers .......................................................................................... 25

20. Compliance with Laws ................................................................... 25

21. Liens .............................................................................................. 26

22. Tenant to Subordinate ................................................................... 27

23. Quiet Enjoyment ............................................................................ 28

2277 Fort Union Blvd., Salt Lake City, UT

| 24. | Memorandum of Lease | 28 |
|-----|---------------------|----|
| 25. | Notices | 28 |
| 26. | Estoppel Certificate | 28 |
| 27. | Landlord's Sale of the Building | 29 |
| 28. | Landlord's Solar Lease and Charging Station | 29 |
| 29. | Intentionally Deleted | 25 |
| 30. | Landlord's Liability | 30 |
| 31. | Surrender of Premises | 31 |
| 32. | Holding Over | 31 |
| 33. | Binding Effect | 32 |
| 34. | Severability | 32 |
| 35. | Applicable Law | 32 |
| 36. | Force Majeure | 32 |
| 37. | Complete Agreement | 32 |
| 38. | Counterparts | 32 |
| 39. | Incorporation of Exhibits and Schedules | 33 |
| 40. | Guaranty | 33 |
| 41. | Authority. | 33 |
| 42. | No Merger of Title | 33 |
| 43. | Waiver of Redemption. | 33 |
| 44. | No Waiver | 33 |
| 45. | Acquisition Contingency | 34 |
| 46. | Costs of Enforcement | 34 |

2277 Fort Union Blvd., Salt Lake City, UT

## EXHIBITS AND SCHEDULES

EXHIBIT A    -    LEGAL DESCRIPTION

EXHIBIT B    -    BUILDING SITE PLAN

EXHIBIT C    -    FORM OF COMMENCEMENT DATE MEMORANDUM

EXHIBIT D    -    FORM OF SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

EXHIBIT E    -    FORM OF ESTOPPEL CERTIFICATE

EXHIBIT F    -    THE SCOPE OF WORK

EXHIBIT G         FORM OF MEMORANDUM OF LEASE

EXHIBIT H    -    FORM OF GUARANTY

2277 Fort Union Blvd., Salt Lake City, UT

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

## DATA SHEET

Landlord:
13 Investments, LLC, a Utah limited partnership

Address of Landlord:
c/o 13 Investments, LLC
7613 S Prospector Dr. Salt Lake City UT 84121
Attn: Mark Machlis

With a copy to: Mark@greenivyrealty.com

Address for Payment of Rent:
c/o 13 Investments, LLC
7613 S Prospector Dr. Salt Lake City UT 84121 Attn:
Mark Machlis

Tenant:
Neuragenex  Treatment Centers, LLC

Address of Tenant:
4140 E Baseline Road, Ste 101
Mesa, AZ 85206

Premises Address:
3583 WEST 9800 SOUTH SUITES 102 AND 202
South Jordan, UT

Minimum Rent:
See Section 3

Operating Expenses:
Tenant to pay 100%

Term:
Twenty (20) years with two (2) separate renewal
options for five (5) years each

The foregoing Data Sheet Information is incorporated into and made a part of the Lease.  If any conflict exists between the Data Sheet information and the Lease, then the Lease shall control.

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

## LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this "Lease"), made and entered into as of October 24th, 2022 (the "Effective Date") by and between 13 Investments LLC, a Utah limited partnership ("Landlord"), and Neuragenex Treatment Centers, LLC , an Arizona LLC ("Tenant").

## W I T N E S S E T H :

**WHEREAS**, Landlord has entered into, or concurrently herewith will enter into, a purchase agreement (the "Purchase Agreement") to acquire that certain real property located at  3583 WEST 9800 SOUTH,SUITES 102 AND 202, SOUTH JORDAN, UT 84095 (the "Property"), as more particularly described on Exhibit A, together with all improvements thereon and appurtenant rights thereto including, without limitation, parking areas, easements, declarations and rights of way; and

**WHEREAS**, subject to Landlord's acquisition of the Property (the "Acquisition"), Landlord desires to demise, lease and rent unto Tenant, and Tenant desires to rent and lease from Landlord the Property, together with a building consisting of approximately 5904 square feet (the "Building") and all improvements belonging to Landlord thereon and appurtenant rights thereto including, without limitation, parking areas, easements, declarations and rights of way as shown on the site plan attached as Exhibit B; and

**WHEREAS** Tenant shall lease and occupy the Property and Building (collectively, the "Premises"); and

**WHEREAS** Landlord shall complete all of Landlord's Work (as defined in Section 9) in accordance with the terms of the Scope of Work attached as Exhibit F (the "Scope of Work").

**NOW, THEREFORE,** for and in consideration of the mutual covenants, promises and agreements herein contained, Landlord does hereby demise, lease and rent unto Tenant and Tenant does hereby rent and lease from Landlord the Premises, under and pursuant to the following terms and conditions:

1.    Demise; Premises.  Landlord hereby leases to Tenant, and Tenant hereby hires from Landlord, the Premises and all easements and appurtenances related thereto, for the rents, covenants and conditions (including limitations, restrictions and reservations) hereinafter provided.

2.    Term and Delivery of Premises.

2.1    **Term**.  The term of this Lease shall be for twenty (20) years (the "Term") and shall commence upon the earlier to occur of the following two events (the "Commencement Date"): (a) Landlord's substantial completion of the Improvements as defined in Section 13(a) hereof) in accordance with the Scope of Work (as defined in

2277 Fort Union Blvd., Salt Lake City, UT

Section 8 hereof) ("Landlord's Work") and Landlord's receipt of a certificate of occupancy (or equivalent) for the Premises; or (b) the date upon which Tenant opens to the public for business within the Premises. The expiration date of the Term shall be the last day of the 240th month following the Commencement Date (the "Termination Date"), unless the Term is renewed in which event the Termination Date shall extend to the end of such exercised renewal period(s). Each full 12 month period beginning on the first day of the month in which the Commencement Date occurs or any anniversary thereof shall be called a "Lease Year." Upon determination of the Commencement Date, Landlord and Tenant shall execute a Commencement Date Memorandum in the form attached as Exhibit C.

### 2.2    **Actual Possession Date; Delay in Delivery**.

(a)    Landlord shall deliver possession of the Premises to Tenant upon "substantial completion" (as such phrase is defined in the Scope of Work) of Landlord's Work. The earlier of (i) the date on which Landlord actually delivers possession of the Premises to Tenant with all of Landlord's Work substantially completed; or (ii) the date Landlord's Work would have been substantially complete but for Tenant Delays, as defined below is the "Actual Possession Date".

(b)    If for any reason Landlord fails to deliver or offer to deliver physical possession of the Premises to Tenant, this Lease shall not be void or voidable, nor shall Landlord be liable to Tenant for any loss or damage resulting from the failure to deliver possession, except as expressly provided herein. Tenant's taking possession of the Premises, or any portion thereof shall be conclusive evidence that (i) Landlord's Work is complete, and (ii) the Premises are in the condition required by this Lease and in good order and satisfactory condition.

(c)    Tenant Delays shall be defined as: (i) any delay caused by Tenant in the construction of Landlord's Work; (ii) any delay attributable to additional work requested by Tenant, as well as any change orders; (iii) failure by Tenant to approve any and all plans and specifications related to Landlord's Work; (iv) any delay attributable to Tenant's failure to act in good faith in reviewing and/or approving any plans; (v) any delay attributable to postponement of the performance of Landlord's Work pursuant to the request of Tenant; (vi) any delay by Tenant in furnishing information or giving any other approvals or authorizations within the time limits set forth in this Lease, or if no time is stated, then a reasonable time, time being of the essence ; (vii) any delay attributable to the failure of Tenant to pay, when due, any amounts required to be paid by Tenant pursuant to this Lease; and (vii) any other delay caused by Tenant as reasonably determined by Landlord.

3.    Rent. Beginning on the Commencement Date, Tenant shall pay as initial annual base rent ("Minimum Rent") as set forth in the schedule below. Tenant shall pay such Minimum Rent in monthly installments, in advance, on the first day of each calendar

2

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

month during the Term, such monthly installment and the Additional Rent consisting of monthly instalments for property taxes and insurance as set forth in this lease or other charges to be prorated for any partial calendar month in which the Commencement Date or Termination Date occurs without deduction, offset or setoff, except as expressly provided herein. All amounts (unless otherwise provided herein) other than Minimum Rent and the adjustments thereto described in this Section 3 and Section 4 below owed by Tenant to Landlord hereunder shall be deemed "Additional Rent". The Minimum Rent and Additional Rent are sometimes herein collectively referred to as "Rent".

| YEAR | RENT | ANNUALLY |
|------|------|----------|
| 1 | $44,530.88 | $534,370.50 |
| 2 | $45,421.49 | $545,057.91 |
| 3 | $46,329.92 | $555,959.07 |
| 4 | $47,256.52 | $567,078.25 |
| 5 | $48,201.65 | $578,419.81 |
| 6 | $49,165.68 | $589,988.21 |
| 7 | $50,149.00 | $601,787.98 |
| 8 | $51,151.98 | $613,823.73 |
| 9 | $52,175.02 | $626,100.21 |
| 10 | $53,218.52 | $638,622.21 |
| 11 | $54,282.89 | $651,394.66 |
| 12 | $55,368.55 | $664,422.55 |
| 13 | $56,475.92 | $677,711.00 |
| 14 | $57,605.44 | $691,265.22 |
| 15 | $58,757.54 | $705,090.53 |
| 16 | $59,932.69 | $719,192.34 |
| 17 | $61,131.35 | $733,576.18 |
| 18 | $62,353.98 | $748,247.71 |
| 19 | $63,601.06 | $763,212.66 |
| 20 | $64,873.08 | $778,476.91 |

\*\*\* Built To Suit Per Architectural Plans to Be Completed. It is agreed to that the initial budget that is placed in this lease will be revised and marked final when the developer is given a full set of plans that is approved by the local municipality to build the final project.

Except as otherwise provided in this Lease, it is the intention of the parties that Landlord shall receive Minimum Rent, Additional Rent and all other sums payable by Tenant under this Lease free of all taxes, expenses, charges, damages and deductions of any nature whatsoever (except as otherwise provided herein). Tenant shall, however, be under no obligation to pay principal or interest on any mortgage on the fee of the

3

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FEA1D

Premises, nor any income, franchise, margin, inheritance, estate, excise, or gift taxes, which are or may be payable by Landlord.

If Landlord does not receive any payment of Minimum Rent or Additional Rent on or before the fifth (5th) day following the day it is due, then Tenant shall pay a late fee ("Late Fee") equal to 5% of the amount overdue, to compensate Landlord for the loss of the use of the amount not paid and the administrative costs caused by the delinquency. In addition, Interest shall accrue on all sums not paid on or before the tenth (10th) day following the day it is due hereunder at the lesser of: (a) the highest rate allowed by law or (b) an interest rate equal to the Prime Rate as published in The Wall Street Journal from time to time plus 2%, from the due date until paid (the "Default Rate"). The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Landlord will incur by reason of late payment by Tenant. Acceptance of such late charge by Landlord shall in no event constitute a waiver of Tenant's default with respect to such overdue amount, nor prevent Landlord from exercising any of the other rights and remedies granted hereunder.

Notwithstanding anything to the contrary contained in this Lese, if Tenant is unable to open or operate for business from the Premises for the Permitted Use because of a government mandated closure generally applicable to all similarly situated businesses in the applicable jurisdiction where the Premises are located ("Mandated Closure"), then for each day that Tenant is unable to open or ceases operating for business of such Mandated Closure (the "Deferred Rent Period") Tenant may withhold payment of Minimum Rent that accrues during such Mandated Closure (the "Deferred Rent"), and such Deferred Rent shall be withheld and paid pursuant to the following terms and conditions:

(a)    Such withholding or failure to pay Rent shall not constitute an Event of Default, and Tenant shall not be in default of any term or condition of this Lease beyond any applicable cure periods.

(b)    The Deferred Rent shall be payable by Tenant in equal monthly installments ratably over the remaining Term after the expiration or earlier termination of the event of Mandated Closure.

(c)    The Term shall be extended one (1) day for each day of the Deferred Rent Period.

Notwithstanding anything contained herein to the contrary, should Tenant receive proceeds of business interruption insurance directly applicable to the Rent, Tenant shall remit such proceeds to Landlord and such proceeds shall offset and be applied against the Deferred Rent, or if such proceeds are not directly applicable to the Rent, then Tenant shall remit such proceeds to Landlord and such proceeds shall offset and be applied against the Deferred Rent in an equitable portion based upon the amount that such

4

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

proceeds bear to Tenant's total business interruption expenses that are not otherwise covered by other commercial insurance then carried, as reasonably determined by Tenant, with any remaining Deferred Rent to continue to be deferred and payable in accordance with this Section 4.

Except as otherwise specifically provided in this Lease, no abatement, diminution or reduction (a) of Minimum Rent, Additional Rent, charges or other compensation, or (b) of Tenant's other obligations hereunder shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

4.    <u>Renewals</u>.  Tenant shall have the right and option to renew this Lease for two additional periods of five years each, next immediately ensuing after the expiration of the initial Term and the subsequent renewal period by notifying Landlord in writing not more than 24 months and not less than 12 months before the expiration of the immediately preceding initial Term or subsequent renewal Term of Tenant's intention to exercise its option to renew. In the event Tenant so elects to extend this Lease, then, for such extended period of the Term, all of the terms, covenants and conditions of this Lease shall continue to be, and shall be, in full force and effect during such extended period of the Term with Rent being as set forth in Section 3 above.  Notwithstanding the foregoing, the renewal options described above shall be null and void and of no further force or effect if any of the following have occurred: (i) Tenant has assigned this Lease or sublet the Premises, notwithstanding the fact Landlord may have consented to such assignment or subletting; (ii) a default has occurred and is continuing, either at the time Tenant exercises the renewal option or at the time the renewal term is scheduled to commence; or (iii) Tenant has vacated the Premises. In no event shall any Landlord's Work, improvement allowance or other monies or work be required of Landlord in connection with any such renewal period.

5.    <u>Use of Premises</u>.  Subject to all applicable Laws, Tenant may occupy and use the Premises during the Term for purposes of the operation of general medical offices and related office and administrative uses (the "Permitted Use") and Tenant agrees not to use the Premises for any other purpose or any immoral or unlawful purpose.  From and after the Rent Commencement Date, but subject to temporary closures necessitated by casualty, condemnation, and permitted remodeling, Tenant shall operate continuously and uninterruptedly in the entire Premises the business which it is permitted to operate under the provisions of this Lease, and Tenant shall operate Tenant's business on the Premises with due diligence and efficiency so as to maximize the gross profits that may be produced profitably.  To this end Tenant shall maintain business hours and levels of personnel and advertising necessary to maximize gross profits profitably consistent with the operation at the other locations of Tenant's businesses.

