Robert Harrington (12541)
Taylor J. Hadfield (17224)
**KUNZLER BEAN & ADAMSON, PC**
50 W Broadway, Suite 1000
Salt Lake City, UT 84101
Telephone: (801) 994-4646
Email: rharrington@kba.law
Email: thadfield@kba.law

*Attorneys for Defendant Jerald Adam Long*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CHERYL TOMAC, an individual and trustee of the Tomac Trust, et al., | **DEFENDANT JERALD ADAM LONG'S MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | Case No. 2:24-cv-00774-RJS-DBP |
| COLLIERS INTERNATIONAL GROUP, INC., et al., | Judge Robert J. Shelby |
| | Magistrate Judge Dustin B. Pead |
| Defendants. | Magistrate Judge Paul Kohler (for settlement) |

Defendant Jerald Adam Long ("Adam Long") hereby moves the Court to dismiss with prejudice Plaintiffs Cheryl Tomac, et al.'s ("Plaintiffs") Second Amended Complaint (the "SAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR7-1. *See* Dkt. 173.

## INTRODUCTION

Plaintiffs' SAC against Adam Long is a house of cards built on a single faulty premise: that Adam Long can be held personally liable for alleged fraud and other claims even though the SAC fails to allege even a single direct communication between Adam Long and the Plaintiffs.

Plaintiffs sue a host of defendants in scattershot fashion, attempting to manufacture liability against Adam Long merely because he held titles, attended early meetings, and purportedly trained agents of certain entities long before the key time frame. But not one of the 300-plus paragraphs of the SAC identifies a single actionable misrepresentation or omission personally made by Adam Long. The SAC instead relies on group pleading to create the specter of impropriety against Adam Long. Such group pleading is impermissible and insufficient. The allegations come nowhere near the exacting particularity and scienter demands of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The SAC must accordingly be dismissed for three distinct reasons.

First, the claims against Adam Long under Section 10(b) Exchange Act and Rule 10b–5 claims are insufficient group pleading wrapped in conclusory accusations. Plaintiffs are unable to point to a single, specific false statement made by Adam Long, let alone plead the who, what, when, where, and why that the Tenth Circuit and the PSLRA demand. Plaintiffs attempt to allege scienter, for example, only by vague reference from Adam Long's *job title*. Courts routinely reject such approaches out of hand.

Second, Plaintiffs' derivative Section 20(a) control person claim fares no better. With no primary violation adequately pleaded against Millrock, Millcreek, or Colliers, and with no factual allegations that Adam Long possessed or exercised the power to control or manage any of them, control person liability is a legal impossibility, and the cause of action must be dismissed.

Third, each of the state law claims against Adam Long are similarly deficient. They are legally deficient under applicable pleading standards and must be dismissed. And even if they were not, once the federal securities claims are dismissed, each of the remaining state-law claims

2

must also be dismissed under well-settled Tenth Circuit authority for lack of subject matter jurisdiction. This case is only in federal court because of the federal securities claims under federal question jurisdiction. Once those are dismissed, federal subject-matter jurisdiction no longer exists, and this Court is no longer the appropriate venue for this litigation for lack of subject matter jurisdiction.

The Court should dismiss all claims against Adam Long.

## BACKGROUND FACTS[1]

1.    The SAC alleges that Adam Long was a shareholder of Millrock Investment Fund 1, LLC ("Millrock"), owner of Millcreek Commercial Properties, LLC ("Millcreek"), and employee of Colliers International Group, Inc. ("Colliers"). *See* SAC ¶ 27.

2.    The SAC alleges that Adam Long took a salary from Colliers. *Id.* ¶ 47.

3.    The SAC alleges that, on occasion, Adam Long was asked to train employees of Millrock, Millcreek, and Colliers, and was compensated for his services. *Id.* ¶¶ 39, 41.

4.    The SAC fails to allege any specific affirmative misrepresentation by Adam Long related to investment opportunities with Millrock, Millcreek, or Colliers to *any* Plaintiffs. *See generally*, SAC.

