Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, Utah  84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com

*Attorneys for Defendant Kevin Long*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| CHERYL TOMAC, an individual and trustee of the Tomac Trust, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COLLIERS INTERNATIONAL GROUP, INC., et al.,<br><br>Defendants. | REPLY IN SUPPORT OF DEFENDANT KEVIN LONG'S MOTION TO DISMISS<br><br>Civil No. 2:24-cv-00774-DBP<br><br>Judge Robert J. Shelby<br>Chief Magistrate Judge Dustin B. Pead |

Defendant Kevin Long ("Long"), through his counsel, submits this Reply in Support of Defendant Kevin Long's Motion to Dismiss.

ARGUMENT

I. PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD A CLAIM UNDER SECTION 10(b) OF THE EXCHANGE ACT.

Under the First Cause of Action, each of the Plaintiffs purports to assert a claim arising under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") for alleged

misrepresentations and/or omissions of material facts that rendered actual statements made misleading. In Plaintiffs' Response in Opposition to Defendant Kevin Long's Motion to Dismiss (the "Opposition" or "Opp."), Plaintiffs argue they satisfy the heightened pleading requirements for both specifically alleging an actionable misrepresentation and facts giving rise to a "strong inference" of scienter by Long. They do not.

    A.   <u>Plaintiffs Fail to Sufficiently Plead a Misrepresentation Against Long</u>.

In the Motion, Long explains how Plaintiffs fail to sufficiently plead a misrepresentation in the Second Amended Complaint ("SAC"). In their Opposition, Plaintiffs identify only three representations, each addressed below, that they claim satisfy applicable pleading standards. The plaintiffs to whom these representations are specifically alleged to have been made are Janice Young and James Tucker. Thus, no other plaintiffs can satisfy the requisite pleading obligations under the PSLRA and Rule 9(b) and their claims under the First Cause of Action for securities fraud must be dismissed. *See Aguilo v. Cognizant Technology Solutions U.S. Corporation*, Case No. 8:21-cv-2054-MSS-AEP, 2023 WL 12174854, *5, 7 (M.D. Fla. Sept. 15, 2023) (dismissing some plaintiffs', but not all, fraudulent concealment claims for failure to individually satisfy pleading requirements); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 975 F.Supp. 584, 597, 622 (D. N.J. 1996) (dismissing certain plaintiffs' securities fraud and other fraud claims for failure to satisfy heightened pleading requirements).

The "specific" misrepresentations the remaining two Plaintiffs claim are attributable to Long concern (i) the "viability" or status of Neutragenex ("NGX"), and (ii) the "fair" market value of the lease at South Jordan. Regarding NGX, plaintiff James Tucker, as alleged assignee of non-party Thom Belchak, claims Long told Belchak that NGX was "paying rent and

2

occupying the property." [Opp. at p. 7, citing SAC ¶ 81.] Paragraph 81's reference to the alleged October 13, 2023 call between Long and Belchak, however, actually alleges that Long represented "NGX was a great tenant paying rent and occupying property." [SAC ¶ 81.] This is an important distinction from what Plaintiffs represent in their Opposition. As disclosed in the offering memorandum ("OM") referenced in the SAC[1] and attached as Exhibit "A" hereto, at the time of sales of TIC interests in the South Jordan property, NGX <u>was operating clinics out of fifteen locations</u>. Long's alleged statement (which he disputes), therefore, expressing his opinion that NGX was a "great tenant" (an opinion and not a statement of fact) and representing it was "paying rent" and "occupying property," is not a misrepresentation.

Plaintiffs also claim that Long "acknowledged" in writing that "[t]here is no chance that rent will magically appear before we make distributions to TIC owners." [Opp. at p. 6, citing SAC ¶ 79.] This is untrue and appears to misrepresent the email, which is referenced in the SAC and attached hereto as Exhibit "B." The referenced statement in the October 27, 2023[2] email was made by Mr. Mark Machlis, not Long. In fact, Long is not a party to the email, and thus no "acknowledgment" was made by Long therein regarding NGX paying rent.[3]

Plaintiff Janet Young's alleged "specific misrepresentation" by Long is even more tenuous. This alleged "misrepresentation" by Long is not a misrepresentation at all. Plaintiffs simply

---

[1] There were slightly different versions of the OM depending on the timeframe in 2023, but the OM circulated at the time of Mr. Belchak's purchase is attached as Exhibit "A" and addressed herein.
[2] This email communication, which Plaintiffs claim proves Long knew his alleged representations to Mr. Belchak during an October 13, 2023 phone call were false, occurred after the call.
[3] Moreover, it is not certain at all that Mr. Machlis' statement is about NGX's financial inability to pay rent, or an indication that the Certificate of Occupancy would not be issued by the date in question, which under the Lease triggered NGX's rent obligation for the South Jordan property. Indeed, the OM, attached as Exhibit "A" and cited and relied on by Plaintiffs, expressly gives an October 2023 date as the <u>estimated</u> rent commencement date, suggesting Mr. Machlis intended the latter.