Tenant shall not commit any waste or any public or private nuisance upon the Premises.  Tenant shall not commit any acts on the Premises, nor use the Premises in any manner that will increase the existing rates for or cause the cancellation of any fire,

5

liability, or other insurance policy insuring the Premises or the improvements on the Premises or any other insurance related to the Premises. Tenant shall, at Tenant's own cost and expense, comply with all requirements of Tenant and Landlord's insurance carriers that are necessary for the continued maintenance at reasonable rates of fire and liability insurance policies on the Premises and the improvements on the Premises.

Tenant shall comply with all laws, rules, and orders of all federal, state, and municipal governments or agencies that may be applicable to the Premises and the use of the Premises whether now in existence or hereafter adopted (the "Laws"). Notwithstanding the Permitted Use or any other provision of this Lease, Landlord does not represent, warrant, or covenant in any respect whatsoever that the Permitted Use or any element of Tenant's existing or future operations is or will be permitted under applicable zoning, codes and regulations of any governmental or quasi-governmental authority. Tenant is solely responsible for verifying the same.

6.    Assignment/Subletting.  Tenant shall not voluntarily or involuntarily or by operation of law, assign, transfer (including the transfer of over 50% of the interest in the Tenant entity), the Premises (including fixtures), or any interest of Tenant therein, in whole or in part, or sublet the Premises or any part thereof, or permit the Premises or any part thereof to be used or occupied by others, without Landlord's prior written consent which consent shall not be unreasonably withheld, conditioned or delayed.  In considering a proposed assignment or sublet and Landlord's consent thereto, it shall not be unreasonable for Landlord to consider (i) the financial condition of the proposed assignee or subtenant as applicable, relative to the financial obligations under the Lease; (ii) the business reputation of the assignee or subtenant, as applicable; (iii) the proposed use of the Premises by the proposed assignee or subtenant, as applicable; and (iv) whether an event of default shall have occurred and be continuing as of the date on which Tenant shall request Landlord's consent to such assignment or subletting.  Tenant shall not have the right to hypothecate or collaterally assign its interest on this Lease.  Any attempted assignment, transfer, mortgage, encumbrance or subletting without Landlord's consent shall be void, and shall constitute a breach of this Lease.

To review any proposed assignment or sublease, Landlord will require thirty (30) days to review Tenant's submission of (i) the name of the entity receiving such transfer (the "Transferee"); (ii)  a detailed description of the business of the Transferee; (iii) audited financial statements of the Transferee; (iv) all written agreements governing the transfer; (v) any information reasonably requested by Landlord with respect to the transfer or the Transferee; and (vi) a fee of One Thousand Dollars ($1,000.00) to compensate Landlord for certain fees and costs of administration, and other expenses incurred in connection with the review and processing of such documentation. In the event that Landlord consents to Tenant's subletting of the Premises or any part thereof, or the sale, transfer or assignment of its leasehold interest, Tenant agrees to furnish to Landlord an executed copy of the sublease, sale, transfer, or assignment agreement(s) with all amendments and riders within ten (10) days of execution thereof; provided that in no event shall such

6

sublease, sale, transfer or assignment be effective unless the assignee thereof unconditionally assumes all obligations of Tenant under this Lease. At any time within 30 days after service of such notice, Landlord shall notify Tenant that it consents or refuses to consent to the sublease or assignment.

Neither Tenant nor any subsequent tenant whose interest is assigned or divested shall be relieved of liability under this Lease other than by an express release from liability executed in writing by Landlord acting in its sole and absolute discretion. Landlord and Tenant shall split (50/50) any profits paid in connection with a sublease or assignment in excess of Tenant's Minimum Rent obligations hereunder.

Without limiting any of the foregoing provisions of this Section 6, if, pursuant to the U.S. Bankruptcy Code, as the same may be amended from time to time, Tenant is permitted to assign or otherwise transfer its rights and obligations under this Lease in disregard of the restrictions contained in this Section 6, the assignee agrees to provide adequate assurance to Landlord (i) of the continued use of the Premises solely in accordance with the Permitted Use thereof, (ii) of the operation of the business in the Premises in strict accordance with the requirements of this Lease, and (iii) of such other matters as Landlord may reasonably require at the time of such assumption or assignments. Such assignee shall agree that adequate assurance shall mean that any such assignee shall have a net worth (exclusive of good will) equal to or greater than that of the Tenant named herein as of the Commencement Date of this Lease. Such assignee shall expressly assume this Lease by an agreement in writing, in form and content reasonably satisfactory to Landlord, an original counterpart of which shall be delivered to Landlord prior to an assignment of the Lease.

The acceptance of rent by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision hereof. Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting. In the event of default by any assignee of Tenant or any successor of Tenant in the performance of any of the terms hereof, Landlord may proceed directly against Tenant without the necessity of exhausting any other remedies against Tenant or any other party. Landlord may consent to subsequent assignments or subletting of this Lease or amendments or modifications to the Lease by notifying Tenant or any successor in advance, but such action shall not relieve Tenant of any liability under this Lease.

7.    Operating Expenses and Utilities.

    7.1    **Net Lease**. This Lease is what is commonly called a "Net Lease", it being understood that Landlord shall receive the Rent set forth in this Lease free and clear of any and all impositions, taxes, liens, charges, or expenses of any nature whatsoever in connection with its ownership and leasing of the Premises ("Impositions") as Additional Rent, except those expenses specifically designated in this Lease to be borne by Landlord. In addition to the Rent, Tenant shall pay all impositions, taxes,

7

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

insurance premiums, operating costs, charges and expenses and all sums due with respect to the Premises under the Restrictions which arise or may be contemplated under any provisions of this Lease during the Term (i) when required to be made hereunder or (ii) if no payment date is specified, by the later to occur of (A) the due date for the next installment of Rent or (B) ten (10) days from demand. Upon the failure of Tenant to pay any of such Impositions, costs, charges or expenses, Landlord shall have the same rights and remedies as otherwise provided in this Lease for the failure of Tenant to pay Rent. It is the intention of the parties hereto that Tenant shall in no event be entitled to any abatement of or reduction in Rent or Additional Rent payable hereunder, except as expressly provided herein. Any present or future law to the contrary shall not alter this agreement of the parties. Landlord and Tenant acknowledge and agree that this Lease is a "true lease" and not a financing lease, capital lease, mortgage, equitable mortgage, deed of trust, trust agreement, security agreement or other financing or trust arrangement, and the economic realities of this Lease are those of a true lease, the business relationship created by this Lease and any related documents is solely that of a long-term commercial lease between landlord and tenant and has been entered into by both parties in reliance upon the economic and legal bargains contained herein, and Tenant and Landlord each waive any claim or defense based upon the characterization of this Lease as anything other than as a "true lease".

      7.2   **Real Estate Taxes**. As used herein, the term "Real Estate Taxes" means all taxes and general and special assessments and other impositions in lieu thereof, as a supplement thereto and any other tax which is measured by the value of land and assessed on a uniform basis against the owners of land, including any substitution in whole or in part therefor due to a future change in the method of taxation, supplemental taxes, assessments (special, escape or otherwise, even if unsecured) including impositions for the purpose of funding special assessment districts, water, sewer, refuse or other rents, rates and charges (including water and sewer charges which are measured by the consumption of the actual user of the item or service for which the charge is made) levies, fees (including license fees) and all other taxes, governmental levies and charges of every kind and nature whatsoever (and whether or not the same presently exist or shall be enacted in the future), in each case assessed against, or allocable or attributable to, or which may during the term be levied, assessed, imposed, become a lien upon or due and payable with respect to, out of or for the Premises and/or any interest of Landlord and/or Tenant (including any legal or equitable interest of Landlord or its mortgagee, if any) in the Premises, the rents receivable by Landlord for the Premises or which may be based thereupon or measured thereby, whether or not such taxes are a lien upon the Premises, including any excise tax, gross receipts taxes, business taxes, business and occupation taxes but excluding net income or excess profits taxes and any other tax however designated, and whether charged to Landlord, or the Tenant, or to either or both of them, which is imposed on or measured by or based on the rentals to be paid under this Lease, or any estate or interest of Tenant, or any occupancy, use or possession of the Premises by Tenant and the ownership, leasing, operation,

8

maintenance, alteration or repair of the Premises and accruing during the Term. Real Estate Taxes shall also include interest on installment payments and all costs and fees (including reasonable attorneys' and appraiser's fees) incurred by Tenant and Landlord together in mutual agreement in contesting such taxes and negotiating with public authorities as to the same. Real Estate Taxes shall not include, however, any franchise, estate, inheritance, corporation, succession, gift, transfer, net income or excess profits tax. Tenant shall pay Real Estate Taxes to Landlord on a monthly basis (the "Real Estate Taxes Reserve") in lieu of the applicable collecting authority. If Tenant fails to pay the appropriate party (Landlord or the collecting authority, as provided herein) all Real Estate Taxes when due hereunder, then Tenant shall, without limiting any other remedies available to Landlord, reimburse Landlord for any and all penalties or interest, or portion thereof, incurred by Landlord as a result of such nonpayment or late payment by Tenant. Landlord agrees either to (i) forward to Tenant in a timely fashion the periodic statements for taxes, or (ii) join with Tenant in the necessary formalities to ensure that such statements are sent directly to Tenant.

7.3 **Utilities**. Tenant shall directly pay for all utilities and other services necessary in the operation of the Premises, including but not limited to, gas, fuel oil, electrical, telephone and other utility charges, janitorial services (if Tenant shall contract for such services) and grounds and easement maintenance, and any other service or utility furnished to and or used in or at the Premises for any purpose, from and after the date Landlord shall have delivered the Premises. Tenant shall contract directly with all utility providers such that all utilities for the Premises shall be in Tenant's name. No such interruption, termination or cessation of utility services shall relieve Tenant of its duties and obligations pursuant to this Lease, including, without limitation, its obligation to pay all Rent as and when due hereunder. Notwithstanding the foregoing, in the event the disruption of any utility service shall render the Premises untenantable for a period in excess of three (3) consecutive days, and such disruption is caused by the act, omission or gross negligence of Landlord, then the Minimum Rent and Additional rent shall abate in proportion to the disruption from the commencement of such three (3) day period until such time as the Premises is again tenantable.

7.4 **Contest.** Tenant, at Tenant's sole cost and expense, may contest the amount or validity of any Imposition described in this Section 7 by appropriate proceedings. However, the Tenant shall promptly pay such Imposition prior to its due date unless such proceedings shall operate to prevent or stay the collection of the Imposition so contested. The Landlord, at the Tenant's sole cost and expense, agrees to join in any such contestation proceedings upon request by Tenant, at no cost to Landlord.

7.5 If Tenant has not paid any Imposition required by this Lease to be paid by Tenant before its delinquency, or if a tax, assessment, or public charge is contested by Tenant and that tax, assessment, or public charge has not been paid when due or within ten (10) days after a final determination of the validity, legality, or amount of the tax, assessment or public charge, then Landlord may, but shall not be required to,

9

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

pay and discharge the tax, assessment, or public charge. If an Imposition, including penalties and interest, are paid by Landlord, the amount of that payment shall be due and payable to Landlord by Tenant with the next succeeding rental installment, and shall bear interest at the rate of ten percent (10%) per annum from the date of the payment by Landlord until repayment by Tenant.

7.6 **Equipment Provided by Landlord.** As part of the improvements and as an inducement to the Tenant, Landlord has provided approximately $1,750,000 of trade fixtures and medical equipment. Tenant acknowledges that the equipment is the property of the Landlord and shall remain on the premises. Further the Tenant agrees to maintain and replace said equipment as needed over the term of the lease.

7.7 **Personal Property Taxes**.  Tenant shall pay directly to the applicable taxing authority, prior to delinquency all taxes assessed against and levied upon the trade fixtures, furnishings, equipment and all other personal property of Tenant contained in the Premises or elsewhere.  When possible, Tenant shall cause said trade fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the Premises.  Tenant shall also pay, before delinquency, any and all taxes and assessments, sales, use, business, occupation or other taxes, and license fees or other charges whatever levied, assessed or imposed upon its business operations conducted in the Premises.

8. Landlord's Work.  Landlord shall complete all of Landlord's Work, as described in the Scope of Work attached as Exhibit F (the "Scope of Work").  All Landlord's Work shall be done in a good and workmanlike manner and in compliance with all applicable Laws, ordinances, building and safety codes, regulations and orders of the federal, state, county or other governmental authorities having jurisdiction thereof.  Tenant acknowledges that it has approved Built-More, LLC, a Tennessee limited liability company, to construct the Improvements. The term "Improvements" shall mean the Building, sidewalks, driveways, parking areas, lighting, retaining walls, landscaping, fire hydrants, and related improvements, fixtures, and equipment to the extent such are described on the plans and specifications attached to the Scope of Work or otherwise constructed or located on the Premises subject to the conditions and restrictions set forth in this Lease.

9. Trade Fixtures and Signage.

9.1 **Trade Fixtures**.  Tenant shall have the right, at any time and from time to time during the Term and any renewals or extensions, at Tenant's sole cost and expense, to install and affix on the Premises items for use in Tenant's business, which Tenant, in Tenant's sole discretion, deems advisable (collectively "Trade Fixtures"), provided that Tenant shall not overload the floors and such installation does not affect structural elements or building systems in any material respect. Trade Fixtures, for which no part of the cost of which shall have been paid by Landlord, installed in the Premises by Tenant shall always remain the property of Tenant and shall be removed at the

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

expiration of the Term or any extension, provided that any damage to the Premises caused by the removal of the Trade Fixtures shall be repaired by Tenant, and further provided that Landlord shall have the right to keep any Trade Fixtures or to require Tenant to remove any Trade Fixtures that Tenant might otherwise elect to abandon. Any Trade Fixtures that are not removed from the Premises by Tenant by the Termination Date shall be deemed abandoned by Tenant and shall automatically become the property of Landlord as owner of the real property to which they are affixed.

9.2    **Signage.** Tenant may not place, maintain, nor permit on any exterior door, wall, or window of the Premises any sign, awning, canopy, marquee, or other advertising of a permanent and irremovable nature without the express written consent of Landlord and such consent shall not with unreasonably withheld, delayed or conditioned. All such signs shall comply with all applicable Laws and all Restrictions and shall be subject to applicable municipal permits.    Tenant shall maintain any sign, decoration, or advertising in good appearance and repair at all times during this Lease. At the Termination Date, any of the items mentioned in this Section 9.2 that are not removed from the Premises by Tenant may, without damage or liability, be removed and destroyed by Landlord at Tenant's cost. Nothing in this provision is intended to prevent Tenant from placing or maintaining any sign, awning, canopy, marquee, or other advertising relating to Tenant's operation, so long as follow all Laws and Restrictions.