5.    In fact, there are only *six paragraphs* in the entire SAC that reference Adam Long specifically, and none of those paragraphs describe any specific misrepresentations made by Adam Long to Plaintiffs. *See id.* ¶¶ 27, 39, 41, 47, 52, 107.

---

[1] Adam Long intends to dispute a litany of facts in the SAC, but for purposes of this Motion, accepts the allegations as true. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. Ct. App. 1997).

6.      The SAC alleges that Defendants generally "coaxed possible investors" through "false representation[s]" including purported statements that the "portfolio is rock solid[,]" and "[w]e rigorously vet every property that we offer." *Id.* ¶ 59.

7.      But neither that paragraph of the SAC (paragraph 59) nor any others identify Adam Long as an individual that made the purported false representation. *Id.*

8.      The SAC's main references to specific misrepresentations are described in a chart outlining the "Direct Misrepresentation" and which "Agent" made the misrepresentation. *Id.* ¶ 81.

9.      *None* of the alleged "Direct Misrepresentation[s]" include representations by Adam Long. *Id.*

10.     The SAC describes "the sales period from the end of 2022 to late-2023." *Id.* ¶ 59. But the SAC does *not* reference any statements made by Adam Long during that period or otherwise. *Id.* Nor does the SAC even allege that Adam Long was employed by Colliers or otherwise involved in the events in question during that "sales period." *See generally* SAC.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action must be dismissed if it fails "to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*,

556 U.S.662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. at 678. "[A] court must accept as true all of the allegations contained in

a complaint," but it should not do so for mere "legal conclusions." *Id*. In other words,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*.

These pleading requirements serve two important purposes. First, they "ensure[] that

defendants know the actual grounds of the claim against them," which are necessary for the

defendants to prepare a defense. *Bryson v. Gonzales*, 534 F.3d 1282, 1287 (10th Cir. 2008)

(quotations omitted); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)

(Rule 8 requires factual allegations sufficient to give defendant "fair notice of what the claim is

and the grounds upon which it rests" (internal quotations omitted)). Second, the pleading

requirements "avoid[] ginning up the costly machinery associated with our civil discovery

regime on the basis of a largely groundless claim." *Bryson*, 534 F.3d at 1287 (quotations

omitted). Here, Plaintiffs fail to assert allegations giving rise to *any* claim against Adam Long.

The Motion should be granted.

## ARGUMENT

### I.    PLAINTIFFS HAVE NOT ALLEGED A COLORABLE CLAIM AGAINST ADAM LONG UNDER THE EXCHANGE ACT BECAUSE THE CLAIMS ARE NOT PLEADED WITH PARTICULARITY AND THERE ARE NO ALLEGATIONS ESTABLISHING SCIENTER AGAINST ADAM LONG.

Federal Rules of Civil Procedure require that securities fraud claims be pleaded with

particularity under Rule 9(b). *See In re Level 3 Communications, Inc. Securities Litigation*, 667

F.3d 1331, 1333 (10th Cir. 2012). This heightened standard requires well-pleaded factual

allegations that "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Kock v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Rule 9(b) requires that "individual plaintiffs should identify particular defendants with whom they dealt directly[.]" *Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470, 1476 (D. Utah 1994).

Similarly, the PSLRA requires a heightened pleading standard for federal securities fraud claims in two meaningful ways. First, the PSLRA added additional requirements for pleading the first element of a securities fraud claim. Stated simply, the plaintiff must allege *with specificity* that the defendant made an untrue or misleading statement of material fact or failed to state a material fact necessary to make statements not misleading. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). To prove this, the PSLRA requires that:

> the Complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegations regarding the statement or omission is made on information and belief, *the complaint shall state with particularity all facts on which that belief is formed*.

*See* 15 U.S.C. § 78u–4(b)(1) (emphasis added).

Second, the Complaint is also required to plead the existence of "scienter" or intent to defraud. The PSLRA supersedes Fed. R. Civ. P. 9(b) by imposing a far more stringent pleading rule:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, *with respect to each act or omission alleged to violate this chapter*, state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.