3

claim they satisfy the PSLRA's requirements for specifically identifying misrepresentations by Long by alleging in the SAC that Long was "[c]opied to emails regarding Young's [Purchase & Sale Agreement] premised on [an] [Offering Memorandum] with known uncorrected representations regarding NGX's tenancy and solvency status," but made no effort to correct the alleged misrepresentations. [Opp. at p. 7, citing ¶ 81.] First, there is no misrepresentation by Long in the email. Second, while the email concerns the Purchase & Sale Agreement ("PSA"), no misrepresentation in the PSA is alleged. Rather, Plaintiffs allege only that Long received an email about the PSA, and that plaintiff Young entered into that PSA allegedly on reliance on an offering memorandum that contained unspecified misrepresentations (that Long supposedly didn't correct). This type of pleading satisfies neither the PSLRA nor Rule 9(b)'s specificity requirements.

The only other alleged "misrepresentation" Plaintiffs attribute to Long is his supposed representation to James Tucker that the lease was "market" and fair.[4] This does not satisfy the "who, what, when, where and how" pleading requirements under Rule (b) (and the heightened PSLRA standards). *See U.S. ex rel. Sikkenga v. Bluecross Blueshield of Utah*, 427 F.3d 702, 726-27 (10th Cir. 2006) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted). It fails to state when the alleged misrepresentation occurred, other than alleging "throughout 2023." The allegation appears to suggest it was made on more than one occasion, but it is unclear. It does not say

---

[4] Plaintiffs claim that, in addition to Mr. Tucker, Long made the representations to "other Plaintiffs," but this is insufficient to meet their pleading obligations because it does not identify, for any of the other Plaintiffs, (i) when Long supposedly made the representation; (ii) where he made the representation; and (iii) how the representation was made (phone call? Email? in person communication?). Consequently, Long cannot possibly respond to the allegation without this information.

"where" Long allegedly made this misrepresentation. Finally, it makes no mention of how the misrepresentation was communicated to Mr. Tucker. It therefore fails to satisfy Rule 9(b) and the heightened PSLRA pleading requirements.

Moreover, Long's opinion that the Lease at issue was "market" is not a statement of fact and is not actionable. *See e.g. Healthcare Co. Ltd. v. MPI Group, LLC*, 2025 WL 2733548, *8 (Sept. 25, 2025 D. Utah) ("Generally, 'misrepresentations as to value do not ... constitute fraud, as they are regarded as mere expressions of opinion … involving matters of judgment and estimation as to which [people] may differ.'") (citation omitted). Further, Plaintiffs' bald assertion that Long "knew" his opinion that the Lease was "market" value was untrue lacks support. Plaintiffs' assertion is wholly based on the acquisition price paid by the owner of the South Jordan property. [SAC, ¶¶ 69, 78.] Plaintiffs erroneously assume that the acquisition price of a pre-developed, office building in shell condition is the same as the value of the space once fully developed and outfitted as a specialty spa grade pain clinic including equipment, with a long-term 20-year lease in place (which value is determined by the "cap rate"). It simply does not follow or give rise to a "strong inference" that Long knew any statement of him that the Lease was fair was "plainly" or "objectively and verifiably" false. In short, none of the "specific misrepresentations" identified by Plaintiffs in their Opposition satisfies the pleading requirements under Rule 9(b) and the PSLRA.

    B.  <u>Plaintiffs Fail to Sufficiently Plead Facts Demonstrating Long Acted With Scienter</u>.

In addition to failing sufficiently plead one or more misrepresentations against Long, Plaintiffs also fail to satisfy the PSLRA's "scienter" pleading requirements. The allegations Plaintiffs claim give rise to a strong inference of scienter mostly relate to the two

misrepresentations Mr. Tucker and Ms. Young claim Long made directly to them. First, Plaintiffs allege Long knew "the TIC interests were being sold at prices far exceeding their true market value." [Opp. at p. 9, citing SAC ¶¶ 69-70.] Plaintiffs do not explain which alleged misrepresentation by Long this applies to, but nevertheless, as explained above regarding any representations about the lease rate being "market," any statement Long actually made that the value of the TICs purchased by Plaintiffs was fair or "market" is his opinion. Indeed, if this case goes to trial, it is certain the parties will have one or more experts offering differing opinions on the value of the TIC interests Plaintiffs purchased and whether they were "fair."[5] Plaintiffs allege no facts demonstrating, at the time of their purchase of the TIC interests, Long "knew" they were allegedly "overpriced." At most, their allegations constitute conclusory innuendo.