10.    Tenant Alterations.

10.1    After the date on which Tenant first opens the Premises to the public for business, Tenant may not make alterations, additions or improvements to the Premises including the exterior, the building structure, or the storefront thereof without the prior written consent of the Landlord, such consent not to be unreasonably delayed, withheld or conditioned. Provided, if Tenant wishes at any time during the Term to perform interior, non-structural alterations or improvements to the Premises that do not affect structural elements or building systems in any material respect (changes to electrical, mechanical or life safety systems shall be deemed to materially affect building systems) and cost, on a per project basis, less than $50,000.00 ("Minor Alterations"), after at least fifteen (15) days' written notice to Landlord, Tenant shall have the right to make Minor Alterations in compliance with all applicable Laws and Restrictions without obtaining written consent of the Landlord. Any such alterations, additions or improvements to the Premises consented to by Landlord shall, be made by one or more contractors reasonably acceptable to Landlord. All alterations, additions and improvements (excluding personal property, equipment, signage, and Trade Fixtures of Tenant, no part of the cost of which shall have been paid by Landlord, collectively "Tenant's Property") made by, for or at the direction of Tenant, shall become the property of Landlord and shall remain upon and be surrendered with the Premises as a part thereof at the expiration or earlier termination of this Lease or at such time as Landlord shall re-enter and take possession of the Premises without terminating this Lease pursuant to the provisions of Section 16.2 hereof.

11

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

Landlord shall have no obligation to make any alterations, improvements, repairs or replacements to the Premises other than Landlord's Work.

11.    Environmental.

11.1    Tenant shall not cause or permit any Hazardous Substances (as defined below), including, without limitation, Medical Waste and asbestos to be used, generated, stored or disposed of in, on or under, or transported to or from, the Premises in violation of any applicable local, state, and federal laws, ordinances, statutes, rules, regulations, executive orders, judgments, decrees, case law, and/or other determination of an arbitrator or a court or other governmental authority, in each case applicable to or binding upon such person or any of its property or to which such person or any of its property is subject, whether now in existence or hereafter adopted, relating to Hazardous Substances or otherwise pertaining to the environment, pollution, the protection of the environment or drinking or domestic water supply, including but not limited to laws relating to safe drinking water, emissions, discharges, releases or threatened releases of hazards into ambient air, surface water, ground water, drinking or domestic water supply, or lands or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, refinement, production, disposal, transport or handling of medical waste and/or other "Regulated Substances" and other state and local Laws relating to protection of human health and the environment (the "Environmental Laws").

11.2    Should Tenant's use of the Premises generate or include the presence of any Medical Waste, Tenant shall fully comply with all Environmental Laws in connection with such Medical Waste and shall be solely responsible for the proper collection, segregation and identification of all such Medical Waste in compliance with Environmental Law at its sole cost and expense, and Tenant shall be responsible for the disposal and removal thereof at its sole cost and expense. Tenant shall be permitted to use such disposal and removal services at its sole and absolute discretion, so long as Tenant shall comply with the requirements of this Lease and shall comply with all Environmental Law for Medical Waste disposal and removal at its sole cost and expense.

11.3    Tenant shall immediately cause to be removed from the Premises such Hazardous Substances placed thereon by Tenant or Tenant's agents, servants, employees, guests, invitees or independent contractors in accordance with good business practices, such removal to be performed by persons or entities duly qualified to handle and dispose of Hazardous Substances.  Upon the expiration or earlier termination of this Lease, Tenant shall cause all Hazardous Substances placed on the Premises by Tenant to be removed from the Premises, at Tenant's cost and expense and disposed of in strict accordance with Environmental Laws.

11.4    Tenant hereby agrees to indemnify, defend (by counsel reasonably acceptable to Landlord), and hold Landlord harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including reasonable

12

attorneys' fees, costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Landlord by any person or entity or governmental agency [including those asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), any so-called Federal, state or local "Superfund" or "Superlien" laws, or any Federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability, including strict liability, or standards of conduct concerning any Hazardous Substance] for, with respect to, or as a direct or indirect result of, the presence at, on or under, or the escape, seepage, leakage, spillage, discharge, emission, or release at, on or from, the Premises or the Improvements of any Hazardous Substance (collectively, a "Release"); provided, however, that the foregoing indemnity is limited to matters arising from the violation during the Term (and during any period subsequent to the expiration of the Term that Tenant remains in possession of the Premises) of the covenants and agreements of Tenant contained in the preceding paragraph and excludes matters arising as a result of (i) the conduct of Landlord, its agents, contractors or employees, or (ii) Hazardous Substances at, on or under the Premises as of the Commencement Date, or (iii) any buried, above-ground or other tanks, storage vessels, drums or containers located in or on the Property as of the Commencement Date of this Lease (any matters arising as a result of the events, circumstances, or conditions described in, and any Hazardous Substances described in, the foregoing clauses (i), (ii), and (iii) are hereinafter collectively referred to as "Non-Tenant Hazardous Substance Matters"). The indemnities set forth in this Section 11 shall survive termination or expiration of this Lease. For purposes of this Lease, "Hazardous Substances" shall mean and include those elements or compounds which are contained in the lists of hazardous substances or wastes now or hereafter adopted by the United States Environmental Protection Agency (the "EPA") or the lists of toxic pollutants designated now or hereafter by Congress or the EPA or which are defined as hazardous, toxic, pollutant, infectious or radioactive by CERCLA or any Superfund law or any Superlien law or any other Environmental Laws.

11.5    Landlord shall have the right but not the obligation, and without limitation of Landlord's rights under this Lease, to enter onto the Premises or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Substance following receipt of any notice from any person or entity (including without limitation the EPA) asserting the existence of any Hazardous Substance in, on or at the Premises or any part thereof which, if true, would constitute a violation of Environmental Laws and could result in an order, suit or other action against Tenant and/or Landlord; provided, however, Landlord agrees that, except in the case of an emergency, Landlord will take such action only after written notice to Tenant of the alleged existence of Hazardous Substances and the failure by Tenant within a reasonable period of time following receipt of such notice to commence, or the failure by Tenant to thereafter diligently pursue to completion, the appropriate action to clean-up, remove, resolve or minimize the impact of, or otherwise deal with,

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FEA1D

such Hazardous Substances. All reasonable costs and expenses incurred by Landlord in the exercise of any such rights, to the extent such costs and expenses result from a violation of the covenants and agreements of Tenant contained in the first paragraph of this Section 11, shall be deemed Additional Rent under this Lease and shall be payable by Tenant upon demand. This Section 11 shall survive cancellation, termination or expiration of this Lease. The term "Medical Waste" shall mean any substance, material, contaminant, organism, waste or refuse, whether solid, liquid or gas, that contains pathogens or is capable of producing an infectious disease, or regulated pursuant to any Environmental Law or any materials that are classified as hazardous medical waste by Law, including, but not limited to: cultures and stocks; human pathological wastes; isolation wastes; discarded human blood and blood components; saturated material containing blood or blood components; used and unused discarded sharps, including hypodermic, I.V. and other medical needles, syringes, scalpel blades, blood vials, and broken or unbroken glassware in contact with infectious agents; and contaminated surgical, dialysis and laboratory wastes. Tenant shall immediately deliver to Landlord copies of all notices made by Tenant to, or received by Tenant from, any state, county, municipal or other agency having authority to enforce any Environmental Law or from the United States Occupational Safety and Health Administration ("Enforcement Agency") concerning environmental matters or Hazardous Substances at the Premises, Building or the land on which the Building is located. Landlord shall promptly deliver to Tenant copies of all notices received by Landlord from any Enforcement Agency concerning environmental matters or Hazardous Substances at the Premises, Building or the land on which the building is located.

12.    Damage to Premises by Fire or Casualty.

12.1    **Notice.** In the event of any material damage to or destruction of all or any part of the Premises or Improvements, Tenant will promptly give written notice thereof to Landlord, which notice shall generally describe the nature and extent of such damage or destruction. There shall be no abatement of or adjustment to Minimum Rent or Additional Rent under this Lease as a result of any damage or destruction.

12.2    **Restoration.** In the event of any damage to or destruction of all or any part of the Improvements and whether or not the insurance proceeds on account of such damage or destruction shall be sufficient for the purpose, or in the event of any condemnation of the Premises of the character described in Section 13 hereof and whether or not the proceeds of any award received on account of such condemnation shall be sufficient for such purpose, Tenant, at its sole cost and expense, shall promptly commence and shall thereafter diligently and continuously prosecute to completion the restoration, replacement or rebuilding of the Improvements as nearly as practicable to their value, architectural condition and character as existed immediately prior to such damage, destruction or condemnation so as to permit resumption of the use of the Premises for the Permitted Use to as nearly the same degree as possible (pending completion of the work, such restoration, replacement or rebuilding, together with any

14

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

temporary repairs and property protection, are herein collectively referred to as "Restoration").

In the event damage to or destruction of a substantial portion of the Improvements occurs within the last twelve (12) months of the Term, Tenant shall have the right, at its election and in lieu of fulfilling its obligations under this Section 13.2, to terminate this Lease upon thirty (30) days' prior written notice to Landlord by paying to Landlord, simultaneously with such notice, a sum equal to all Minimum Rent and Additional Rent due from Tenant to Landlord to such termination date, together with all insurance proceeds theretofore received by Tenant on account of any damage or destruction of the Premises or any part thereof and an assignment by Tenant of any right of Tenant to receive additional insurance proceeds on account of any such damage or destruction and Tenant's deductible to such insurance; provided, however, that Tenant shall be entitled to any insurance proceeds payable on account of any damage or destruction of any of Tenant's personal property.

Tenant waives the provisions of any applicable state law which relate to termination of leases when the thing leased is destroyed and agrees that any such event shall be governed solely by the terms of this Lease.

**12.3  Application of Proceeds**. Except as otherwise provided in Section 13.2 hereof, insurance proceeds received on account of any damage to or destruction of the Improvements or any part thereof shall be applied to pay for the cost of Restoration. To the extent any such proceeds shall be inadequate to pay such cost, it shall be Tenant's sole cost and obligation to pay all costs of Restoration.

13.  <u>Eminent Domain</u>.

13.1  The term "total taking" means the permanent taking of or a voluntary transfer under the threat of the exercise of the right of eminent domain or other authority of all or a portion of the Premises such that it is impossible for Tenant to occupy and operate for the Permitted Use within the Premises in compliance with applicable laws, rules, ordinances and regulations. The term "partial taking" means the taking of only a portion of the Premises which does not constitute a total taking, Tenant can continue to operate its business on the Premises in compliance with applicable laws, rules, ordinances and regulations.

13.2  If a total taking occurs during the Term of this Lease, this Lease will terminate as of the date of the taking. The phrase "date of the taking" means the date of taking actual physical possession by the condemning authority or such earlier date as the condemning authority gives notice that it is deemed to have taken possession.

13.3  If a partial taking of the Premises, then this Lease shall remain in full force and effect and Tenant shall promptly restore the Premises to an architecturally fit

15

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

unit in accordance with plans approved by Landlord as nearly as reasonably possible to their condition prior to the partial taking and reopen for business.

        13.4   All compensation and damages awarded for a total or partial taking of the Premises, will belong to Landlord without any participation by Tenant; provided, however, Tenant may make its own claim for any separate award that may be made by the condemner for Tenant's moving expenses, loss of business or for the taking of or injury to Tenant's improvements, or on account of any cost or loss Tenant may sustain in the removal of Tenant's trade fixtures, equipment, and furnishing, or as a result of any alterations, modifications, or repairs which may be reasonably required by Tenant in order to place the remaining portion of the Premises not so condemned in a suitable condition for the continuance of Tenant's occupancy, provided that no such award shall diminish or adversely affect the award to Landlord.

14.    Right of Entry by Landlord.  Landlord, or any of its agents, shall have the right to enter the Premises during all reasonable hours and upon at least 24 hours prior notice (except in cases of emergency when no such notice shall be required) to inspect the Premises to determine whether Tenant is complying with the terms of this Lease under this Lease, examine the Premises, exhibit the Premises to potential buyers or financiers, or for any other purpose expressed hereunder, or, in the twelve-month period immediately preceding the Expiration Date, to exhibit the Premises to potential tenants.  Landlord shall use reasonable efforts and act in good faith to minimize any interference with Tenant's business or Tenant's use and occupancy of the Premises arising from such entry and any related inspections.

15.    Indemnity.  Tenant covenants and agrees to pay, defend, indemnify and save harmless Landlord from and against any and all liability, loss, damage, cost, expense (including without limitation all actual and reasonable attorneys' fees and expenses of Landlord), causes of action, suits, claims, demands or judgments of any nature whatsoever based upon, arising from or connected in any manner with (a) injury to or the death of any person or damage to any property occurring on the Premises during the Term from and after the Commencement Date (and during any period after the Term in which Tenant shall remain in possession of the Premises), (b) the use, non-use, condition, possession, construction, operation, maintenance, management or occupation of the Premises or any part thereof during the Term from and after the Commencement Date (and during any period after the Term in which Tenant shall remain in possession of the Premises), or (c) any negligence, act, omission or intentional misconduct on the part of Tenant or its subtenants, agents, contractors, servants, employees, licensees or invitees. The agreement of indemnification by Tenant set forth in this Section 15 shall not extend to claims for damages arising out of bodily injury to persons or damage to property caused by or resulting from the gross negligence or willful misconduct of Landlord, its agents, contractors, servants, employees, or licensees. Landlord covenants and agrees to pay, defend, indemnify and save harmless Tenant from and against any and all liability, loss, damage, cost, expense (including without limitation all actual and reasonable attorneys'

16

fees and expenses of Tenant), causes of action, suits, claims, demands or judgments of any nature whatsoever based upon, arising from or connected in any manner with the gross negligence or willful misconduct of Landlord or its agents, contractors, servants, employees, licensees or invitees (other than Tenant or its agents, contractors, servants, employees, licensees or invitees). The indemnities set forth in this Section 15 shall survive termination or expiration of this Lease.