*Adams*, 340 F.3d at 1096, *citing* 15 U.S.C. § 78u–4(b)(1) (emphasis added).

The PSLRA requires scienter to be found with respect to *each* defendant and *each* alleged violation. *TDC Lending LLC v. Priv. Cap. Grp.*, 340 F. Supp. 3d 1218, 1227 (D. Utah 2018). The required "strong inference" of scienter is a high bar: "[a] complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007). This means that a court must consider plausible, nonculpable explanations for the defendant's conduct. *Id.* at 323–24. "[A]llegations that a securities fraud defendant, because of his position within the company, must have known a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1263–64 (10th Cir. 2001). Critically, "[g]eneralized imputations of knowledge do not suffice, regardless of defendants' positions within the company." *Id.*

Here, Plaintiffs fail to satisfy those heightened standards for the First Cause of Action and have failed to plead that Adam Long acted with scienter. The First Cause of Action must be dismissed. To state a claim under Section 10(b), a plaintiff must allege *with particularity*:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state material necessary to make statements misleading; (2) the statement complaint of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Smallen v. The Western Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020). Plaintiffs' claims fail to adequately allege their First Cause of Action against Adam Long for the following two reasons.

7

First, most of the SAC's allegations are improper "group pleadings" that generally allege purported misrepresentations and/or omissions by multiple defendants.[2] Not only do most of these allegations not set forth the time or place of misrepresentations, group pleading against defendants is impermissible under Rule 9(b) and the PSLRA. *See TDC Lending*, 340 F. Supp. 3d at 1227 ("[g]roup pleading, in contrast, allows a plaintiff to group defendants together without distinguishing the bases for each defendant's culpability … [t]his is incompatible with the purpose of the PSLRA"). In a parallel case against Millcreek, this Court held that where the complaint "refers to specific misrepresentations" by specific defendants, the pleadings *as to those defendants* was properly pleaded. *See Wilson v. Millcreek Com. Properties, LLC,* No. 2:24-CV-00624-TC-CMR, 2025 WL 2256685, at *7 (D. Utah Aug. 7, 2025). There are no specific allegations regarding Adam Long, and he cannot be generally grouped with other Plaintiffs. Accordingly, any claims of securities fraud for these alleged misrepresentations and/or omissions must be dismissed.

Second, the SAC fails to allege that Adam Long personally made any specific misrepresentations at all. The SAC only expressly references Adam Long a handful of times, and none of those express references to Adam Long relate to specific misrepresentations made by him to Plaintiffs. Although the SAC attempts to outline specific misrepresentations through attenuated allegations and a table (*See* SAC ¶¶ 59, 81), none of these allegations refer or relate to *actual* conduct or representations by Adam Long. Aside from  few non-specific allegations that Adam Long "attended Millcreek meetings and trained[,]" (*See* SAC ¶ 52),  the SAC is devoid of

---

[2] Paragraphs 58 through 84 of the SAC allege myriad misrepresentations against numerous defendants. Specifically, paragraphs 59, 61, and 67–71 are alleged collectively against "Defendants[.]" None of these allegations are specific to Adam Long.

allegations against Adam Long that meet the heightened pleading standard required. Critically, paragraph 52's allegations only point to in-person training (and provide photos of the same), but the SAC lacks any detail as to what specifically Adam Long trained on and when the purported training occurred. *Id.* Put simply, the SAC does not contain a single allegation that Adam Long directly communicated a misrepresentation to the Plaintiffs. None of the allegations specific to Adam Long even attempt to assert the time, place, or contents of purported misrepresentations by Adam Long. Even more damning, Plaintiffs cannot identify the requisite scienter required by the PSLRA. Accordingly, the First Cause of Action against Adam Long must be dismissed.

## II.   THE ALLEGATIONS DO NOT SUPPORT A CLAIM FOR CONTROL PERSON LIABILITY BECAUSE THERE IS NO EVIDENCE OF A PRIMARY VIOLATION OF SECURITIES LAW AND NO CONTROL BY ADAM LONG.