Next, Plaintiffs allege Long knew "that the leases with NGX were fictitious." [Opp. at p. 9, citing SAC ¶¶ 72, 78.] In citing paragraphs 72 and 78 of the SAC, what Plaintiffs are actually claiming is that Long new the lease rates were not "market" and that NGX never paid rent at the South Jordan Property. Regarding the lease rate, as explained above in Section I.A., any comment by Long that it was "market" or fair is opinion. Further, Plaintiffs allege no facts from which a strong inference arises that he did not honestly believe any such opinion. For example, Plaintiffs set forth no facts in the SAC demonstrating that an annual rent of $44,530[6] for a specialized spa grade pain clinic was not "market." Plaintiffs point to no allegations, for example, that Long had in his possession any valuations for similar properties showing that the lease rate

---

[5] The capitalization or "cap" rate, on which the TIC purchase prices were premised, is one of the most commonly used methods of commercial property valuation, and was disclosed to the Plaintiffs. [Exhibit "A," p. 2.] Long's knowing the prices were set through use of the "cap rate" methodology does not give rise to a "strong inference" that he knew they were fraudulently overpriced.
[6] *See* Lease, Section 3, attached as Exhibit "B" to the Motion to Dismiss.

for the South Jordan was not "market." There are no facts alleged in the SAC from which a "strong inference" arises that Long knew his opinion that the rent for NGX at the property was "market" was untrue.

Finally, Plaintiffs claim they sufficiently allege facts demonstrating Long knew NGX was not paying rent at the South Jordan property. As discussed above in Section I.A., Plaintiffs fail to satisfy the pleading requirements for any alleged misrepresentation by Long about NGX paying rents at the property, and thus the scienter issue is moot. The only specific claim is that he told non-party Thom Belchak that NGX "was a great tenant and was paying rent and occupying property." [SAC, ¶ 81.] To the extent Long even made such a representation, as explained above, the more likely inference to be drawn from the alleged statement is that Long was simply reiterating what was disclosed in the offering memorandum – NGX was already operating pain clinics at fifteen locations. [Exhibit "A" at p. 5.][7] In short, for any misrepresentation Plaintiffs sufficiently allege (and there are none), they fail to sufficiently plead facts from which a strong inference arises that Long knew the misrepresentation was false.

---

[7] Even giving Plaintiffs the benefit of any inferences, any allegation that Long told any Plaintiff that NGX was paying rent at the South Jordan property (which he disputes) and that they believed and relied on such a representation, is beyond reasonable belief. The OM [Exhibit "A," at p. 10], which Plaintiffs all claim to have received and relied on prior to their purchase of the TIC interests, expressly disclosed that rent commencement by NGX at South Jordan was "estimated" to begin in the future – October 2023 or May 2023, depending on the version. Likewise, the Lease [Exhibit "B" to the Motion to Dismiss, Sections 2 and 3] also indicated rent would not commence until a certificate of occupancy was issued. There is no plausible way this alleged misrepresentation occurred, and that Plaintiffs relied on it while ignoring the Lease and OM they received, both of which indicated NGX was to commence paying rent in the future.

II. DEFICIENCIES IN PLAINTIFF'S SECTION 20(a) CONTROL PERSON LIABILITY CLAIMS.

A. Control.

In the SAC, plaintiffs seek to impose "control person" liability on Long under Section 20(a) of the Exchange Act for alleged violations by Millcreek, Millrock and Colliers. In their Opposition, they argue the following satisfy their pleading obligation to establish Long's "control" over these entities:

(i) Long was "The founder, President and principal of both Millcreek and Millrock." [Dkt. 173, ¶¶ 23, 37];
(ii) Long was "The Senior Vice President of Colliers' Utah Division." [Dkt. 173, ¶ 23];
(iii) Long was "The architect of the 'perpetual standing listing agreement' between Colliers and Millcreek" [Dkt. 173, ¶¶ 45-46]; and
(iv) Long was "The leader of the team that trained and mentored the agents who marketed the TIC interests." [Dkt. ¶¶ 41, 47, 52.]

[Opp. at p. 16.] For the "control" element of Plaintiffs' claim, and strictly for purposes of this Motion, Long does not challenge allegations of his "control" of Millcreek or Millrock.