Except for actions or omissions which constitute gross negligence, willful misconduct or a breach of this Lease by Landlord or its agents, Landlord shall not be liable to Tenant, its employees, agents, business invitees, licensees, customers, clients, or guests for any damage, injury, loss, compensation or claim, including, but not limited to, claims for personal injury or property damage, or the interruption of or loss to Tenant's business, based on, arising out of or resulting from any cause whatsoever, including, but not limited to: (a) repairs to any portion of the Premises; (b) interruption in Tenant's use of the Premises; (c) any accident or damage resulting from the use or operation (by Landlord, Tenant or any other person or persons) of any equipment within the Premises, including without limitation, heating, cooling, electrical or plumbing equipment or apparatus; (d) the termination of this Lease by reason of the condemnation or destruction of the Premises in accordance with the provisions of this Lease; (e) any fire, robbery, theft, or other casualty; (f) the actions of any other person or persons; and (g) any leakage or seepage in or from any part or portion of the Premises, whether from water, rain or other precipitation that may leak into, or flow from, any part of the Premises, or from drains, pipes or plumbing fixtures in the Premises. Any goods, property or personal effects stored or placed by the Tenant or its employees in or about the Premises shall be at the sole risk of the Tenant.

16.    Default and Remedies.

16.1    **Tenant Default**. The occurrence of any of the following acts, events or conditions, notwithstanding the pendency of any proceeding which has or might have the effect of preventing Tenant from complying with the terms, conditions or covenants of this Lease, shall constitute an "Event of Default" under this Lease:

(a)    The Minimum Rent, Additional Rent or any other sum of money payable under this Lease is not paid when due and such failure shall continue for five (5) days after written notice of such failure of payment, provided that Landlord shall only be required to provide Tenant with written notice of such monetary default once in any twelve month period. It being intended by the parties hereto that such notice and such grace period shall protect against infrequent unforeseen clerical errors beyond the control of Tenant and shall not protect against Tenant's lack of diligence or planning in connection with its obligations to make timely payment of Rent, Additional Rent and other amounts due hereunder.

17

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

(b)     The failure or refusal of Tenant, at any time during the Term, to fulfill or perform any other covenant, agreement or obligation of Tenant hereunder if such failure or refusal shall continue without correction for a period of twenty (20) calendar days from and after notice thereof to Tenant, provided that if such covenant, agreement or obligation shall be of such nature that it can be fulfilled or performed and if Tenant in good faith commences to fulfill or perform same within said twenty (20) day period, but due to the nature of same it could not be reasonably fulfilled or performed within said twenty (20) day period exercising due diligence, an Event of Default shall not be deemed to have occurred if Tenant is then diligently pursuing the fulfillment or performance of the covenant, agreement or obligation and shall thereafter continuously and diligently proceed therewith until completion, but in no event shall such time period be extended for more than sixty (60) days;

(c)     The initiation of any proceeding whereupon the estate or interest of Tenant in the Premises, or any portion thereof, or in this Lease is levied upon or attached if such proceeding is not vacated, discharged or bonded within thirty (30) days after the date of such levy or attachment.

(d)     The entry of any decree or order for relief by a court having jurisdiction in the Premises in respect of Tenant or any guarantor of Tenant's obligations ("Guarantor") in an involuntary case under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or state bankruptcy, insolvency or other similar law, or the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Tenant or any Guarantor or for any substantial part of the assets of Tenant or any Guarantor, or the entry of any decree or order with respect to winding-up or liquidation of the affairs of Tenant or any Guarantor, if any such decree or order continues unstayed and in effect for a period of sixty (60) days;

(e)     The commencement by Tenant or any Guarantor of a voluntary case under the Federal bankruptcy laws, as now or hereafter constituted, or any other applicable Federal or state bankruptcy, insolvency or other similar law, or the consent by Tenant or any Guarantor to the appointment of or possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or other similar official) of Tenant or any Guarantor or for any substantial part of the assets of Tenant or such Guarantor, or any assignment made by Tenant or any Guarantor for the benefit of creditors;

(f)     Any sale, assignment, mortgage, pledge, hypothecation or other transfer by Tenant of this Lease or any interest of Tenant hereunder or in the Premises or any sublease of the Premises without full compliance with any and all requirements therefor set forth in Section 6 of this Lease.

(g)     In the event that following Tenant's initial opening, the Premises ceases to be operated for the Permitted Use or other use allowed hereunder for a period

18

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

in excess of sixty (60) consecutive days ("Goes Dark") unless such delay in operation is due to renovations or repairs to the Premises or a Force Majeure Event; or

(h)    A default occurs under the Guaranty, or any Guarantor files bankruptcy, dissolves or dies.

16.2  **Remedies**. Upon the occurrence of an Event of Default, Landlord shall have the option to do and perform any one or more of the following in addition to, and not in limitation of, any other remedy or right permitted it by law or in equity or by this Lease:

(a)    Landlord, with or without terminating this Lease, may perform, correct or repair any condition which shall constitute a failure on Tenant's part to keep, observe, perform, satisfy, or abide by any term, condition, covenant, agreement, or obligation of this Lease, and Landlord may reenter the Premises for such purposes, and Tenant shall fully reimburse and compensate Landlord on demand for all costs and expenses incurred by Landlord in such performance, correction or repair, including, without limitation, accrued interest at the Default Rate.

(b)    Landlord, with or without terminating this Lease, may immediately or at any time thereafter demand in writing that Tenant vacate the Premises and thereupon Tenant shall vacate the Premises and remove therefrom all property thereon belonging to or placed on the Premises by, at the direction of, or with consent of Tenant within three (3) business days of receipt by Tenant of such notice from Landlord, whereupon Landlord shall have the right to reenter and take possession of the Premises. Any such demand, reentry and taking possession of the Premises by Landlord shall not of itself constitute an acceptance by Landlord of a surrender of this Lease or of the Premises by Tenant and shall not of itself constitute a termination of this Lease by Landlord.

(c)    Landlord, with or without terminating this Lease, may immediately or at any time thereafter reenter the Premises and remove therefrom Tenant and all property belonging to or placed on the Premises by, at the direction of, or with consent of Tenant. Any such reentry and removal by Landlord shall not of itself constitute an acceptance by Landlord of a surrender of this Lease or of the Premises by Tenant and shall not of itself constitute a termination of this Lease by Landlord.

(d)    Landlord may continue this Lease in effect after Tenant's breach and abandonment and recover Rent as it becomes due. Accordingly, if Landlord does not elect to terminate this Lease on account of any default by Tenant, Landlord may enforce all of its rights and remedies under this Lease, including the right to recover all Rent and other sums payable by Tenant hereunder as they become due.

Landlord, with or without terminating this Lease, may immediately or at any time thereafter relet the Premises or any part thereof for such term or terms (which may be for a term

19

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

extending beyond the Term), at such rental or rentals and upon such other terms and conditions as Landlord in its reasonable discretion may deem advisable, and Landlord may make any alterations, redecorations or repairs to the Premises which it may deem reasonably necessary or proper to facilitate such reletting; and Tenant shall pay all costs of such reletting including but not limited to the reasonable cost of any such alterations, redecorations and repairs made to the Premises, reasonable attorneys' fees, reasonable brokerage commissions and lease assumptions; and if this Lease shall not have been terminated, Tenant shall continue to pay all Minimum Rent, Additional Rent and all other charges due under this Lease up to and including, without limitation, the date of beginning of payment of rent by any subsequent tenant of part or all of the Premises, and thereafter Tenant shall pay monthly during the remainder of the Term the difference, if any, between the rent and other charges collected from any such subsequent tenant or tenants and the Minimum Rent, Additional Rent and other charges reserved in this Lease, but Tenant shall not be entitled to receive any excess of any such rents collected over the Minimum Rent and Additional Rent reserved herein.  In the event Landlord elects to terminate this Lease and Tenant's right to possession, or Tenant's right to possession is otherwise terminated by operation of law, Landlord may recover as damage from Tenant the following: (1) the worth at the time of award of the amount of the unpaid Rent earned hereunder at the date of termination of this Lease; (2) the worth at the time of award of the amount by which the unpaid Rent and other sums due hereunder which would have been earned after the date of termination of this Lease until the time of the award, exceeds the amount of such loss of Rent and other sums due which Tenant proves could have been reasonably avoided; (3) the worth at the time of the award of the amount by which the unpaid Rent and other sums due hereunder for the balance of the Term after the time of award exceeds the amount of the loss of such Rent and other sums which Tenant proves could have been reasonably avoided; (4) Landlord may recover from Tenant, and Tenant shall pay to Landlord upon demand (such demand to include a list of itemized expenses) as Additional Rent, such expenses as Landlord may incur in recovering possession of the Premises, placing the same in good order and condition for reletting, including the cost of any tenant improvements installed by Landlord as well as all other expenses, commissions, (including broker's commissions) and charges incurred by Landlord in exercising any remedy provided herein or which result from any default by Tenant hereunder; and (5) any other amount, including attorneys' fees and court costs and unamortized brokers' commissions necessary to compensate Landlord for all detriment proximately caused by Tenant's failure to perform its obligations under this Lease, or which in the ordinary course of things would be likely to result therefrom. The "worth at the time of award" shall be computed by allowing interest at the rate of eighteen percent (18%) per annum (but not to exceed the maximum rate of interest lawfully allowed), and for the amounts referred to above, the same shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of the award, plus one percent (1%).

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

16.3 **Reentry by Landlord**. If Landlord reenters the Premises or terminates this Lease pursuant to any of the provisions of this Lease, Tenant hereby waives all claims for damages which may be caused by such reentry or termination by Landlord. Tenant shall and does hereby agree to indemnify and hold Landlord harmless from any loss, cost (including, without limitation, court costs and attorneys' fees), or damages suffered by Landlord by reason of such reentry or termination. No such reentry or termination shall be considered or construed to be a forcible entry. No reentry or taking possession of the Premises by Landlord or any other action taken by or on behalf of Landlord shall be construed to be an acceptance of a surrender of this Lease or an election by Landlord to terminate this Lease.

16.4 **General**. No course of dealing between Landlord and Tenant or any failure or delay on the part of Landlord in exercising any rights of Landlord under Section 16 hereof or under any other provisions of this Lease shall operate as a waiver of any rights of Landlord hereunder, at law or in equity or under any other provisions of this Lease, nor shall any waiver of an Event of Default on one occasion operate as a waiver of any subsequent Event of Default or of any other Event of Default. No express waiver shall affect any condition, covenant, rule, or regulation other than the one specified in such waiver and that one only for the time and in the manner specifically stated. The exercise by Landlord of any one or more of the rights and remedies provided in this Lease shall not prevent the subsequent exercise by Landlord of any one or more of the other rights and remedies herein provided. All remedies provided for in this Lease are cumulative and may, at the election of Landlord, be exercised alternatively, successively, or in any other manner and are in addition to any other rights provided for or allowed by law or in equity.

17. Insurance.

17.1 **Tenant Insurance**. Commencing on earlier of the (a) Commencement Date; or (b) the date Tenant shall commence occupancy of any portion of the Premises, and at all times thereafter through and during the Term, Landlord shall keep the Premises insured against the risks and hazards and with coverage in amounts not less than those specified as follows. Tenant agrees to reimburse Landlord for these costs in monthly installments as adjusted annually by the Landlord.

(a) Insurance against loss or damage by fire, earthquake (at Landlord's option or if such coverage is required by Landlord's mortgagee), lightning, vandalism and malicious mischief, and such other perils as are now or may hereafter be comprehended customarily included under "all-risks" policies with respect to improved properties similar to the Premises in an amount equal to the "full insurable value" (which as used herein shall mean the full replacement value, including the costs of debris removal, which amount shall be determined annually) of the Improvements. Tenant shall be entitled to carry a deductible of up to $10,000.00 in connection with said coverage provided Tenant self-insures for the amount of the deductible. Landlord and Tenant hereby further agrees

21

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

that they will obtain an "agreed amount" endorsement with respect to such insurance so as to prevent either Landlord or Tenant from becoming a co-insurer of any loss. Notwithstanding the foregoing, at any time Landlord may provide written notice to tenant that Landlord will carry the insurance coverage described in this subsection (a) and thereafter Tenant shall reimburse Landlord for the premiums for such coverage within ten (10) days after receipt of invoice therefor.

(b)    Commercial general liability and property damage insurance (including, but not limited to, coverage for any construction, reconstruction or alteration by or at the instance of Tenant on or about the Premises) covering the legal liability of Tenant and Landlord against all claims for any bodily injury or death of persons and for damage to or destruction of property occurring on, in or about the Premises and the adjoining streets, sidewalks and passageways in combined single limits for both property damage and personal injury and in the minimum amount, during the period from the date of this Lease to the day immediately preceding the fifth (5th) anniversary of the Rent Commencement Date, of Three Million and No/100 Dollars ($3,000,000.00) in connection with any single occurrence. Said coverage may be provided through a combination of primary and umbrella coverage, provided that Tenant's primary coverage shall have a minimum amount of not less than Two Million and No/100 Dollars ($2,000,000.00). Tenant shall be entitled to carry a deductible of up to $10,000.00 in connection with the said coverage provided Tenant self-insures for the amount of the deductible. Commencing on the fifth (5th) anniversary of the Rent Commencement Date, and continuing thereafter on the fifth (5th) anniversary of the previous "Adjustment Date" (as hereinafter defined) during the Term (each of such dates being referred to in this Section 10.01 as an "Adjustment Date"), the aforesaid minimum amount of insurance coverage shall be increased to the amount equal to the initial minimum amount set forth above increased at the rate of three percent (3%) per annum compounded on each anniversary of the Rent Commencement Date throughout the Term.

(c)    Business interruption insurance covering losses resulting from any interruption of Tenant's business in an agreed amount equal to at least twelve (12) months of all Rent payable under this Lease and shall contain an agreed amount endorsement waiving any coinsurance penalty.

(d)    Workers' compensation insurance, in a form prescribed by the laws of the state in which the Premises is located, and employers' liability insurance.

(e)    In addition, Tenant shall, at Landlord's request, provide, keep and maintain in full force and effect such other insurance for such risks as is determined by Landlord in its reasonable discretion consistent with then customary practices of comparable tenants operating for comparable purposes from comparable premises in the vicinity of the Premises.

22

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

(f)    Tenant's right to self-insure with respect to the deductibles under subsections (a) and (b) of this Section 17.1 shall be subject to Tenant agreeing not to hold Landlord, its agents, contractors and employees, liable for any losses, claims and liabilities which would have been covered under such insurance.