Plaintiffs' Second Cause of Action for "Control Person Liability under the Securities Exchange Act" must be dismissed because it fails to state a cognizable claim against Adam Long. To properly assert a claim for control person liability under the Exchange Act, Plaintiffs must establish (1) a primary violation of securities laws and (2) control over the primary violator by the alleged controlling person. *See e.g.*, *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). The Securities and Exchange Commission's ("SEC") Rule 405 definition of "control"—cited with approval by this circuit—requires evidence of "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." *Id.* at 1305. In cases where a "plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person," then "dismissal is [the] appropriate" remedy. *Id.* at 1306.

The Second Cause of Action alleges in conclusory fashion that Millcreek, Millrock, and Colliers violated § 10(b) of the PSLRA (as alleged in the First Cause of Action). These conclusory assertions fail against Adam Long because Plaintiffs do not allege any primary violation that satisfies the heightened pleading requirements of Rule 9(b) and the PSLRA, and because no facts allege that Adam Long "controlled" Colliers or Millrock. This Argument Section outlines the deficiencies of Plaintiffs' control person liability theories with respect to (1) Millrock; (2) Millcreek; and (3) Colliers, in turn.

A.  Millrock did not Commit any Primary Violation and Adam Long did not Control Millrock.

Any claim that Adam Long is liable for acts or omissions of Millrock fails for the simple reason that there are no allegations establishing Adam Long's control over Millrock and because there are insufficient allegations that Millrock violated any securities laws. The SAC is sparce regarding allegations that Adam Long "controlled" Millrock. In fact, Adam Long is only referenced in *one* allegation related to control of Millrock. Paragraph 27 alleges that Adam Long acted as "a shareholder of Millrock[.]" SAC ¶ 27. There are no allegations tying Adam Long's status as a shareholder of Millrock to an individual who has control for purposes of imposing § 20 liability. *See Maher*, 144 F.3d at 1306 (holding that party "cannot be considered a control person of [an entity] solely by virtue of her ownership interest"). Accordingly, because the SAC does not allege that Adam Long controlled Millrock, there can be no liability arising from a primary violation of securities law.

Similarly, the SAC fails to set forth the required specific allegations establishing *any* violation of securities law by Millrock for purposes of the First Cause of Action. Adam Long has only been able to identify a singular allegation of the SAC that identifies Millrock as a purported

violator of Section 10(b)/Rule 10–5. Specifically, paragraph 73 alleges that "other agents of Millcreek, Millrock and Colliers, also misrepresented that the South Jordan property had or was about to get a certificate of occupancy." SAC ¶ 73. Aside from the obvious failure to include Adam Long in this allegation, this lone sentence cannot support a securities fraud claim against Millrock. Absent from the SAC are any allegations regarding the time or the place of any alleged misrepresentation, or to whom the misrepresentation was made—the who, what, when, and where required to state a claim of securities fraud. The SAC fails to identify the individual who made the purported misrepresentation and no facts that satisfy the scienter requirements of the PSLRA are alleged. Because there are no allegations that give rise to a securities violation by Millrock, the Second Cause of Action must be dismissed.

B.  The SAC Fails to Plead a Primary Violation by Millcreek and Adam Long did not control Millcreek.

Much like the allegations related to Millrock, the SAC fails to adequately allege a primary violation of securities law by Millcreek, and it fails to allege that Adam Long exercised any control of Millcreek.

i.      There is no Primary Violation of Securities Law by Millcreek.