For Colliers, however, the listed allegations are still insufficient to establish that Long "controlled" Colliers (a global corporation headquartered in Toronto, Canada). As stated in Long's Motion, his status as a "senior vice president" of one of the divisions of Colliers is insufficient. Further, the reference to the Memorandum of Understanding or "perpetual standing listing agreement" actually undermines Plaintiffs' argument, since Long was clearly sending the MOU to Lew Cramer for approval (if Long had "control" of even the Utah division, he would not need to do this). Moreover, any suggestion that, under *In re Oppenheimer Rochester Funds Group Sec. Litig.*, Long's "control" over Colliers is established by alleging he participated in the preparation of marketing materials for TIC listings is without support. That case involved senior officers of actual investment fund entities (i.e., not a "division" of a global corporation) that were

8

responsible for making alleged fraudulent disclosures in the fund's registration statement. *See In re Oppenheimer Rochester Funds Group Sec. Litig.*, 838 F.Supp.2d 1148, 1181 (D. Colo 2012). The facts of *In re Oppenheimer* are completely different than here where Long, a "vice president" of a division of a global corporation, is alleged to have participated in preparing marketing materials for commercial real estate listings. Long may be potentially liable for his own actions. Colliers may be vicariously liable for Long's actions as its agent. But the SAC's allegations cannot establish Long had "possession, direct or indirect, of the power to direct or cause the direction of the management and polices of" Colliers.

    B.   <u>Insufficient Pleading of a Primary Violation</u>.

The Second Cause of Action must also be dismissed where Plaintiffs fail to sufficiently plead a "primary" violation by Colliers, Millcreek and Millrock. For Millrock, Plaintiffs allege no misrepresentation by any agent of Millrock besides Long. [Opp. at p. 14.] Long is primarily liable for his own actions, and thus "control" liability would be inapposite. The claim, therefore, should be dismissed as to any alleged primary violation by Millrock.

For Colliers, Plaintiffs allege that it is liable for any misrepresentations by Lew Cramer, Kevin Long or James Yeates. Plaintiffs fail, however, to sufficiently allege any misrepresentations by Lew Cramer or James Yeates and, again, Long would be <u>primarily</u> liable for his own conduct. Plaintiffs also cite seven alleged misrepresentations by Colliers' agents as "primary" violations [Opp. at pgs. 12-13], but none are sufficiently plead. Specifically, allegations (i), (ii), (iv), and (vii) all involve a representation regarding NGX as a tenant, which Plaintiffs claim was untrue where no lease was in place. Plaintiffs fail to explain how the statements were false in light of the executed Lease, and no allegations demonstrating scienter on

the part of Martinez, Cruz, Bersie or Long in light of the executed Lease are made. Allegation (iii) fails as well. Paragraph 74 is an email from Brian Martinez to Monica Hansen where he said the South Jordan property had three medical tenants. [SAC, ¶ 74.] Plaintiffs do not explain how this is false (particularly where NGX had signed the Lease) and fail to allege any facts demonstrating Mr. Martinez or Long acted with "scienter." Indeed, where there was a Lease executed by NGX, it plainly undermines any claim that Long "knew" NGX was not a tenant in the property. Finally, for allegation (v), other than bald, conclusory statements, there are no factual allegations in the SAC demonstrating at that time that Long or Mr. Martinez knew the statement regarding the amount of TIC sales in the property was false. In short, none of these allegations are sufficient to establish a "primary" violation by a Colliers agent.

For Millcreek, Plaintiffs rely on paragraphs 69, 70, 72, 74, and 78-81 of the SAC for alleging a "primary" violation by Millcreek. Paragraphs 69 and 70 relate to the Plaintiffs' claims that the purchase price of the TICs was not "fair" or "market" based on the price at which the property was previously purchased for prior to building out the property and securing long-term leases. This alleged "violation" is not sufficiently pled for reasons articulated above in Section I.B. Paragraph 72 is a conclusory allegation that does not sufficiently state the "who, what, when, where, and how" of the alleged misrepresentation. Paragraph 74 is not "false" where, as explained previously, NGX had signed a lease as a tenant for the property. Paragraphs 78 through 80 involve opinions that the lease rate was "fair," and paragraph 81 fails where the one-line blurbs do not satisfy the required "who, what, where, when and how" and no allegations supporting scienter are provided for the blurbs. Accordingly, the control person liability claim against Long for alleged primary violations by "Millcreek" must be dismissed.

III.    <u>SUPPLEMENTAL STATE LAW CLAIMS MUST BE DISMISSED</u>.

Even assuming arguendo that the state law claims against Long form part of the same Article III case or controversy as the federal claims against the other defendants—thereby making supplemental jurisdiction possible, a proposition that Long does not concede—the Court should still dismiss such state law claims against Long, if, at any point in this litigation, the remaining federal claims are dismissed against the other defendants.

CONCLUSION

For the foregoing reasons, plaintiffs' Second Amended Complaint and this lawsuit must be dismissed.

DATED this 6th day of January, 2026.

                                            PARR BROWN GEE & LOVELESS

                                            By: /s/ *Rodger M. Burge*
                                                  Terry E. Welch
                                                  Bentley J. Tolk
                                                  Rodger M. Burge
                                                  Attorneys for Defendant Kevin Long

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of January, 2026 a true and correct copy of the foregoing REPLY IN SUPPORT OF DEFENDANT KEVIN LONG'S MOTION TO DISMISS was served via electronic service on all counsel of record.

/s/ Rodger M. Burge