17.2    **Requirements**. All insurance required under Section 17 hereof shall be written by companies of recognized financial standing (with a rating from Best's Insurance Reports of not less than A-/X) which are authorized to do insurance business in the State where the Premises is located, shall name Landlord as an additional insured party, shall be reasonably satisfactory to Landlord in all respects and shall expressly provide (a) an effective waiver by the insurer of all rights of subrogation against any named insured and against such insured's interest in the Premises and against any income derived therefrom, (b) that no cancellation, reduction in amount or material change in coverage thereof shall be effective unless Landlord and Tenant shall have been given at least twenty (20) days advance written notice thereof, and (c) that during construction, reconstruction, alteration or material remodeling of any Improvements on the Premises by Tenant such policies shall be in "builder's risk" form if there would be an exclusion of coverage under Tenant's all-risks policy as a result of such construction, reconstruction, alteration or material remodeling. A copy of each policy or of a reasonably acceptable certificate of insurance in force, issued by the insurer as provided in Section 17.1 hereof, shall be delivered to Landlord on or before the date Tenant is required to obtain the applicable insurance, and with respect to renewal or replacement policies, not less than twenty (20) days prior to expiration of the policy being renewed or replaced. Tenant may obtain the insurance required hereunder by endorsement on its blanket insurance policies, provided that said policies fulfill the requirements of this Section 17.2 that said policies reference the Premises, and that Landlord receives satisfactory written proof of coverage. Tenant shall permit Landlord to examine all policies evidencing the insurance required to be maintained by Tenant under this Lease. Nothing contained in this Lease shall be construed to require Landlord to prosecute any claim against any insurer or to contest any settlement proposed by any insurer. To the extent of the amount of insurance or self-insurance required to be maintained by Tenant, Tenant hereby releases Landlord, its agents and employees from any liability for damage to property or injury to persons, regardless of the cause of such damage or injury.

17.3    **Certificates**. Within fifteen (15) days after receipt of written request from Landlord, Tenant shall deliver to Landlord a certificate addressed to Landlord, signed by Tenant, and dated within thirty (30) days prior to the delivery thereof, which lists the insurers and policy numbers evidencing all the insurance then required to be maintained by Tenant hereunder, and which warrants that said insurance is in full force and effect and that such insurance and the policies evidencing the same comply with the requirements of this Lease. In the event that Tenant fails to obtain, maintain or renew any insurance provided for in this Article 17 or to pay the premiums therefor, or to deliver to Landlord any of such certificates, Landlord may, but shall not be obligated to, procure such insurance, pay the premiums therefor or obtain such certificates and any costs or

23

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

expenses incurred by Landlord for such purposes shall be Additional Rent hereunder and shall be immediately paid by Tenant to Landlord upon demand by Landlord, with Interest thereon at the Default Rate.

17.4 **Landlord's Insurance**. During the Term, Landlord may, but shall not be obligated to, procure and maintain with respect to the Premises a policy of commercial liability insurance in a minimum amount of $1,000,000.00 per claim and $3,000,000.00 in the aggregate for both bodily injury and property damage insuring Landlord's activities with respect to the Premises and the Building for loss, damage or liability for personal injury or death of any person or loss or damage to property occurring in, upon or about the Premises or the Building. Tenant shall reimburse Landlord for the cost of such insurance as Additional Rent.

17.5 **Waiver of Subrogation**. Tenant and Landlord each hereby waive any and all rights of recovery against the other, or against the officers, employees, agents and representatives of the other, for loss of or damage to such waiving party or its property or the property of others under its control to the extent that such loss or damage is insured against under any insurance policy in force at the time of such loss or damages. Tenant shall, upon obtaining the policies of insurance required hereunder, give notice to the insurance carrier or carriers that the foregoing mutual waiver of subrogation is contained in this Lease.

18.   Tenant's Maintenance Responsibilities.    Tenant shall be responsible for maintaining, repairing, and replacing the systems and structures in and on the Premises, including, but not limited to, all improvements, signs, the parking lot, landscaping, and equipment located at the Premises, in accordance with the following:

18.1   Tenant, at all times during the Term, at its expense, shall keep the Premises, including, without limitation, the Premises, in good order, condition and repair and in substantially the condition on the completion of construction. Tenant further agrees to be responsible for maintaining the landscaping surrounding the building and parking area in accordance with first-class landscape maintenance standards and for snow and ice removal, sweeping and cleaning the entrances to the building in addition to the parking lot, sidewalks, and other improved areas of the Premises. Tenant will provide and maintain vermin-proof receptacles for Tenant's own use in the event refuse is temporarily stored outside of the Building, and Tenant will be responsible for the removal of said refuse and will promptly and strictly comply with all health, sanitary or other laws, regulations and ordinances pertaining to the depositing and removal of such refuse from or about the Premises, including the storage and removal of any medical waste. Tenant shall promptly perform such maintenance and shall promptly make or cause to be made any and all necessary or appropriate repairs, replacements, or renewals (all or any one of which herein referred to as "Repairs"). All Repairs shall be at least equal in quality and class to the original work. The term "Repairs" includes, without limitation, all necessary repairs and replacements of the Premises (including, without limitation, the roofs,

24

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

foundations, all interior and exterior walls, and all structural and non-structural portions of the buildings and other improvements), structural or otherwise, ordinary or extraordinary, foreseen and unforeseen, howsoever the necessity or desirability for repairs or replacements may occur, and whether or not necessitated by wear, tear, obsolescence or defects, latent or otherwise, including but not limited to the exterior and interior windows, doors and entrances, signs, floor coverings, columns and partitions; plumbing systems, electric systems; and lighting, heating, plumbing and sewerage facilities, storm drainage system,  any water retention ponds, and HVAC systems and equipment.

18.2    Landlord shall have the right to approve the plans and specifications for any alterations, additions, improvements, repairs and replacements, if any, to the Premises which are structural in nature or affect the building systems or the exterior of any improvements, and the estimated cost thereof, which approval shall not be unreasonably withheld or delayed.

18.3    If at any time during the Term, including renewals or extensions, Tenant fails to maintain the Premises or make any repairs or replacements as required by this Section 18, Landlord may, but shall not be required to, enter the Premises and perform the maintenance or make the repairs or replacements for the account of Tenant; any sums expended by Landlord in so doing, together with interest at ten percent (10%) per annum, shall be deemed Additional Rent and shall be immediately due from Tenant on demand of Landlord.

18.4    Except for Landlord's Work, Landlord shall not be required to make any alterations, reconstructions, replacements, changes, additions, improvements, repairs or replacements of any kind or nature whatsoever to the Premises, or any portion thereof, or to any of the Improvements at any time during the Term of this Lease. Tenant waives any law that would require Landlord to maintain the Premises in a tenantable condition or would provide Tenant with the right to make repairs and deduct the cost of those repairs from the rent.

19.    Brokers.  Landlord and Tenant each represent to the other that it has had no dealings with any real estate broker or agent in connection with the negotiation of this Lease.  In the event either party has dealt with any broker such party shall indemnify, defend and hold forever harmless the other party from and against any claim by such broker.

20.    Compliance with Laws.  Tenant shall and cause the Premises to comply with all laws, rules, and orders of all federal, state, and municipal governments or agencies, and all regulations and guidelines promulgated under or similar to any all of the foregoing, as the same may be amended from time to time, that may be applicable to use of the Premises (collectively, "Laws"). Tenant, at its sole cost and expense, shall comply with all restrictive covenants, conditions, restrictions, declarations, and other title exceptions affecting the Premises, including any declarations, covenant, condition or other

25

restrictions of record (collectively "Restrictions"), and comply with and perform all of the obligations set forth in such Restrictions to the extent that the same are applicable to the Premises or to the extent that the same would, if not complied with or performed, impair or prevent the continued use, occupancy and operation of the Premises for the purposes set forth in this Lease. Notwithstanding the Permitted Use or any other provision of this Lease, Landlord does not represent, warrant or covenant in any respect whatsoever that the Permitted Use or any element of Tenant's existing or future operations is or will be permitted under applicable zoning, codes and regulations of any governmental or quasi-governmental authority. Tenant is solely responsible for verifying the same.

21.    Liens. Any work on the Premises performed by or for Tenant hereunder shall be performed subject and pursuant to the provisions of this Lease. Upon completion thereof and Landlord's written request, Tenant shall furnish Landlord with lien waivers confirming that all contractors, subcontractors, laborers, and materialmen who have performed work on the Premises have been paid in full. Such lien waivers shall be in a form reasonably acceptable to Landlord and in accordance with applicable laws of the State where the Premises are located.  Tenant shall pay, when due, all claims for labor or materials furnished to or for Tenant at or for use in the Premises, which claims are or may be secured by any mechanics or materialmen's lien against the Premises or any interest therein.  Tenant shall give Landlord not less than ten (10) days' written notice prior to the commencement of any work in the Premises, and Landlord shall have the right to post notices of nonresponsibility in or on the Premises as provided by law. If any such lien or claim of lien shall at any time be filed against the Premises, or Tenant's interest therein or hereunder, by reason of Tenant's acts or omissions or because of a claim against Tenant or any contractor, subcontractor or materialman of Tenant or any other reason other than by or through Landlord, Tenant shall cause the lien or claim of lien to be canceled and discharged of record by bond or otherwise within twenty (20) days after the earlier of Tenant's actual knowledge thereof or receipt of written notice from Landlord and Tenant shall indemnify and save and hold Landlord harmless from and against any and all costs, liabilities, suits, penalties, claims and demands whatsoever, and from and against any and all attorneys' fees, at both trial and all appellate levels, resulting or on account thereof and therefrom, including providing a defense for Landlord with counsel reasonably satisfactory to Landlord and Tenant. If Tenant fails to cause such lien or claim of lien to be so discharged or bonded within such period, Tenant shall be in default hereunder, and, in addition to any other right or remedy it may have, the Landlord may, but shall not be obligated to, discharge the same by paying the amount claimed to be due or by procuring the discharge of such lien or claim by deposit in court or bonding, and in any such event, the Landlord shall be entitled, if Landlord so elects, to compel the prosecution of an action for the foreclosure of such lien or claim by the lienor or claimant and to pay the amount of the judgment, if any, in favor of the lienor, with interest, costs and allowances. Tenant shall pay as additional rent on demand any sum so paid by Landlord for the aforesaid purposes with interest as hereinafter provided and all costs and expense incurred by Landlord including, but not limited to reasonable attorney's fees

26

DocuSign Envelope ID: EC1B34A1-E8B3-4D7C-A910-CF23953FFA1D

in processing such discharge or in defending any such action. **THE INTEREST OF THE LANDLORD SHALL NOT BE SUBJECT TO LIENS FOR IMPROVEMENTS MADE BY TENANT**.

22.      <u>Tenant to Subordinate</u>.  This Lease and the rights of Tenant hereunder are and shall be subject and subordinate at all times to any ground lease, mortgage, deed of trust, or other lien created by Landlord, whether now existing or hereafter arising upon the Premises, and to all amendments, modifications, renewals, extensions, consolidations and replacements thereof, and to all advances made or hereafter to be made upon the security thereof (collectively, an "Encumbrance"). Notwithstanding anything to the contrary contained herein, any holder of such an Encumbrance (a "Holder") may subordinate, in whole or in part, such Encumbrance to this Lease on such terms and subject to such conditions as such Holder may deem appropriate in its discretion without joinder of Tenant by sending Tenant notice in writing. Tenant agrees within five (5) days of request by Landlord or any Holder to execute and deliver to Landlord or such Holder such further instruments, in form and content acceptable to the requesting party, consenting to or confirming the subordination of this Lease to any Encumbrance now existing or hereafter placed upon the Premises or any part thereof, or attorning to such Holder, and containing such other provisions, as Landlord or such Holder may request. Tenant shall, in the event of the sale or assignment of Landlord's interest in the Premises, or in the event of any proceedings brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage or deed of trust made by Landlord covering the Premises, attorn to the purchaser and recognize the purchaser as Landlord under this Lease. The subordination and attornment set forth in this Section are self-operative and no further instrument of subordination and/or attornment will be necessary unless required by Landlord or the holder of a mortgage or deed of trust. Further, Tenant shall execute and deliver to Landlord and any Landlord's lender, within ten (10) business days after Landlord's written request therefor, an SNDA or other subordination, no disturbance and attornment agreement substantially in the form of Exhibit D hereto or as reasonably requested by Landlord's lender. In the event that the lender, mortgagee, beneficiary, or any other person, acquires title to the Premises pursuant to the exercise of any remedy provided for in the mortgage or deed of trust, this Lease shall not be terminated or affected by said foreclosure or sale, or any such proceeding, and the lender, mortgagee or beneficiary shall agree that any sale of the Premises pursuant to the exercise of any rights and remedies under the mortgage or deed of trust in the nature of a mortgage, shall be made subject to this Lease and the rights of the Tenant hereunder and Tenant's rights arising out of this Lease shall not be enlarged, affected or disturbed, subject to the terms of any SNDA. Tenant agrees to attorn to the lender, beneficiary or such other person as its new landlord, and this Lease shall continue in full force and effect as a direct lease between Tenant and Lender, mortgagee, beneficiary or such other person, upon all the terms, covenants, and agreements set forth in this Lease. The parties hereto agree to execute or obtain execution of such reasonable documents as may be necessary to effectuate such subordination, non-disturbance, and attornment.

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

23.    Quiet Enjoyment.  Subject to the rights of mortgagees and matters of record, Landlord hereby covenants and agrees that so long as Tenant has performed and observed all terms, conditions, covenants or obligations required under this Lease, Tenant shall have quiet enjoyment of the Premises and all appurtenances thereto. Tenant hereby acknowledges and agrees that this covenant and any and all other covenants of Landlord contained in this Lease shall be binding upon Landlord and its successors only with respect to breaches occurring during the ownership of Landlord's interest hereunder.

24.    Memorandum of Lease.    Following Landlord's acquisition of the Premises, Landlord agrees that Tenant can record a recordable memorandum or notice of this Lease in the form attached as Exhibit G or in form otherwise reasonably satisfactory to Landlord upon Tenant's written request.  Tenant shall be responsible for the preparation thereof, recording and the cost of recording the same.

25.    Notices.  All notices, demands and requests which may be or are required to be given by either party to the other shall be in writing and shall be either (a) sent by registered or certified mail, return receipt requested, postage prepaid, (b) delivered, by hand, or (c) sent by overnight courier such as Federal Express.  All notices to Landlord should be addressed to Landlord at the address set forth in the Data Sheet or at such other place as Landlord may from time to time designate in written notice to Tenant.  All notices to Tenant shall be addressed to Tenant at the address set forth in the Data Sheet or to any such other place as Tenant may from time to time designate in written notice to Landlord.  All notices, demands and requests which shall be served upon Landlord and Tenant in the manner aforesaid shall be deemed sufficiently served or given for all purposes hereunder.  Notwithstanding anything contained in this Lease to the contrary, any written notice by either Landlord or Tenant to the other party may be transmitted by email, and that the email copies of such party's signature shall have the same effect as if it were an original signature, provided that the party providing such notice obtains a delivery confirmation email.