The SAC contains three paragraphs that relate to purported misrepresentations by Millcreek, but none of them satisfy the heightened pleading standard required by the PSLRA and Rule 9(b). First, paragraph 59 of the SAC references a singular statement from Millcreek's website that is nothing more than advertising puffery: "[r]est assured that our portfolio is rock solid. We rigorously vet every property that we offer." SAC ¶ 59. "[F]orward-looking expressions of optimism" constitute puffery and are not actionable as securities fraud. *See Indiana Pub. Ret. System v. Pluralsight, Inc.*, 45 F.4th 1236, 1253 (10th Cir. 2022); *see also,*

11

*Abady v. Lipocine Inc.*, No. 2:19-CV-00906, 2023 WL 2938210, at *15 (D. Utah Apr. 13, 2023);
*City of Royal Oak Retirement System v. Juniper Networks, Inc*., 880 F.Supp.2d 1045, 1064 (N.D.
Cal 2012) (statements technology company made in investment conference calls regarding its
"strong partners" and "robust" product portfolio were merely expressions of confidence in the
company's outlook, and, as puffery, not actionable). And the SAC fails to allege when the
purported representations were made, and which (if any) of Plaintiffs reviewed the website's
representations. No allegations in the SAC give rise to a "strong inference" that Millcreek acted
with an intent to defraud or recklessness in making statements on its website.

Second, paragraph 65 alleges information regarding several versions of the "offering
memorandum" for the South Jordan property. The SAC contains no express explanation as to
how any statement in paragraph 65 is deliberately misleading, aside from the vague allegation
that "[the] statements are demonstrably false." SAC at ¶ 65. No scienter exists for *any* of these
allegations and the reality that updates and revisions were purportedly provided in the offering
memorandum evidences the reality that no inference can be drawn that Millcreek deliberately
defrauded Plaintiffs.

Finally, paragraph 73 is facially deficient and fails to adequately allege *with specificity*
the purported fraud committed by Millcreek. Not only does this paragraph fail to specifically
reference Adam Long, but it also does not satisfy the mandatory pleading requirements.
Paragraph 73 alleges that "Kevin Long, Smith and other agents of Millcreek … also
misrepresented that the South Jordan property had or was about to get a certificate of
occupancy." SAC ¶ 73. Simply put, there is not legitimate connection between Adam Long and
"other agents of Millcreek." Adam Long cannot be liable. In any event, because this allegation

does not specifically identify the agent or representative of Millcreek who made the purported misrepresentation, and because it does not set forth any time or place of the alleged misrepresentation, the claim fails.

ii.    The SAC Does *Not* Sufficiently Allege Control by Adam Long Over Millcreek.

Although the Second Cause of Action identifies Millcreek as a liable person it does nothing to connect the dots between any specific agent of Millcreek to Adam Long. Specifically, the SAC identifies Brian Martinez, Mike Bersie, Michael Cruz, Scott Rutherford/Equity Summit Group, and Nicholas Ledbetter as "agents" of Millcreek responsible for selling TIC interests. *See* SAC ¶¶ 28–30, 41. Even if the Second Cause of Action were read to include each of these agents as a "Liable Person" for control person liability purposes against Adam Long, the claim would still fail.

The SAC alleges that Rutherford, Smith, Martinez, Bersie, Cruz, and Taylor made misrepresentations about leases in place in the TIC properties with tenants as well as "puffery" statements about Millcreek's portfolio. *See* SAC ¶¶ 58–59. As explained above, none of these statements are sufficient because (1) there is no explanation of the falsity of the claim, (2) the SAC does not allege facts identifying who made which representation to whom and when, (3) the allegations represent "group pleading," and (4) puffery is not actionable. Each of the purported "agent misrepresentations" consist entirely of short phrases from alleged communications between these agents and Plaintiffs. None of these "misrepresentations" include a description of the fraud perpetrated, and many of the representations are nothing more than puffery.