26.    Estoppel Certificate.  Each of Landlord and Tenant agrees at any time and from time to time upon not less than 10 business days' prior written request by the other to execute, acknowledge and deliver to the other an estoppel certificate certifying that (a) this Lease is unmodified and in full force and effect (or if there have been modifications that the same is in full force and effect as modified and stating the modifications), (b) the dates to which Rent and other charges have been paid in advance, if any, (c) to such party's knowledge, all of the defaults of Landlord or Tenant hereunder, if any, (and if there are no defaults a statement to that effect), and (d) any other information reasonably requested, it being intended that any such estoppel certificate delivered pursuant to this Section 26 may be relied upon by any prospective purchaser of the Premises or any mortgagee or assignee of any mortgage upon the fee or leasehold of the Premises or by any prospective assignee of this Lease or subtenant of the whole or any portion of the Premises and/or by other party interested in the Premises or any part thereof.

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

27.    Landlord's Sale of the Building.  Landlord may, at any time, without the prior consent of Tenant, contract to and/or perform any of the following transactions with respect to an interest in Landlord, the Lease, the Premises, the realty underlying the Premises, and/or any portion of or interest in the realty or improvements owned or hereafter acquired by Landlord: sale, purchase, exchange, transfer, assignment, lease, conveyance (collectively referred to herein as "Sale"); and/or encumbrance, pledge, mortgage, deed of trust, hypothecation or sale and leaseback transaction (collectively referred to herein as "Mortgage").  From and after a Sale, Landlord shall be released from all liability to Tenant and Tenant's successors and assigns arising from this Lease because of any act, occurrence or omission of Landlord occurring after such Sale, and Tenant shall look solely to Landlord's successor in connection with the same.  The obligations contained in this Lease to be performed by Landlord shall, except as aforesaid, be binding on Landlord's successors and assigns only during their respective periods of ownership.  Tenant agrees to and shall look solely to Landlord's interest in the Premises, including the rents and profits therefrom, for the satisfaction of any liability, duty or obligation of Landlord with respect to this Lease or the relationship of Landlord and Tenant hereunder, and no other assets of Landlord, its members, partners, affiliates, employees, agents, successors and assigns shall be subject to any liability therefor.  In no event shall Tenant seek, and Tenant does hereby waive any recourse against Landlord's individual members, partners, shareholders, employees, or agents of Landlord or any of their personal assets for such satisfaction.

Any provision, term or condition of this Lease which is or which may appear to be to the contrary notwithstanding, Landlord shall, at all times and from time to time after the date of this Lease, have the express right, power and privilege of pledging, conveying, assigning or mortgaging Landlord's fee simple title in and to the Premises and/or Landlord's reversionary right to the Improvements, for the purpose of obtaining financing, credit, or as security for any financing or extension of credit.

28.    Landlord's Solar Lease and Charging Station.

29.1    **Solar Lease**.  Tenant acknowledges that Landlord shall have the option, at Landlord's sole discretion, to enter into a separate lease with a solar provider ("Solar Lease") and install solar panels and associated equipment, including but not limited to mechanical and electrical equipment necessary to service such panels, which may be located elsewhere in the Premises (collectively the solar panels and related equipment are referred to herein as the "Solar Panels") on the rooftop of, and within, the Demised Premises.  This Lease will be subject to the Solar Lease. Upon Landlord's election to install Solar Panels on the Premises, the parties will work in good faith to execute any documents required in order to the Solar Panels shall be operated and maintained in compliance with any applicable Laws and Landlord shall be responsible for the maintenance, repair and replacement of the Solar Panels in such a way as to minimize wear and tear on the roof; provided however that Tenant shall be responsible for any repairs or replacement of the Solar Panels to the extent Tenant, its agents, contractors

29

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

or employees, damage the Solar Panels or any component thereof. Tenant agrees to cooperate with Landlord (at no expense to Tenant) in connection with such installation, including any metering system which Landlord may elect to install related to such Solar Panels and will agree to execute a separate agreement regarding such Solar Panels up request from Landlord.

29.2    **Charging Station**. Tenant acknowledges that Landlord shall have the right, in Landlord's sole discretion, enter into a separate license agreement with a charging station provider ("EV Lease") and to install 1 or more electric vehicle car charging stations ("EV Stations") in the parking area of the Premises; provided Landlord shall secure and maintain in force and effect all governmental licenses, permits and approvals required for the installation and use of the EV Stations. This lease shall be subject to the EV Lease. The EV Station will not affect the Minimum Rent or Additional Rent hereunder. Tenant, its employees and any visitors conducting business at the Premises will have access to and be allows to use the EV Stations in accordance with the rules and regulations promulgated by Landlord. Tenant agrees to cooperate with Landlord (at no expense to Tenant) in connection with such installation, including any metering system which Landlord may elect to install related to such EV Stations and will agree to execute a separate agreement regarding such EV Stations up request from Landlord.

30.    <u>Landlord's Liability</u>. In no event shall Landlord be in default hereunder unless it has failed to cure such default within thirty (30) days after written notice (or if more than thirty (30) days shall be required because of the nature of the default, if Landlord shall fail to proceed diligently to cure such default after written notice); provided that in any event: (i) Tenant shall have no right to offset or abate rent in the event of any default by Landlord under this Lease, except to the extent offset rights are specifically provided to Tenant in this Lease; (ii) Tenant shall have no right to terminate this Lease; and (iii) Tenant's rights and remedies hereunder shall be limited to the extent (A) Tenant has expressly waived in this Lease any of such rights or remedies and/or (B) this Lease otherwise expressly limits Tenant's rights or remedies. It is expressly understood and agreed that any money judgment resulting from any default or other claim arising under this Lease shall be satisfied only out of Landlord's interest in the Premises, and no other real, personal or mixed property of Landlord (the term "Landlord" for purposes of this Section only shall mean any and all partners, both general and/or limited, officers, directors, shareholders and beneficiaries, if any, who comprise Landlord), wherever situated, shall be subject to levy on any judgment obtained against Landlord. Tenant hereby waives, to the extent waivable under law, any right to satisfy a money judgment against Landlord except from Landlord's interest in the Premises. If such interest is not sufficient for the payment of such judgment, Tenant will not institute any further action, suit, claim or demand, in law or in equity, against Landlord for or on the account of such deficiency. Notwithstanding anything herein contained to the contrary, Tenant hereby waives, to the extent waivable under law, any right to specific performance in the event of Landlord's default referred to herein, and Tenant expressly agrees that except as provided in the immediately following sentence, Tenant's remedy shall be limited to the monetary damages referred to in this

30

Section 32. Notwithstanding the foregoing, in the event of failure by Landlord to give any consent, as provided in this Lease, Tenant's sole remedy shall be an action for specific performance at law, but in no event shall Landlord be responsible in monetary damages for failure to give such consent. In no event shall any partner of Landlord nor any joint ventures in Landlord, nor any officer, director or shareholder of Landlord or any such partner or joint ventures of Landlord be personally liable with respect to any of the provisions of this Lease.  Under no circumstances whatsoever shall Landlord ever be liable hereunder for consequential, punitive or special damages.

31.    Surrender of Premises.  At the expiration of the Term, whether by expiration of time or otherwise, Tenant shall surrender the Premises to Landlord in broom clean condition free of debris and rubbish, excepting damage caused by ordinary wear and tear. All alterations which may be made by Tenant shall be the property of Landlord.  Tenant shall remove all Tenant's Property from the Premises no later than the termination or expiration date.  Tenant shall, at its sole cost and expense, repair any damage to the Premises or the improvements caused by such removal, including patching and filling holes, ordinary wear and tear excepted.

Any of Tenant's Property not removed from the Premises by the date this Lease terminates or expires shall be deemed abandoned and shall thereupon become the property of Landlord. Landlord may possess and dispose of such property. This provision shall apply under all circumstances, including default by Tenant under this Lease. All costs incurred by Landlord in removing and disposing of such Tenant's Property (plus 10%) shall be paid by Tenant within thirty (30) days after delivery to Tenant of an invoice therefor.

32.    Holding Over.  In the event Tenant remains in possession of the Premises after the expiration of the Term, or any extensions hereof without the written consent of Landlord, this Lease shall continue on a month-to-month basis, and not a renewal of this Lease, nor an extension for the Term, and shall be terminable by either party upon 30 days' prior written notice and Tenant shall be obligated to pay Rent at 150% the then current rate, with all other sums then payable hereunder prorated on a daily basis for each day that Landlord is kept out of possession of the Premises.  Tenant shall during any such holdover period continue to pay any Additional Rent that would otherwise be payable under this Lease.

If Tenant fails to surrender the Premises upon the termination of this Lease, then Tenant shall, in addition to any other liabilities to Landlord accruing therefrom, indemnify and hold Landlord harmless from any losses or damages suffered by Landlord in connection with, or any claims made by, any succeeding tenant arising out of such failure, so long as Landlord gives written notice to Tenant that Landlord and such succeeding tenant have entered into a lease or other agreement for such tenant's use and occupancy of the Premises.

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

33.    Binding Effect.  All covenants, agreements, stipulations, provisions, conditions and obligations set forth herein shall extend to, bind and inure to the benefit of, as the case may require, the successors and assigns of Landlord and Tenant respectively, as fully as if any such successor or assign was referenced to wherever reference to Landlord or Tenant, as the case may be, occurs in this Lease.

34.    Severability.  If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and be enforced to the fullest extent permitted by Law.

35.    Applicable Law.  The Laws of the State where the Premises are located shall govern the validity, performance and enforcement of this Lease, without regard to such State's conflict-of-law principles and each Party agrees to the jurisdiction of the courts for said county wherein the Premises are located for any judicial proceedings arising out of the Lease.

36.    Force Majeure.  Whenever a day is appointed herein on which, or a period of time is appointed within which, either party hereto is required to do or complete any act, matter or thing, excluding any and all payments of amounts due hereunder, the time for the doing or completion thereof shall be extended by a period of time equal to the number of days on or during which such party is prevented from, or is interfered with, the doing or completion of such act, matter or thing because of strikes, lock-outs, embargoes, unavailability of labor or materials, wars, insurrections, rebellions, civil disorder, declaration of national emergencies, acts of God or other causes beyond such party's reasonable control; provided, however, in no event shall the foregoing apply to the financial obligations of either Landlord or Tenant to the other under this Lease, including Tenant's obligation to pay Minimum Rent, Additional Rent or any other amount payable to Landlord hereunder.

37.    Complete Agreement.  Any stipulations, representations, promises or agreements, oral or written, made prior to or contemporaneously with this agreement by Landlord and Tenant shall have no legal or equitable consequences and the only agreement made and binding upon the parties with respect to the leasing of the Premises is contained herein, and it is the complete and total integration of the intent and understanding of Landlord and Tenant with respect to the leasing of the Premises. No amendment or modification of this Lease shall be valid or binding unless reduced to writing and executed by the parties hereto in the same manner as the execution of this Lease.

38.    Counterparts.  This Lease may be executed in any number of counterparts via facsimile or electronic transmission or otherwise, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

39.    Incorporation of Exhibits and Schedules.  This Lease is subject to the provisions of the attached Exhibits A-H, inclusive, which exhibits are hereby made a part of this Lease.

40.    Guaranty.  As a condition to the effectiveness of this Lease, the obligations of Tenant under this Lease shall be guaranteed by Neuragenex Treatment Centers LLC ("Guarantor"), pursuant to a guaranty in form attached hereto as Exhibit "H" ( the "Guaranty").

41.    Authority.  Landlord and Tenant represents to the other party as follows:  Such party, if a corporation, limited liability company, limited partnership, or partnership is duly formed and validly existing under the laws of the state of its formation and is duly qualified to do business in the State where the Premises is located.  Tenant has all requisite power and all governmental certificates of authority, licenses, permits, qualifications and other documentation to lease the Premises and to carry on its business as now conducted and as contemplated to be conducted.  Each person signing on behalf of Landlord or Tenant is authorized to do so.  The foregoing representation in this Section 41 shall also apply to any corporation, limited liability company, limited partnership, or partnership which is a general partner or joint ventures of Tenant.

42.    No Merger of Title. No merger of the leasehold estate created by this Lease with the fee estate of Landlord shall occur notwithstanding the fact that the same person may own or hold both the leasehold estate created by this Lease or any interest therein and the fee estate in the Premises or any interest therein. No such merger shall occur unless and until all persons or entities (including any mortgagee with respect to the fee estate of Landlord) having any interest in the leasehold estate created by this Lease or the fee estate in the Premises shall join in a written instrument effecting such merger and shall duly record the same.

43.    Waiver of Redemption. Tenant hereby waives and surrenders any right or privilege under any present or future constitution, statute or law to redeem the Premises or to continue this Lease after the termination of this Lease for any reason, and the benefits of any present or future constitution, statute or rule of law which exempts property from liability for debt or for distress for rent.

44.    No Waiver. Failure of Landlord or Tenant to insist upon the strict performance by the other party of any term, condition or covenant on such other party's part to be performed pursuant to the terms of this Lease or to exercise any option, right, power, or remedy contained in this Lease shall not be or be deemed to be a waiver of such performance or relinquishment of such right now or at any time subsequent hereto. The receipt by Landlord of any Minimum Rent or Additional Rent required to be paid by Tenant hereunder with knowledge of any Event of Default by Tenant shall not be or be deemed to be a waiver of such Event of Default. No waiver by Landlord or Tenant of any provision

33

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FEA1D

of this Lease shall be or be deemed to have been made unless expressed in writing and signed by Landlord or Tenant, as the case may be.

45.    Acquisition Contingency.  Tenant acknowledges that Landlord does not currently own the Premises and that this Lease and Landlord's obligations hereunder are strictly contingent upon Landlord acquiring fee simple ownership of the Premises on or before 11/1/2022 (the "Acquisition Deadline") on terms satisfactory to Landlord in its sole and absolute discretion, the foregoing being "Landlord's Acquisition Contingency". In the event Landlord has not satisfied Landlord's Acquisition Contingency on or before Acquisition Deadline, then both Landlord and Tenant shall have the right to terminate this Lease upon written notice to the other at any time prior to Landlord's acquisition of the Premises.  Notwithstanding the foregoing, Landlord shall not be subject to any liability if Landlord fails to acquire the Property and deliver the Premises to Tenant nor shall any resulting delay in delivery of the Premises affect or reduce Tenant's obligations hereunder.