In any event, the SAC fails to allege that any of these "agents" acted with scienter. Upon closer examination at the allegations related to the conduct of the agents, the SAC lacks any

13

coherent allegation that supports an inference that the agents knew or were reckless in making the alleged misrepresentations. For example, the SAC haphazardly asserts that the agents "knew the representations were false." SAC ¶ 58. These are the very sort of conclusory allegations of scienter that *do not* satisfy the PSLRA's heightened pleading standard. *See In re Level 3 Communications, Inc. Securities Litigation*, 667 F.3d at 1333 (holding that plaintiffs must "state with particularity facts [that show] a mental state embracing intent to deceive, manipulate, or defraud, or recklessness"). And other allegations of the SAC are even more deficient. They do not even make bald and conclusory allegations that the agents acted with the requisite state of mind. Instead, they offer general factual allegations that make no reference to the mental state of the agents or the knowledge of the veracity of the claims of the agents. SAC ¶¶ 59, 81. Because the SAC does not contain facts that show intent to defraud by the agents, any control person liability claim against Adam Long fails as a matter of law and must be dismissed. *See Fleming Companies*, 264 F.3d at 1271 (concluding that control person liability claims were properly dismissed where primary violation claims were dismissed).

C. Colliers did not Commit a Primary Violation and there is no Evidence that Adam Long Controlled Colliers.

Plaintiffs' claim of control person liability against Adam Long for acts or omissions of Colliers fails for the simple reason that Adam Long did not control Colliers and because the allegations do not support any violation of securities laws by Colliers.

At the outset, the SAC is devoid of any allegation tying Adam Long to Colliers as an individual who "controlled" Colliers. Plaintiffs vaguely allege that Adam Long was "an employee of agent of Colliers" and that he was "employed in a management role[.]" SAC ¶¶ 27, 39. The SAC also generally alleges that Adam Long conducted trainings for Colliers. *Id.* ¶ 41.

14

None of these allegations are sufficient to support the legal conclusion that Adam Long "controlled" Colliers.

Even if the "control" element were satisfied by Adam Long's employment at Colliers (it is not), the SAC fails to plead any primary violation of securities law by Colliers. Instead of alleging specific misrepresentations made by Colliers, the SAC points to the same alleged misrepresentations by the same agents identified in relation to Millcreek. As explained above, these conclusory allegations fail to plead a primary violation of securities law by these individuals, including failing to sufficiently plead any misrepresentations or scienter as required by the PSLRA. Any claim for control person liability against Adam Long for alleged primary violations by Colliers must accordingly be dismissed.

### III.    ALL OTHER CLAIMS MUST BE DISMISSED.

A.  <u>Plaintiffs' Claim of Negligent Misrepresentation Should be Dismissed because it fails to Allege a Direct Misrepresentation of Material Fact and Relies on Generalized, Non-Specific Pleading.</u>

Plaintiffs' Third Cause of Action fails for the simple reason that it does not adequately allege each element of a negligent misrepresentation claim against Adam Long. To prevail on a negligent representation claim, Plaintiffs must show: (1) Adam Long "made a careless or negligent misrepresentation of material fact[;]" (2) Defendants "reasonably relied" on the misrepresentation; (3) Adam Long had "a pecuniary interest in the transaction[;]" (4) Adam Long was "in a superior position to know the material facts[;]" and, (5) Adam Long "should have reasonably foreseen" that Defendants would rely on the misrepresentation. *See e.g.*, *Andersen v. Homecomings Fin., LLC*, No. 2:11-cv-000332-TS, 2011 WL 3626828 (D. Utah 2011). Critically, the misrepresentation of material fact "may be an affirmative statement or a

material omission where a duty to disclose exists." *Ludvik Electric Co. v. Vanderlande Industries, Inc.*, No. 221CV00462DBBCMR, 2023 WL 8789379, at *5 (D. Utah Dec. 19, 2023)

Plaintiffs' negligent misrepresentation fails at the outset because they did not plead *any* direct misrepresentation by Adam Long to Defendants. Similarly, there are no allegations that Adam Long specifically withheld information where he had a duty to disclose. The generalized allegations about all Defendants are insufficient.