46.    Costs of Enforcement.  If Landlord or Tenant defaults under this Lease or there is a dispute under this Lease, then the defaulting party or the party not prevailing in such dispute shall pay, on demand, the out-of-pocket costs and expenses incurred by the other party in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees.

47.    Financial Statements.  If Landlord desires to sell the Premises, refinance any loan secured by the Premises or obtain additional financing to be secured by the Premises, then Tenant, and any sublessee or assignee of Tenant, shall deliver to any lender designated by Landlord its audited financial statement for the most recently concluded two (2) calendar years; provided that Landlord acknowledges that the statement for the most recently concluded calendar year shall not be available until March 31 of the following calendar year.  All such financial statements shall be received in confidence and shall be used only for the purposes herein set forth.

48.    Severability.  The invalidity of any provision of this Lease as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof. Each provision of the Lease performable by Landlord or Tenant, as applicable, shall be deemed both a covenant and a condition.

49.    Time of Essence.  Time is of the essence of this Lease and the performance of all obligations of the parties hereunder.  All references in this Lease to "days" shall mean calendar days unless specifically modified herein to be "business" days.

50.    Waivers.  No waiver by Landlord or Tenant of any provision hereof shall be deemed a waiver of any other provision hereof or of any subsequent breach by the other party of the same or any other provision.  Landlord's or Tenant's consent to or approval of any act shall not be deemed to render unnecessary the obtaining of Landlord's or Tenant's

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

consent to or approval of any subsequent act by the other party. The acceptance of Rent hereunder by Landlord shall not be a waiver of any preceding breach by Tenant of any provision hereof, other than the failure of Tenant to pay the particular rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent.

51.    <u>Waiver of Jury</u>. Landlord and Tenant each hereby waive their respective rights to a jury trial in any action or proceeding brought by either party hereto and arising out of or relating to this Lease and/or the Premises.

52.    <u>Governing Law</u>. This Lease has been delivered and executed in, and shall in all respects be governed by, subject to, enforced and construed in accordance with the laws of the state where the Premises is located, including all matters of construction, validity, performance and enforcement.

53.    <u>Consent</u>. The consent by one party to any act by the other for which such consent was required shall not be deemed to imply consent or waiver of the necessity of obtaining such consent for the same or any similar acts in the future. No waiver or consent shall be implied from silence or any failure of a party to act, except as otherwise specified in this Lease.

54.    <u>Reimbursed Equipment</u>. Landlord shall pay to Tenant or at Tenant's request, directly to Tenant's vendors, upon the terms and conditions below, an allowance as consideration for certain medical equipment to be used in the Premises (the "Reimbursed Equipment") in an amount up to Eight Hundred and fiftyThousand Dollars ($850,000.00) (the "Equipment Allowance") subject to change or increase with both parties approval. Landlord shall pay the Equipment Allowance to Tenant within thirty (30) days after Tenant has satisfied all of the following conditions: (i) Tenant is not in default under this Lease and all sums payable by Tenant under this Lease are current, (ii) the Premises are fully fixtured, stocked, staffed, and open for business, and (iii) Tenant has submitted to Landlord copies of all invoices or other evidence of amounts claimed to be spent in in acquiring the Reimbursed Equipment, which invoices shall include identifying information regarding such Reimbursed Equipment or in the alternative, upon Tenant's request, Landlord shall pay Tenant's vendors directly upon receipt of an invoice or any portion of the Reimbursed Equipment. In the event that Tenant shall remove or replace the Reimbursed Equipment during the initial Term of this Lease, Tenant shall replace with equipment of value equal to the element of Reimbursed Equipment being removed or replaced, which value may be amortized on a straight-line basis over the initial Term, and such replacement equipment shall become Reimbursed Equipment. Tenant shall immediately deliver identifying information of such Reimbursable Equipment to Landlord. Tenant shall not grant any interest, lien or other rights in the Reimbursable Equipment at any time during the Term of this Lease, except to Landlord (collectively, the "Collateral").

35

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

Tenant hereby grants Landlord a security interest in and does hereby collaterally assign, pledge, mortgage, convey and set over unto Landlord all of the Reimbursed Equipment , whether now owned or hereafter acquired, or in which Tenant now has or shall hereafter acquire any right, title or interest whatsoever and any and all replacements and substitutions thereof or therefor and proceeds therefrom.  In addition to the foregoing, Tenant shall do anything further that may be reasonably required by Landlord to secure Landlord and effectuate the intentions and objects of this Lease, including, without limitation, the execution and delivery of security agreements, contracts and any other documents required hereunder.  At Landlord's reasonable request, Tenant shall also immediately deliver (with execution by Tenant of all necessary documents or forms to reflect, implement or enforce the liens described herein), to obtain a perfected security interest in the Collateral.

Landlord is hereby authorized to file financing statements and amendments to financing statements without Tenant's signature, in accordance with the Uniform Commercial Code of the state where the Premises are located and where Tenant is formed.  Tenant hereby authorizes Landlord to file all such financing statements and amendments to financing statements describing the Collateral in any filing office as Landlord, in its sole discretion may determine.  Tenant agrees to comply with the requests of Landlord in order for Landlord to have and maintain a valid and perfected first security interest in the Collateral including, without limitation, executing and causing any other person to execute such documents as Lender may require.

[Signature pages follow]

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

IN TESTIMONY WHEREOF, Landlord and Tenant have caused this Lease to be executed as a sealed instrument, effective as of the day and year first above written.

**LANDLORD**:

13 Investments, LLC,
a Utah Corporation

By: _Mark Machlis_ ®

Name: Mark Machlis

Title: Real Estate Broker

Date: 1/31/2023 | 4:24 PM MST

**TENANT**:

Neuragenex Treatment Centers, LLC,
an Arizona Corporation

By: _____

Name: William Bozeman

Title: CEO

Date: 02/01/2023

37

3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

## EXHIBIT A

### LEGAL DESCRIPTION

**Common Address:** 3583 WEST 9800 SOUTH, SOUTH JORDAN, UT 84095, UT

Approximately 6,164 SF | MOB |

A-1

# **EXHIBIT B**

## **BUILDING SITE PLAN**

B-1

3583 WEST 9800 SOUTH, SUITES 102 AND 202 SOUTH JORDAN, UT 84095

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FEA10

## EXHIBIT F

## SCOPE OF WORK

I.     <u>DEFINED TERMS</u>

Terms used herein without definition shall have the same meanings ascribed to such terms in the Lease.  In addition, the following terms shall have the following meanings:

"<u>Building</u>" shall mean the components for the building to be located on the Premises as more particularly set forth in the Landlord's Plan and approved by Tenant as provided herein for all Landlord's Work.

"<u>Building Work</u>" shall mean (i) the building and (ii) the Exterior/Site Improvements to be constructed by Landlord on the Premises in accordance with Landlord's Plan.

"<u>Basis of Design</u>" shall mean those matters attached to this Work Letter as Schedule F-1, which schedule is incorporated by reference into this Work Letter.

"<u>Completion Notice</u>" shall have the meaning ascribed to such term in Paragraph II(F)(1) of this Exhibit F.

"<u>Exterior/Site Improvements</u>" shall mean the exterior and site improvements to the Property to be installed or constructed by Landlord as part of Landlord's Work, including but not limited to landscaping and final utility connections.

"<u>GC</u>" shall mean Built-More, LLC, a Tennessee limited liability company or such other general contractor selected by Landlord for construction of the Building Work.

"<u>Landlord's Architect</u>" shall mean the architect selected by Landlord for the design of the building.

"<u>Landlord's Engineer</u>" shall mean the civil engineer selected by Landlord for the design of the Exterior/Site Improvements.

"<u>Landlord's Representative</u>" shall be a single individual designated by Landlord in a written notice to Tenant (and who may be changed by Landlord at any time upon giving Tenant prior written notice thereof), who Landlord agrees shall be available to meet and consult with Tenant at the Premises as Landlord's Representative respecting the matters which are the subject of this Work Letter and who, as between Tenant and Landlord, shall have the power to legally bind Landlord with respect to notices from Landlord making requests for and approving changes, giving approval of plans or work, or otherwise giving directions to Tenant under this Work Letter.  Landlord hereby designates American Development Partners as Landlord's Representative (and Landlord may change such designation at any time by providing written notice to Tenant which designates a different Landlord's Representative).

"<u>Landlord's Plan</u>" shall mean the plans, specifications and working drawings prepared by Landlord's Architect and Landlord's Engineer substantially in accordance with the Basis of Design.

"<u>Landlord's Work</u>" shall mean Landlord's construction (including planning and

Substantial Completion of Landlord's Work as a whole shall also require that Landlord has delivered physical possession of, and access to, the Premises, including, but not limited to, the building.

"Substantially Complete" and similar phrases shall mean that the item of Landlord's Work in question has attained Substantial Completion as defined above.

"Target Date" shall mean 365 days following Landlord's acquisition of the Premises, the anticipated date of Substantial Completion, as such date may be extended pursuant to the terms and provisions of this Work Letter. Without limiting the foregoing, the Target Date shall be extended by the number of days of delay caused by Force Majeure and Tenant Delay.

"Tenant Delay" shall have the meaning set forth in the Lease.

"Tenant Layout Plan" shall mean a floor plan for the Premises laying out the location of all of Tenant's fixtures, furniture and equipment, including the location and requirements for all mechanical, electrical and plumbing connections within the Premises.

"Tenant's Representative" shall be a single individual designated by Tenant in a written notice to Landlord (and who may be changed by Tenant at any time upon giving Landlord prior written notice thereof), who Tenant agrees shall be available to meet and consult with Landlord at the Property as Tenant's Representative respecting the matters which are the subject of this Work Letter and who, as between Landlord and Tenant, shall have the power to legally bind Tenant with respect to notices from Tenant making requests for and approving changes, giving approval of plans or work, or otherwise giving directions to Landlord under this Work Letter. Tenant hereby designates _____ as Tenant's Representative (and Tenant may change such designation at any time by providing written notice to Landlord which designates a different Tenant's Representative).

"Work Letter" shall mean this Exhibit F to the Lease, including all schedules hereto.

## II.  LANDLORD'S WORK

A.      Building Plans.  Tenant and Landlord acknowledge that the timely delivery of design and other information is essential for compliance with the other elements of the schedule described below. On or before the twentieth (20th) day following the Effective Date, Tenant shall deliver Tenant's proposed Tenant Layout Plan to Landlord for review and approval. Within twenty (20) days following receipt of Tenant Layout Plan, Landlord will notify Tenant of any changes reasonably required by Landlord. If Landlord disapproves of the Tenant Layout Plan or any portion thereof or any modifications thereto submitted by Tenant, Landlord's notice of disapproval shall specify in detail the reasonable basis for such disapproval. Tenant shall promptly cause to be made such revisions to the Tenant Layout Plan for such work as may be necessary to address Landlord's reasonable objections and shall resubmit the plans and specifications for such work to Tenant for Tenant's approval. Landlord shall review such revisions and notify Tenant whether Landlord approves or reasonably disapproves the Tenant Layout Plan. This process shall be repeated, if necessary, until Landlord's reasonable objections have been addressed and Landlord has approved the Tenant Layout Plan. Landlord's approval of the Building Plans shall not be unreasonably withheld, conditioned or delayed and may include budgetary considerations. Following approval of the Tenant Layout

Tenant approves or reasonably disapproves the Building Plans. This process shall be repeated, if necessary, until Tenant's reasonable objections have been addressed and Tenant has approved the Building Plans. Tenant's approval of the Building Plans shall not be unreasonably withheld, conditioned or delayed, and Tenant shall not be entitled to condition its approval of the Building Plans upon the inclusion thereof of any design specifications or scope of work that is inconsistent with the Basis of Design.

B. Performance of Landlord's Work. Landlord shall apply for all required governmental approvals and building permits for Landlord's Work and diligently pursue the issuance of such approvals and permits. Promptly following issuance of the requisite permits and execution of Landlord's construction contract for Landlord's Work, Landlord will cause Landlord's Work to be commenced, completed, installed or performed, as the case may be, substantially in accordance with the Building Plans, except as the same may be changed in accordance with this Work Letter, and subject to Force Majeure and Tenant Delay.

C.    Changes In Building Plans.

(1)    Any changes in the scope of the Landlord's Work as detailed in the Building Plans shall be authorized by a written change order ("Change Order") which shall be executed as hereinafter provided.

(2)    <u>Tenant-Requested Changes</u>.

(a)    Although the same may constitute a Tenant Delay hereunder, without invalidating the Lease, by written notice to Landlord, Tenant may request changes in the Building Plans. Any such request shall be subject to Landlord's approval, which shall not be unreasonably withheld, conditioned or delayed. If Landlord approves Tenant's request, Landlord shall cause the GC to prepare, and Landlord shall deliver to Tenant, for Tenant's approval, a written estimate which shall include (i) the cost or credit, if any, of the proposed change (including reasonable supporting documentation evidencing such cost or credit), and (ii) the change, if any, in the Target Date if the proposed change is implemented (collectively, the "Change Order Estimate").

(b)    Within five (5) business days following Tenant's receipt of the Change Order Estimate, Tenant shall notify Landlord in writing of Tenant's election to either (i) accept the Change Order Estimate, or (ii) withdraw Tenant's requested revision to the scope of the Landlord's Work. If Tenant fails to so notify Landlord, it shall act as notice to Landlord that Tenant has withdrawn its request for a revision to the scope of the Landlord's Work. If Tenant so notifies Landlord that Tenant accepts the Change Order Estimate, Landlord shall prepare a Change Order setting forth the terms of the Change Order Estimate and deliver it to Tenant for signature. If Tenant fails to sign and return such Change Order to Landlord within five (5) business days after receipt thereof, such failure shall act as notice to Landlord that notwithstanding Tenant's prior written notice of acceptance of the Change Order Estimate, Tenant has withdrawn its requested revision to the Base Building Plans. Notwithstanding the foregoing, Landlord shall not be required to curtail any portion of the Landlord's Work during the pendency of Tenant's right to accept or withdraw

(3) <u>Landlord Changes</u>. The Building Plans are subject to modifications required by applicable governmental authorities in review of the Building Plans as part of the process of obtaining a building permit. During construction, Landlord shall have the right to make substitutions of material(s) of equivalent grade and quality, and to make changes necessitated by conditions met in the course of construction, provided Landlord shall seek Tenant's approval of any material change to the Building Plans which is not in conformity with the Basis of Design, which approval shall not be unreasonably withheld, conditioned or delayed. If Tenant reasonably disapproves of any material change requiring Tenant's approval, Tenant will provide Landlord a written statement setting forth with reasonable specificity its reason for such disapproval and Landlord shall resubmit its request with respect to such material change addressing Tenant's disapproval. If Tenant fails to respond in the times set forth above, such failure shall be deemed to constitute Tenant's approval of such change. This process shall continue until such change is approved or deemed to be approved.