Plaintiffs' Third Cause of Action for negligent misrepresentation relies on the same set of facts as their common law fraud claim and accordingly must be dismissed for failure to satisfy heightened pleading requirements. This Court has recognized that under Utah law, "negligent misrepresentation constituted a form of fraud, [and] the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure applies to negligent misrepresentation claims." *Logan v. Bank of Am., N.A.*, No. 2:12-CV-00191-DN, 2012 WL 5874364, at *3 (D. Utah Nov. 20, 2012). The SAC fails to meet this minimum requirement. Plaintiffs generally assert, for example, that "Defendants made false representations to Plaintiffs as detailed above." SAC ¶ 113. The above sections of the SAC *generally* allege that Defendants defrauded Plaintiffs but fail to identify specific fraudulent conduct by Adam Long. *See generally,* SAC. Critically, Plaintiffs' negligent misrepresentation claim fails to identify a singular unique factual allegation that would distinguish it from the common law fraud claim. *Compare* SAC ¶¶ 111–122 and 130–140. Plaintiffs' Third Cause of Action relies wholly on generalized and non-specific pleading and does not satisfy Rule 9(b).

B.  <u>Plaintiffs' Unjust Enrichment Claim fails to Identify a Direct Benefit Conferred on Adam Long and fails to Allege that Adam Long Appreciated a Benefit.</u>

To adequately allege a claim for unjust enrichment under Utah law, Plaintiffs must establish the following three elements: (1) "a benefit conferred on one person by another[;]" (2) "the conferee must appreciate or have knowledge of the benefit[;]" and (3) "acceptance or retention by the conferee of the benefit[.]" *See Groberg v. Housing Opportunities, Inc.*, 68 P.3d 1015, 1019 (Utah Ct. App. 2003). But any such benefit must be *direct*, not attenuated. Indeed, "[a] defendant is liable under the unjust enrichment prong of quantum meruit only if he or she received *a direct benefit from the plaintiff*." *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 65 (emphasis added). "In other words, unjust enrichment does not result if the defendant has received only an incidental benefit . . ." *Id.* (internal quotation marks and citation omitted).

Plaintiffs fail to state a claim of unjust enrichment against Adam Long because they fail to allege that Adam Long received a *direct benefit* from them. Instead, Plaintiffs' theory is that any relationship between them and Adam Long is attenuated. They fail to allege direct interaction between themselves and Adam Long. Nor do they allege any payment they made directly to Adam Long. They simply assert in conclusory fashion that "Defendants received a benefit from Plaintiffs in the form of commissions[,]" and that Defendants "knowingly benefited[.]" SAC ¶¶ 125–26. Such attenuated interactions and benefits are insufficient under Utah law. *See generally Mackey Price Thompson & Ostler*, 2015 UT 60, ¶¶ 64–71.

Plaintiffs' remaining allegations of unjust enrichment are conclusory and nothing more than "formulaic recitations of the elements" of unjust enrichment. *Iqbal*, 556 U.S. at 678 . The SAC fails to identify any benefit or acknowledgement of that benefit by Adam Long and the federal pleading standards demand more. *See Iqbal*, 556 U.S. 662 (the Rule 8 pleading standard

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation … [and a] naked assertion[s] devoid of further factual enhancement" must be dismissed). Critically, with respect to unjust enrichment claims against corporate representatives, those claims necessarily fail when "the benefit, if any, was conferred on the corporation, and not the individual defendants." *Brumbelow v. L. Offs. Of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 622–23 (D. Utah 2005).

Here, Plaintiffs' unjust enrichment claim relies wholly on generalized allegations that "Plaintiffs" conferred a benefit on "Defendants" by "making investments in the Millcreek Properties." SAC ¶ 124. Plaintiffs further allege that "Defendants received a benefit from Plaintiffs in the form of commissions[,]" and that Defendants "knowingly benefited[.]" SAC ¶¶ 125–26. These generalized and conclusory allegations do not differentiate *any* benefit conferred on Adam Long as opposed to the other Defendants or entities. Because Plaintiffs' unjust enrichment claim is nothing more than a "formulaic recitation of the elements" it must be dismissed.