D.    Acceptance by Tenant. The taking of possession of the Building by Tenant shall constitute an acknowledgment by Tenant that, other than with respect to completion of Punch List Items, (i) the Premises is in good condition, that Landlord has provided or constructed all improvements to be provided or constructed by Landlord in the Premises, and (ii) all materials and labor provided by Landlord are satisfactory. Upon Landlord's request, Tenant shall provide written confirmation of the foregoing.

E.    Tenant's Inspection Right.

(1)    Subject to the insurance requirements and the reasonable rules and regulations of the GC, Tenant's Representative and such advisors and consultants as Tenant reasonably deems appropriate shall have the right during normal working hours to enter upon the Premises for purposes of observation and inspection during the performance of Landlord's Work, provided that Tenant or Tenant's Representative shall have the obligation to provide prior notice of any such entry to the GC and Landlord's Representative and provided that Tenant and Tenant's Representative shall comply with GC's site safety rules. Access for such purposes shall not be deemed to constitute possession or occupancy; however, such entry and/or occupancy shall be subject to all of the terms and conditions of the Lease, except for the payment of Rent.

(2)    <u>Interim Correction of Defects</u>. Landlord shall promptly undertake and diligently prosecute (or cause the GC to undertake and prosecute) the correction of any defects in Landlord's Work of which Landlord is notified in writing and which have been verified by Landlord as a result of any of the aforesaid inspections by Tenant.

F.    Substantial Completion; Punch List.

(1)    <u>Completion Notice</u>. When Landlord's Work is Substantially Complete Landlord shall deliver written notice to Tenant ("Completion Notice"). As soon after Tenant receives the Completion Notice as is reasonably practicable (and in all events within ten (10) days thereafter),

objection by Tenant shall be in writing.  If Tenant does not respond within five (5) days after Tenant receipt of the Punch List, then Tenant shall be deemed to have accepted the Punch List.

(2)    Landlord shall complete all Punch List Items as soon as reasonably possible, but in all events within ninety (90) days after the parties have agreed upon the Punch List.

III.    TIMING OF CONSTRUCTION

A.    Target Date.  Subject to Force Majeure and Tenant Delays, Landlord agrees to use commercially reasonable efforts to cause Landlord's Work to be Substantially Completed on or before the Target Date.  If construction is delayed due to Unavoidable Delays or Tenant Delays, Landlord will, upon Tenant's written request, investigate with the GC to determine if it is possible to accelerate the completion of Landlord's Work (through overtime and the like) in order to reduce or eliminate any anticipated delay, and, if so, Landlord and the GC will identify the cost which will be associated with accelerating the completion of Landlord's Work to the extent delayed thereby.  If such acceleration is practicable, Landlord will, in consultation with and with the approval of Tenant, reasonably approve change orders allowing for such acceleration provided that if the delay is due to a Tenant Delay, the cost of such acceleration shall constitute Excess Costs which shall be paid in accordance with Paragraph IV below.

IV.    COST TO COMPLETE

A.    Building Work.  Except as otherwise set forth herein, Landlord shall be responsible for and shall pay when due all costs associated with the preparation of the Building Plans and the performance of the Building Work in accordance with this Work Letter.

B.    Payment for Tenant's Work.  Tenant shall be responsible for and shall pay when due all costs associated with the preparation of the Tenant Layout Plan.

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

# EXHIBIT H

## FORM OF GUARANTY

### GUARANTY

WHEREAS, 13 Investments, LLC   ("Landlord") and Neuragenex Treatment Centers, LLC ("Tenant"), have entered into a certain lease agreement dated on or about the date hereof, covering certain premises located at 3583 WEST 9800 SOUTH, SUITES 102 AND 202, SOUTH JORDAN, UT 84095

WHEREAS the Landlord requires as a condition to its execution of the Lease that the undersigned (the "Guarantor") unconditionally becomes a guarantor to Landlord for the obligations of Tenant under the Lease; and

WHEREAS the undersigned is the Founder, President and CEO of Tenant and as such is desirous that Landlord enter into the Lease with Tenant.

NOW THEREFORE, in consideration of the execution of the Lease by Landlord and other good and valuable consideration and intending to be legally bound hereby, the undersigned hereby unconditionally becomes a guarantor to Landlord, its successors and assigns as follows:

1.      The undersigned unconditionally guaranties, as a primary obligor and not as a surety, the full, faithful and punctual payment of all sums of rent and other amounts payable under the Lease and performance of each and all of the covenants, agreements and conditions of the Lease, to be kept and performed by Tenant (subject to all applicable notice and/or cure periods set forth in the Lease), in accordance with and within the time prescribed by the Lease (hereinafter collectively referred to as the "Liabilities"). Guarantor's obligations under this Guaranty are irrevocable, continuing and unconditional. If Tenant defaults at any time in the payment of any rents, charges or other sums due under the Lease or in the performance of any of the other covenants and obligations of Tenant thereunder, on demand of Landlord Guarantor shall fully and promptly pay all such rents, charges and other sums and otherwise perform at Guarantor's sole cost and expense all such covenants and obligations, including without limitation the payment of interest on past due obligations of Tenant, of any and all costs advanced by Landlord, and of any and all damages and expenses (including attorneys' fees and litigation costs) that may arise in consequence of Tenant's default. Guarantor hereby waives all requirements of notice of the acceptance of this Guaranty and all requirements of notice of breach or non-performance by Tenant, including without limitation presentment, demand, protest, notice of protest, notice of dishonor, notice of non-payment and notice of acceptance of this Guaranty.

2.      Landlord shall have the right from time to time, and at any time in its sole discretion, without notice to or consent from the undersigned, or without affecting, impairing or discharging in whole or in part, the Liabilities or the obligations of the

DocuSign Envelope ID: EC1B34A1-E6B3-4D7C-A910-CF23953FFA1D

undersigned hereunder, to modify, change, extend, alter, amend, or supplement in any respect whatever, the Lease, or any agreement or transaction between Landlord and Tenant or between Landlord and any other party liable for the Liabilities, or any portion or provision thereof; to allow Tenant to assign or sublet any of its rights or liabilities in the Lease; to grant extension of time and other indulgences of any kind to Tenant; to compromise, release, substitute, exercise, enforce or fail to refuse to exercise or enforce any claims, rights, or remedies of any kind which Landlord may have at any time against Tenant or any other party liable for the Liabilities, or any thereof, or with respect to any security of any kind held by Landlord at any time under any agreement or otherwise.

3.      The undersigned waives: (a) all notice, including but not limited to (i) notice of acceptance of this Guaranty; (ii) notice of presentment, demand for payment, or protest of any of the Liabilities, or the obligation of any person, firm, or corporation held by Landlord as collateral security; (b) trial by jury and the right thereto in any proceeding of any kind, whether arising on or out of, under or by reason of this Guaranty, or any other agreement or transaction between the undersigned, Landlord and/or Tenant; and (c) all notices of the financial condition or of any adverse or other change in the financial condition of Tenant.

4.      Landlord may, without notice, assign this Guaranty in whole or in part to Landlord's successor in interest under the Lease, and no assignment of this Guaranty shall operate to extinguish or diminish the liability of the undersigned hereunder.

5.      The liability of the undersigned under the Guaranty shall be primary under any right of action which shall accrue to Landlord under the Lease and Landlord may, at its option, proceed against the undersigned without having to commence any action, or have obtained any judgment against Tenant.  Guarantor's obligations hereunder are independent of, and may exceed, the obligations of Tenant. At Landlord's option, a separate action or actions may be brought and prosecuted against Guarantor, whether any action is first or subsequently brought against Tenant or whether Tenant is joined in any such action, and Guarantor may be joined in any action or proceeding commenced by Landlord against Tenant relating to or arising in connection with the Lease. Guarantor waives any right to require Landlord to proceed against Tenant or pursue any other remedy in Landlord's power whatsoever, any right to complain of delay in the enforcement of Landlord's rights under the Lease, any right to demand by Landlord and any right to prior action by Landlord of any nature whatsoever against Tenant.

6.      All of the Liabilities and the obligations of the undersigned hereunder shall be immediately due and payable by the undersigned, anything contained herein to the contrary notwithstanding, immediately upon the occurrence of a default under the Lease which continues beyond the expiration of the applicable notice and/or grace period, if any, under the Lease.

7.      The obligations of the undersigned hereunder shall not be affected, impaired or discharged, in whole or in part, by reason of: (a) the entry of an order for relief pursuant to the United States Bankruptcy Code by or against Tenant or the undersigned;

L-2

3583 WEST 9800 SOUTH, SUITES 102 AND 202 SOUTH JORDAN, UT 84095

DocuSign Envelope ID: EC1B34A1-5BB2-4D76-A910-CFE38535FA1D

or (b) the proposal of or the consummation of a plan of reorganization concerning Tenant or the undersigned. If Guarantor shall become bankrupt or insolvent, or any application shall be made to have Guarantor declared bankrupt or insolvent, or Guarantor shall make an assignment for the benefit of creditors, notice of such occurrence or event shall be promptly furnished to Landlord by Guarantor or such Guarantor's fiduciary. This Guaranty shall extend to and be binding upon Guarantor's successors and assigns, including, but not limited to, trustees in bankruptcy.

8.      Guarantor hereby agrees to indemnify, protect, defend and hold Landlord harmless from and against, all losses, costs and expenses including, without limitation, all interest, default interest, post-petition bankruptcy interest and other post-petition obligations, late charges, court costs and attorneys' fees, which may be suffered or incurred by Landlord in enforcing or compromising any rights under this Guaranty or in enforcing or compromising the performance of Tenant's obligations under the Lease.

9.      Guarantor agrees to pay to Landlord on demand all reasonable costs and expenses incurred by Landlord in seeking to enforce Landlord's rights and remedies under this Guaranty, including court costs, costs of alternative dispute resolution and reasonable attorneys' fees and costs, whether or not suit is filed, or other proceedings are initiated hereon. All such reasonable costs and expenses incurred by Landlord shall constitute a portion of the guaranteed Liabilities hereunder, shall be subject to the provisions hereof with respect to the guaranteed Liabilities and shall be payable by Guarantor within ten (10) days of written demand by Landlord.

10.     The waiver of any right by Landlord or its failure to exercise promptly any right shall not be construed as the waiver of any other right including the right to exercise the same at any time thereafter.  No waiver or modification of any of the terms or conditions of this Guaranty shall be binding against Landlord unless such waiver or modification is in a writing signed by Landlord.  Guarantor's obligations hereunder will remain fully binding although Landlord may have waived one or more defaults by Tenant or extended the time of performance by Tenant or granted other indulgences to Tenant, or may have released, returned or misapplied other security for the performance of Tenant's obligations under the Lease (including any other guarantees or any security therefor), or may have released Tenant from the performance of its obligations under the Lease. Guarantor hereby waives any and all rights of subrogation, reimbursement, indemnity or contribution or any rights and defenses that are or may have become available to Guarantor against Tenant or any other guarantor or any other person who now or hereafter has direct or contingent liability for all or any portion of the obligations guaranteed hereby, or against any security deposit or other property which now or hereafter serves as collateral security for performance of the Lease. Any indebtedness of Tenant now or hereafter held by Guarantor is hereby subordinated to the obligations and indebtedness of Tenant to Landlord; and any indebtedness of Tenant to Guarantor, if Landlord so requests, will be collected, enforced and received by Guarantor as trustee for Landlord on account of the obligations and indebtedness of Tenant to Landlord, without affecting the liability of Guarantor under this Guaranty.

3583 WEST 9800 SOUTH, SUITES 102 AND 202 SOUTH JORDAN, UT 84095

11.    The provisions of the Guaranty shall bind all of the respective successors and assigns of the undersigned and shall inure to the benefit of Landlord, its successors and assigns.  This Guaranty will remain and continue in full force and effect and will not be discharged in whole or in part by any alteration, renewal, extension, modification or amendment or by any assignment, subletting, hypothecation or other transfer of the Lease **until such time as Tenant can display to Landlord either by certified financials or duly filed tax returns that tenant has an annual EBITDA in excess of $2,000,000.** Guarantor hereby consents to and waives notice of any of the foregoing and agrees that its liability hereunder will be based upon the obligations of Tenant set forth in the Lease as the same may be from time to time altered, renewed, extended, modified, amended or assigned.

12.    All rights and remedies of Landlord are cumulative and not alternative. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Utah and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State.  Guarantor hereby consents and agrees that the courts of the state or commonwealth in which the Premises are located will have jurisdiction over Guarantor's person in actions arising under or relating to the Lease or this Guaranty, and Guarantor agrees that any action brought by Guarantor arising out of or relating to the Lease or this Guaranty shall be filed in the state or commonwealth in which the Premises are located.  Guarantor hereby waives trial by jury in any action.  In any litigation between Landlord and Guarantor relating to or arising in connection with this Guaranty, the prevailing party shall be entitled to recover its costs and the reasonable fees and expenses of its attorneys.

13.    Prior to the execution of this Guaranty and at any time during the Term of the Lease upon ten (10) days prior written notice from Landlord, Guarantor agrees to provide Landlord with a current financial statement for Guarantor and financial statements for such Guarantor. Guarantor's financial statements are to be prepared in accordance with generally accepted accounting principles. Guarantor represents and warrants that all such financial statements shall be true and correct statements of such Guarantor's financial condition.

14.    The undersigned represents that at the time of the execution and delivery of this Guaranty nothing exists to impair the effectiveness of the obligations of the undersigned to Landlord hereunder, or the immediate taking effect of this Guaranty between the undersigned and Landlord with respect to the undersigned becoming a surety for the Liabilities.

15.    The execution of this Guaranty prior to or following execution of the Lease shall not invalidate this Guaranty or lessen the obligations of Guarantor hereunder. This Guaranty may be attached to the Lease and designated as an exhibit thereto, and the execution by Guarantor of this Guaranty as so designated and the delivery hereof as an attachment to the Lease will constitute the due execution and delivery of this Guaranty.

L-4

IN WITNESS WHEREOF, the undersigned has caused this Guaranty to be executed on October 8th, 2022.

**William Bozeman**

By: _____

3583 WEST 9800 SOUTH, SUITES 102 AND 202 SOUTH JORDAN, UT 84095