C.  <u>Plaintiffs Fail to Plead Their Claims of Common Law Fraud with Particularity.</u>

Plaintiffs' Fifth Cause of Action for common law fraud should be dismissed because Plaintiffs have not pleaded their claim with the requisite particularity required by the federal rules. Rule 9(b)'s heightened standard for fraud claims requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this heightened pleading standard, Plaintiffs must "set forth the who, what, when, where and how of the alleged fraud" and describe the "time, place, and contents of the false representation, the identity of the party making the false statements and consequences thereof." *Id. See also Summit*

*Mountain Holding Grp., LLC v. Summit Vill. Dev. Lender 1, LLC*, 2024 WL 4905639, at *9 (D. Utah Nov. 27, 2024). "The elements of a fraud cause of action consist of a misrepresentation or material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Id.*

In this case, Plaintiffs' common law fraud claim against Adam Long fails to satisfy any of the required fraud elements and fails to plead with the requisite particularity. A close reading of the SAC does not identify any *specific* misstatements or omissions made by Adam Long that Plaintiffs relied on to their detriment. *See generally*, SAC. Instead, the SAC relies on generalized allegations and group pleading that concludes (without identifying the who, what, when, where, and how) "[d]efendants made false statements about vital facts regarding the South Jordan Property[.]" SAC ¶ 131. The SAC additionally alleges that statements made about "NGX [being] a sham company" were central to the fraud. SAC ¶ 132. There are no allegations that Adam Long had any knowledge about NGX or made any representations regarding NGX. *See generally* SAC.

The SAC also fails to allege particular facts showing a strong inference that Adam Long acted recklessly or with an intent to defraud Plaintiffs. Instead, the SAC contains conclusory recitations of the purported mental state of the collective "Defendants," making unsupported assertions about the group generally that they "knew these material facts[,]" or "should have known[.]" SAC ¶¶ 101, 135.

Federal law requires more than the conclusory allegations found within the SAC regarding Adam Long's purported conduct and knowledge. The Fifth Cause of Action should be dismissed.

D.  Plaintiffs' Civil Conspiracy Claim Fails Because it has not Adequately Alleged an Underlying Tort.

Plaintiffs' Sixth Cause of Action for civil conspiracy suffers a fatal flaw—Plaintiffs do not allege a viable underlying tort. "To establish a claim for civil conspiracy, five elements must be shown: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages[.]" *Estrada v. Mendoza*, 275 P.3d 1024, 1029 (Utah Ct. App. 2012). Critically, "[t]he claim of civil conspiracy requires, as one of its essential elements, an underlying tort." *Id.* And, where "plaintiffs have not adequately pleaded any of the basic torts they allege[,] dismissal of their civil conspiracy claim is appropriate." *Id.* When that underlying tort is fraud, "the fraud must be pleaded with particularity, even though in this context the fraud is simply an element of the claim rather than the claim itself." *Caroles v. Sabey*, 79 P.3d 974, 983 (Utah Ct. App. 2003).

Here, Plaintiffs fail to adequately allege their fraud claims with particularity thus there is no underlying tort to sustain the civil conspiracy claim. The Sixth Cause of Action must be dismissed.

E.  Federal Question Jurisdiction does Not Exist for the Remaining Claims and Each must be Dismissed.

Plaintiffs' basis for this Court's jurisdiction is 28 U.S.C. § 1331—federal question jurisdiction. See SAC, ¶¶ 32–33. The only federal claims asserted in the SAC are the First and Second Causes of Action. Because both causes of action must be dismissed, dismissal of the

remaining claims is appropriate because federal question jurisdiction no longer exists. See e.g.,

*Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Accordingly, each cause

of action must be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' SAC must be dismissed as to Adam Long with

prejudice.

DATED this 4th day of December, 2025

**KUNZLER BEAN & ADAMSON, PC**

*/s/ Robert P. Harrington*
Robert P. Harrington
Taylor J. Hadfield

*Attorneys for Defendant Jerald Adam Long*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2025, I filed a true and correct copy of the foregoing

**DEFENDANT JERALD ADAM LONG'S MOTION TO DISMISS** via the Court's electronic

case filing system, which effectuated service on all parties of record.

/s/ *Michelle Hansen*
Michelle Hansen
