IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHERYL TOMAC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>COLLIERS INTERNATIONAL GROUP, INC., et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00774-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Before the court are Defendants Kevin Long and J.A. (Adam) Long's Motions to Dismiss.[1]  For the reasons stated below, the court GRANTS IN PART, and DENIES IN PART both Motions.

**BACKGROUND**[2]

This case arises out of alleged fraud involving the sale of tenant-in-common (TIC) interests in two commercial medical properties in South Jordan and Lehi, Utah (Properties).[3] Plaintiffs are eighteen individuals who purchased TIC interests in the Properties.[4]  Defendants are two real estate companies and the individuals who facilitated the TIC sales.[5]

---

[1] Dkt. 174, *Defendant Kevin Long's Motion to Dismiss* (*K.L. Motion*); Dkt. 190, *Defendant Jerald Adam Long's Motion to Dismiss* (*J.A.L. Motion*).  For clarity, this Order refers to Kevin and Adam individually by their first names.

[2] The following facts are drawn from the Second Amended Complaint.  Dkt. 173, *Second Amended Complaint for Anti-Trafficking* (*SAC*).  In reviewing the Motion to Dismiss, the court "accept[s] as true all well-pleaded facts" and "view[s] those facts in the light most favorable to the nonmoving party."  *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998)).

[3] The court refers to the properties individually by their respective location (South Jordan Property and Lehi Property) and collectively as the Properties.

[4] *SAC* ¶¶ 5–20.

[5] *Id.* ¶¶ 22–31.

1

Millcreek Commercial Properties, LLC (Millcreek) and Millrock Investment Fund 1, LLC (Millrock) were two real estate companies that operated in Utah County, Utah.[6]  In 2022, Millrock acquired the South Jordan Property for $3,500,000 and the Lehi Property for $607,000.[7]  Millcreek then marketed and sold TIC interests in the Properties in collaboration with Defendant Colliers International, an international real estate and investment services company.[8]  Defendant Kevin Long founded and served as President of both Millrock and Millcreek, and was the Senior Vice President of the Utah Division of Colliers.[9]  Kevin's son, Adam Long, was a shareholder of Millrock, an owner and Chief Operating Officer of Millcreek, and a manager for Colliers.[10]  In late 2022, Colliers, Kevin, Adam, and several other Defendants trained the Millcreek's sales representatives on marketing and selling the Properties to potential buyers.[11]  In exchange, Defendants received commissions for each TIC sale.[12]

Between February and November 2023, Colliers marketed the TIC interests as low-risk investments promising stable returns and high-quality, solvent tenants under a "perpetual standard listing agreement."[13]  Millcreek's website described their portfolio as "rock solid" and stated they "rigorously vet every property that [they] offer."[14]  Millcreek and Colliers represented to investors that the Properties were encumbered by triple-net commercial leases with a healthcare company called Neuragenex (NGX).[15]  In the South Jordan Property's offering

---

[6] Id. ¶ 36.

[7] Id. ¶¶ 37, 69.

[8] Id. ¶¶ 37, 47.

[9] Id. ¶¶ 37–38.

[10] Id. ¶ 39.

[11] Id. ¶¶ 47, 52.

[12] Id. ¶ 47.

[13] Id. ¶¶ 53, 56.

[14] Id. ¶ 59.

[15] Id. ¶¶ 65–66.

memoranda, NGX was listed as the "Anchor Tenant," with the year one rent ranging from $669,500 to $708,973.[16]  The Lehi Property offering memorandum similarly represented NGX as a tenant holding a 20 year lease with an average return of 7.25%.[17]  But NGX was not a tenant at the South Jordan Property.[18]  The lease with NGX was never finalized, and NGX at no point paid rent for the property.[19]

Beyond Millcreek and Collier's official offering memoranda, Kevin Long made several statements to Plaintiffs regarding the Properties.  On August 30, 2023, Kevin sent an email to Plaintiff James Tucker stating the lease was "approved by NGX."[20]  During a phone call on October 13, 2023 with TIC purchaser Thom Belchak,[21] Kevin represented "NGX was a great tenant and was paying rent and occupying property."[22]  On November 1, 2023, Kevin was copied to an email to Plaintiff Janice Young which "contained known uncorrected representations regarding NGX's tenancy and solvency status."[23]  And, on an unspecified date, Kevin and Millcreek sales representative Mark Machlis represented to Tucker that the lease rate at the South Jordan property was "market" and fair, when Millcreek had in fact artificially inflated the rate up to three times the market rate.[24]

Additionally, various agents for Millcreek and Colliers made other false representations to Plaintiffs.  For example,

---

[16] *Id.* ¶ 65.  Eight different versions of the South Jordan Offering Memorandum were provided to Plaintiffs.  *Id.*

[17] *Id.* ¶ 66.

[18] *Id.* ¶¶ 65 n.19, 72, 79.  The *SAC* does not allege whether NGX was in fact a tenant at the Lehi Property.  *See generally id.*

[19] *Id.* ¶ 65 n.19.

[20] *Id.* ¶ 81.

[21] Belchak's assigned his claims to Plaintiff James Tucker.  *See id.* ¶ 18.

[22] *Id.* ¶ 81.

[23] *Id.*

[24] *Id.* ¶ 78.

- On February 22, 2023, during a phone call, Millcreek sales representative Michael Cruz told Plaintiffs Elizabeth Carlston and Benjamin Allen, "NGX just signed the lease, imminent move-in."[25]
- On June 29, 2023, Cruz texted Plaintiff Cheryl Tomac confirming NGX was occupying the property and paying rent.[26]
- On March 23, 2023, Millcreek sales associate Brian Martinez emailed Plaintiff Simon DeJong stating they had sold $6 million of TIC interests for the South Jordan Property when they had in fact sold only $3,300,000.[27]
- In a February 2023 phone call, Martinez told Plaintiff Monika Hansen "NGX [is] there" and "paying rent."[28]
- On March 4, 2023, Martinez emailed Plaintiff Marjorie Reid stating there were "3 tenants, 6.5% returns."[29]
- In October 2023, Millcreek and Colliers real estate agent Scott Rutherford told Plaintiff James Herbert by phone "NGX paying rent, operating in the space, solid, stable cash-flow."[30]
- In a November 3, 2023 phone call, Millcreek and Colliers employee Mike Bersie told Plaintiff Lynn Kneedy the TIC interests and NGX lease were backed by solvent guarantors that would pay promised returns if NGX fails.[31]

Defendants' statements and representations caused Plaintiffs to enter into purchase and sales agreements for the South Jordan Property.[32]  Plaintiffs purchased the TIC interests between February 9, 2023 and November 6, 2023.[33]  The TIC interests sold in proportion to an overall sale price of approximately $10,300,000 for the South Jordan Property and $5,767,890 for the Lehi Property.[34]  The sales prices significantly exceeded the prices paid by Millrock for the two

---

[25] *Id.* ¶ 81.

[26] *Id.*

[27] *Id.* ¶¶ 77, 81.

[28] *Id.* ¶ 81.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* ¶¶ 67, 81.

[33] *Id.* ¶ 67.

[34] *Id.* ¶¶ 67, 69.

buildings the prior year.[35]  Defendants were aware of the wide disparity between the purchase and selling prices and did not disclose the original purchase prices to Plaintiffs prior to the sales.[36]

Because NGX did not pay rent at the South Jordan property, Defendants used investor funds to pay the anticipated returns to the same investors while they searched for new tenants to fill the void.[37]  In an October 2023 email exchange regarding "the imminent closing on new tenant-in common owners . . . for the South Jordan NGX property," Kevin was informed "[t]here is no chance that rent will magically appear before we make distributions to TIC owners."[38]

On January 26, 2024, NGX filed for bankruptcy.[39]  Around December 2024, Millcreek website stated it had ceased operations and directed Millcreek's former clients to the firm KGL Advisors for assistance with the TIC investments.[40]

## PROCEDURAL HISTORY

On October 14, 2024, Plaintiffs filed their Complaint alleging violations of the Securities Exchange Act for fraud, control person liability for fraud, conspiracy to commit fraud, and other related state law claims.[41]  On December 3, 2024, Plaintiffs amended the Complaint to add additional Defendants.[42]  On October 15, 2025, Plaintiffs again amended their Complaint, this time to remove parties who settled.[43]  On October 31, 2025, Kevin Long filed his Motion to

---

[35] *Id.* ¶ 69.

[36] *Id.* ¶ 70.

[37] *Id.* ¶¶ 79–80.

[38] *Id.* ¶ 79.  Kevin was not initially included on the email chain, but the email containing the statement was forwarded to him on November 1, 2023.  *See* Dkt. 202-1, *New Owners in South Jordan Nov. 01, 2023 Email.*

[39] *Id.* ¶¶ 85–86.

[40] *Id.* ¶ 88.

[41] Dkt. 1, *Complaint.*

[42] Dkt. 26, *First Amended Complaint.*

[43] *SAC.*

Dismiss under Federal Rule of Civil Procedure 12(b)(6).[44]  On December 4, 2025, Adam Long filed his Motion to Dismiss under the Rule 12(b)(6).[45]  Both Motions are fully briefed and ripe for review.[46]

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted."[47]  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[48]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49]  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[50] Additionally, Federal Rule of Civil Procedure 9 requires a heightened pleading standard for allegations of fraud: Plaintiffs "must state with particularity the circumstances constituting fraud or mistake."[51]  A "complaint alleging fraud" must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[52]  When

---

[44] *K.L. Motion*.

[45] *J.A.L. Motion.*

[46] *See* Dkt. 189, *Plaintiffs' Response in Opposition to Defendant Kevin Long's Motion to Dismiss* (*K.L. Opposition*); Dkt. 195, *Reply in Support of Defendant Kevin Long's Motion to Dismiss* (*K.L. Reply*); Dkt. 202, *Plaintiffs' Sur-Reply to Defendant Kevin Long's Motion to Dismiss*; Dkt. 194, *Plaintiffs' Response in Opposition to Defendant Jerald Adam Long's Motion to Dismiss* (*J.A.L. Opposition*), Dkt. 196, *Reply in Support of Defendant Jerald Adam Long's Motion to Dismiss* (*J.A.L. Reply*).

[47] Fed. R. Civ. P. 12(b)(6).

[48] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[49] *Id.* (citing *Twombly*, 550 U.S. at 556).

[50] *Twombly*, 550 U.S. at 555.

[51] Fed. R. Civ. P. 9(b).

[52] *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

determining whether a complaint meets these criteria, the court will "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief."[53] The Tenth Circuit has observed there is a "low bar for surviving a motion to dismiss, and a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[54] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[55] "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient."[56]

## ANALYSIS

The court will first consider Kevin's Motion to Dismiss before turning to Adam's Motion.

### I.      Kevin Long's Motion to Dismiss

Kevin Long moves to dismiss all claims against him.[57] Kevin argues the cause of action for violations of Section 10(b) of the Exchange Act and Securities and Exchange Commission (SEC) Rule 10b-5 should be dismissed because Plaintiffs fail to adequately plead with particularity false statements Kevin made to Plaintiffs which constitute fraud.[58] Kevin further contends the second cause of action for control person liability should be dismissed because

---

[53] *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

[54] *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (citation modified); *see also Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

[55] *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020).

[56] *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019).

[57] *K.L Motion*.

[58] *Id.* at 6–9.

7

Plaintiffs fail to sufficiently plead Kevin was in control of Millrock, Millcreek, and Colliers, nor did they allege with sufficient particularity an underlying primary violation by any of the entities.[59]  Finally, Kevin argues the court should subsequently dismiss the remaining state law claims for lack of subject matter jurisdiction.[60]  For the reasons discussed below, the court concludes otherwise and finds only Tucker states a claim for Violations of Section 10(b) of the Securities Exchange Act, all Plaintiffs state a claim for control person liability, and the court has supplemental jurisdiction over the state law claims.

### A.  Violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5

The court first considers whether Plaintiffs plead facts showing Kevin is plausibly liable for violations of § 10(b) of the Exchange Act[61] and SEC Rule 10b-5(b).[62]  Section 10(b) prohibits the use of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe" in the sale of any security.[63]  SEC Rule 10b-5(b) further prohibits a person from "mak[ing] any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."[64]  To establish a violation under § 10(b) and Rule 10b-5, Plaintiffs must show:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the

---

[59] *Id.* at 10–17.

[60] *Id.* at 17.

[61] 15 U.S.C. § 78j(b).

[62] 17 C.F.R. § 240.10B-5.

[63] 15 U.S.C. §78j(b).

[64] 17 C.F.R. § 240.10B-5.

defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.[65]

In cases of securities fraud, the Private Securities Litigation Reform Act of 1995 (PSLRA) requires a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[66]  For the scienter element, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[67]  The Supreme Court provides:

> [T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.[68]

Accordingly, the court is "to ask 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'"[69]

Kevin contends Plaintiffs fail to plead facts establishing Kevin made untrue or misleading statements of material fact and acted with scienter.[70]  Kevin first argues Plaintiffs make

---

[65] *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (emphasis omitted).

[66] 15 U.S.C. § 78u-4(f)(3)(B).

[67] *Id*. § 78u-4(b)(2)(A).

[68] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

[69] *In re Zagg Secs. Litig.*, 797 F.3d 1194, 1202 (10th Cir. 2015) (quoting *Tellabs, Inc.*, 551 U.S. at 323).

[70] *K.L. Motion* at 6–9.  Because Kevin does not otherwise challenge the sufficiency of this claim, the court does not address the other three elements.  *See generally id.*

impermissible "group pleadings" against Defendants generally, or otherwise fail to provide the necessary "time and place" information for many statements.[71]  For the few statements specifically attributed to Kevin,  he contends the SAC does not demonstrate falsity or a strong inference of scienter.[72]  In opposition, Plaintiffs argue the SAC identifies multiple false factual statements made specifically by Kevin,[73] and the circumstances as alleged adequately establish a strong inference of scienter.[74]  The court concludes the alleged group statements do not satisfy the heightened pleading requirements for claims of fraud.  However, with regards to alleged statements directly attributed to Kevin, Plaintiffs plead sufficient facts to state a claim for violations of the Exchange Act.

1.  The Statements Generally Attributed to "Defendants" Do Not State a Claim Under the Exchange Act Against Kevin.

The court first considers whether the statements, omissions and actions attributed to the Defendants as a group satisfy the heightened pleading requirements under Rule 9(b) and the PSLRA.  This includes allegations describing actions by "the Defendants,"[75]  as well as those attributed to Kevin collectively with four or more other Defendants.[76]  "Group pleading" is a liability theory which allows a plaintiff to attribute statements or actions to a general group (e.g.,

---

[71] *Id.* at 6–8 (challenging *SAC* ¶¶ 58, 59, 61, 67, 68, 69, 70, 71, 72, 78 as impermissible group pleading).

[72] *Id.* at 8–9 (citing *SAC* ¶ 81).

[73] *K.L. Opposition* at 6–8 (citing *SAC* ¶¶ 78, 81).

[74] *Id.* at 8–10.

[75] *See SAC* ¶ 58 ("Defendants and their Agents putatively offered TIC interests" to investors.); *id.* ¶ 61 ("Defendants and their Agents communicated with Plaintiffs, speaking directly with investors repeating the misrepresentations . . . ."); *id.* ¶ 67 (Plaintiffs were "[i]nduced by the Defendants misrepresentations and omissions . . . ."); *id.* ¶ 68 ("Defendants represented the tenant NGX was 'financially strong[.]'"); *id.* ¶ 69 ("Defendants withheld" property acquisition prices.); *id.* ¶ 70 ("Defendants concealed the inflated sales prices . . . ."); *id.* ¶ 71 ("Defendants instead enlisted their co-conspirators . . . to manage the property . . . .").

[76] *See SAC* ¶¶ 72 ("Kevin Long, Rutherford, Smith, Machlis and the other Agents lied to Plaintiffs about" NGX not paying rent.), 73 ("Kevin Long, Smith and other agents of Millcreek, Millrock and Colliers, also misrepresented that the South Jordan property had or was about to get a certificate of occupancy.").

"the Defendants") to establish liability for all the individuals within the group.[77]  Neither the Supreme Court or the Tenth Circuit have directly considered whether the PSLRA precludes group pleading.  The Tenth Circuit has generally criticized the practice of attributing acts in a complaint to collective groups.[78]  This court has previously concluded the practice is "incompatible" with the law's text and purpose to "eliminate complaints that do not clearly show scienter."[79]  Kevin argues the SAC's multiple allegations addressed to "the Defendants" or large subgroups of Defendants are impermissible group pleadings.[80]  Plaintiffs, meanwhile, assert in a footnote that group pleading is permissible when "a group worked together to defraud others."[81]

The court concludes these statements, omissions and actions attributed to Defendants collectively and to large subgroups of Defendants are group pleadings that do not plausibly establish individual liability as to Kevin.[82]  The allegations do not include sufficient specific factual circumstances (i.e., the "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof")[83] that would provide Defendants adequate notice and information to effectively respond to each alleged communication.  For instance, the SAC alleges "Defendants and their Agents communicated with Plaintiffs, speaking directly with investors repeating the misrepresentations contained in the

---

[77] *See TDC Lending LLC v. Priv. Cap. Grp., Inc.*, 340 F. Supp. 3d 1218, 1226 (D. Utah 2018).

[78] *See Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.).

[79] *TDC Lending*, 340 F. Supp. at 1226–27.

[80] *K.L. Motion* at 6–8.

[81] *K.L. Opposition* at 6 n.1. (citing *DiTucci v. Ashby,* No. 2:19-cv-277-TC-PMW, 2020 U.S. Dist. LEXIS 34505, at *4 (D. Utah Feb. 27, 2020)).

[82] *See SAC* ¶¶ 58, 61, 67, 68, 69, 70, 71, 72, 73.

[83] *Koch*, 203 F.3d at 1236.

offering materials."[84]  However, without knowing which individuals actually made the false statements to the investors, it is impossible for the Defendants to address the allegations.  Even if the PSLRA permits group pleading when the group itself was making the statement (e.g., an email from a company account or a representation on a company website), the exception would not apply here.  The alleged false statements here are conclusory statements lacking specificity on time, place or manner of communication.[85]  Accordingly, these group pleading claims do not state a claim against Kevin for violations of the Exchange Act.

2.  Statements Attributed Directly to Kevin Long.

The court next considers several statements attributed directly to Kevin.  The SAC includes a table summarizing the "direct misrepresentations" made by Defendants, the Plaintiff the misrepresentation was made to, the date, the means, and the agent.[86]  Three statements are attributed to Kevin.[87]  The court assesses each one in turn.

The SAC alleges Kevin sent an email to Plaintiff Tucker on August 30, 2023 stating "[l]ease 'approved by NGX.'"[88]  The SAC also alleges, in a phone call with Plaintiff Belchak on October 13, 2023, Kevin "[r]epresent[ed] NGX was a great tenant and was paying rent and occupying property."[89]  Kevin argues the pleadings fail to explain why the statement was false or

---

[84] *SAC* ¶ 61.

[85] *See SAC* ¶ 58 (stating Defendants offered TICs without the time, place and manner); *id.* ¶ 61 (alleging Defendants communicated directly with Plaintiffs without discussing when or where); *id.* ¶ 67 (referencing Defendants' "misrepresentations and omissions" without specific circumstances.); *id.* ¶ 68 (alleging "Defendants represented tenant NGX was 'financially strong'" with no mention of time, place or manner); *id.* ¶ 70 (asserting Defendants "concealed the inflated sales prices" without context of when and from what communications); *id.* ¶ 72 (stating Kevin and other Defendants lied to Plaintiffs about NGX not paying rent without specifying time, place or manner); *id.* ¶ 73 (stating Kevin and other Defendants misrepresented that the South Jordan property had or was about to get a certificate of occupancy without information about when and where such misrepresentations were made).

[86] *Id.* ¶ 81.

[87] *Id.*

[88] *Id*.

[89] *Id*.

that Kevin knew it was false.[90]  However, a complaint's allegations are "taken as a whole" and are sufficient when the complaint "apprises the defendant of its involvement in the alleged fraudulent conduct."[91]  Here, the SAC alleges NGX was never a tenant at the South Jordan Property, the lease was never finalized, and NGX never moved in or paid any rent.[92] Viewing the SAC as a whole, the pleadings sufficiently allege Kevin's statements NGX approved the lease, was paying rent, and occupied the property were false.

Additionally, the SAC adequately pleads facts showing a strong inference of scienter regarding both statements.  Kevin is the founder, president, and a principal of Millcreek and Millrock, and the Senior Vice President of the Utah division of Colliers.[93] "The fact that a defendant was a senior executive in a company cannot give rise to a strong inference of scienter. However, that [a defendant] was the most senior executive of the Company is a fact relevant in our weighing of the totality of the allegations."[94]  In addition to Kevin's position, the nature and "magnitude of the alleged falsity" here strengthen the inference of scienter.[95]  The existence of a signed lease, an occupying tenant, and rental income are all readily discernable facts unlikely to be subject to mistake or confusion.  The importance of NGX further strengthens the inference of scienter.  NGX was allegedly the "anchor tenant" and foundation for the entire property's expected rent payments.[96]  As president of Millcreek, Kevin would have been aware whether the company was or was not bringing in revenue from the tenant.  And the SAC alleges in October

---

[90] *K.L. Motion* at 8.

[91] *Clinton*, 63 F.4th at 1280 (citation modified).

[92] *SAC* ¶ 65 n.19.

[93] *Id.* ¶¶ 37–38.

[94] *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1106 (10th Cir. 2003) (citation modified) (citing *City of Philadelphia v. Fleming Co., Inc.*, 264 F.3d 1245, 1263–64 (10th Cir. 2001)).

[95] *Id.*

[96] *See SAC* ¶ 65.

2023, Kevin received an email explicitly stating NGX was not paying rent, and reporting "[t]here is no chance that rent will magically appear before we make distributions to TIC owners."[97]  The court concludes the facts as pled raise a strong inference of scienter.  Accordingly, the SAC adequately states a claim regarding the two statements made to Tucker and Belchak.

Several other statements attributed to Kevin do not sufficiently plead facts to establish plausible violations of the Exchange Act.  The SAC alleges Kevin was copied on November 1, 2023 email to Plaintiff Janice Young "with known uncorrected representations regarding NGX's tenancy and solvency status."[98]  While this allegation does include its timing, it does not include critical information including who sent the email, what the alleged uncorrected misrepresentations were, and why they were false.  This allegation fails to satisfy the heightened pleading standard and therefore is insufficient to state a claim.

Lastly, Plaintiffs allege Kevin and Defendant Mark Machlis "represented to Tucker and other Plaintiffs that the lease rate at South Jordan was 'market' and fair."[99]  Kevin argues these statements do not satisfy the heightened pleading requirements for fraud because they fail to specify when, where, and how the representations were made.[100]  The court concurs and finds the allegation does not meet the standard to state a claim for fraud.

Because only the two alleged statements Kevin made to Tucker and Belchak (who assigned his claims to Tucker) adequately state a claim for fraud, the court grants Kevin's Motion with regards to the other seventeen Plaintiffs and dismisses their claim against Kevin for

---

[97] *Id.* ¶ 79.

[98] *Id.* ¶ 81.

[99] *Id.* ¶ 78.

[100] *K.L. Reply* at 4–5.

violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  The court denies Kevin's Motion with regards to Tucker.

### B. Control Person Liability

The court next considers whether Plaintiffs state a claim for control person liability under the Exchange Act.  The Exchange Act provides, "Every person who, directly or indirectly, controls any person liable under [the Exchange Act] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."[101]  "[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[102]  Plaintiffs allege Kevin controlled Millcreek, Millrock and Colliers when the entities violated the Section 10(b) of the Exchange Act.[103]  Kevin concedes he was a control person for Millcreek and Millrock, but he challenges whether Plaintiffs sufficiently allege he was a control person for Colliers.[104]  Kevin further argues Plaintiffs fail to sufficiently plead underlying primary violations by all three entities.[105]  The court disagrees and concludes Plaintiffs adequately state a claim for control person liability against Kevin for all three entities.

### 1. Control

The court first considers whether Plaintiffs sufficiently plead facts alleging Kevin controlled Colliers when it committed fraud under the Exchange Act.  The Tenth Circuit applies the SEC's definition of control when determining control person liability.[106]  Under the SEC

---

[101] 15 U.S.C. § 78t(a).

[102] *Maher*, 144 F.3d at 1305 (quotation modified).

[103] *SAC* ¶¶ 105–10.

[104] *K.L. Motion* at 15–17; *Reply* at 8–9.

[105] *K.L. Motion* at 10–17.

[106] *See Maher*, 144 F.3d at 1305 (citing the SEC definition of control).

definition, control entails "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[107]  The element of control "is to be construed liberally.  It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable."[108]  "[C]ontrol person determination is a factual question not ordinarily subject to resolution on a motion to dismiss" unless "a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person."[109]  Notably, the PSLRA's heightened pleading standards do not apply to the question of control.[110]

The SAC alleges Kevin serves as the "Senior Vice President of Colliers' Utah division."[111]  Kevin argues that his "alleged status at the time as a vice president of a division of Colliers (and not the broader corporation), without more, does not constitute 'control.'"[112]  He relies on the Tenth Circuit's decision in *Adams v. Kinder-Morgan, Inc.*[113] but the quotation he cites does not exist in that authority.[114]  In *Kinder-Morgan*, the court found the plaintiff sufficiently pleaded control based solely off the person's position as a vice-president/chief financial officer because it was reasonable to infer the defendant would have "at least indirect

---

[107] 17 C.F.R. § 230.405.

[108] *Richardson v. MacArthur*, 451 F.2d 35, 41–42 (10th Cir. 1971).

[109] *Maher*, 144 F.3d at 1306.

[110] *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1109 (10th Cir. 2003) (explaining the heightened pleading standard under PSLRA applies only "on proof that *the defendant acted with a particular state of mind.  Section 20 of the Exchange Act contains no requirement that plaintiffs must prove a control person's state of mind*" (quotation modified) (emphasis in original)).

[111] *SAC* ¶ 23.

[112] *K.L. Motion* at 16.

[113] 340 F.3d 1083 (10th Cir. 2003).

[114] *See K.L. Motion* at 16 (incorrectly quoting *Kinder-Morgan*, 340 F.3d at 1109).

control of the [company's] financial reporting."[115]  Here, Plaintiffs plead sufficient facts to draw a reasonable inference Kevin exerted control over Colliers.  The SAC alleges Kevin was the Senior Vice President responsible for the region in which the Properties were developed.[116] Kevin provided the "perpetual standing listing agreement" that specified "Colliers owned the listing on Millcreek's deals, received commissions and participated in joint sales training and marketing efforts" for the Properties.[117]  And Kevin recruited and trained Colliers's agents to market and sell the TICs.[118]  Altogether, Plaintiffs plead sufficient facts to draw a reasonable inference at this stage that Kevin controlled Colliers in regards of the sale of TICs for the Properties.

2.  Primary Violations.

The court now turns to the question whether Plaintiffs sufficiently plead facts alleging primary violations by Millrock, Millcreek, and Colliers.  Kevin argues the SAC's only allegations of misrepresentations by the three entities themselves either do not meet the heightened pleading standards under PSLRA, are group pleadings, or do not show scienter. Considering each entity in turn, the court concludes otherwise for Millcreek and Colliers.

i.        Millrock

The court first considers Millrock's alleged underlying violation.  Plaintiffs argue Millrock's underlying primary violation is imputed from Kevin's own fraudulent actions as President of Millrock.[119]  While it is true that a company may be liable for the actions of its

---

[115] *Kinder-Morgan*, 340 F.3d at 1109.

[116] *SAC* ¶ 23.

[117] *Id.* ¶¶ 45–46.

[118] *Id.* ¶ 41.

[119] *K.L. Opposition* at 14.

president acting within the scope of his authority,[120] it is circular logic that control person liability be applied when the primary violation of the controlled company is purely the action done by the control person himself.  In such a case, the control person would not actually be controlling another person or entity but rather controlling himself.  Regardless, Kevin would be directly liable for his alleged violations of the Exchange Act, making imputed control person liability through Millrock extraneous.  Accordingly, the court concludes the SAC does not adequately plead a primary violation for control person liability with regards to Millrock.

ii.    Millcreek

The court next considers Millcreek's alleged primary violations.  Kevin argues that none of the three paragraphs alleging specific misrepresentations by Millcreek itself constitute a primary violation, as they are either opinion statements, statements that are not apparently misleading, or otherwise fail to meet the elevated pleading standards of the PSLRA.[121] Plaintiffs, meanwhile, contend Millcreek committed primary violations through its agents when it "(i) represented NGX was paying rent; (ii) represented the lease rate as 'fair'; and (iii) concealed that NGX's 'rent' payments were actually investor funds."[122]

While the court agrees with Kevin that many of the allegations directly concerning Millcreek are opinions, insufficient group pleadings or otherwise fail to specify the circumstances of the misrepresentations, the court concludes Plaintiffs adequately plead Millcreek committed primary violations of the Exchange Act through statements made by its agents.  "A corporation can act only through agents. . . .  It is only in this way that it can

---

[120] *See Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 741 (10th Cir. 1974) (explaining a "principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." (citation modified)).

[121] *K.L. Motion* at 11–13 (citing *SAC* ¶ 73).

[122] *K.L. Opposition* at 15 (citing *SAC* ¶¶ 69–70, 72, 74, 78–81).

function."[123]  "[A] principle is liable for the fraud and misrepresentation of [its] agents while acting within the scope of [their] authority or employment . . . ."[124]  Here, Plaintiffs sufficiently allege multiple fraudulent misrepresentations presented by agents of Millcreek and Colliers within the scope of selling TICs for the Properties.  For instance, in February 2023, Millcreek and Colliers employee Brian Martinez told Plaintiff Monika Hansen that the South Jordan Property had "3 medical tenants there," and that NGX was "paying rent."[125]  Martinez made comparable representations to Plaintiff Reid in March 2023.[126]  In June 2023, Millcreek and Colliers sales representative Michael Cruz told Plaintiffs Elizabeth Carlston and Benjamin Allen by phone that "NGX just signed the lease, imminent move-in."[127]  That same month, Cruz confirmed to Plaintiff Tomac by email and text that there was "no vacancy factor" and that NGX was occupying the property and paying rent.[128]  And in October 2023, Millcreek and Colliers real estate agent Scott Rutherford told Plaintiff James Herbert by phone "NGX paying rent, operating in the space, solid, stable cash-flow."[129]  These alleged statements were all false because NGX was never a tenant at the South Jordan property, nor did it ever pay rent.[130]

Additionally, Plaintiffs adequately plead facts providing a strong inference of scienter with regards to the primary violation for Millcreek.  "The scienter of the senior controlling

[123] *Kunz v. Lowden*, 124 F.2d 911, 914 (10th Cir. 1942).

[124] *Kerbs*, 502 F.2d at 741.

[125] *SAC* ¶¶ 74, 81.

[126] *Id.* ¶ 81.

[127] *Id.*

[128] *Id.*

[129] *Id.*

[130] *Id.* ¶ 65 n.19.  Kevin argues that these statements are not false in light of the executed lease signed by NGX. *Reply* at 9–10.  However, at the motion to dismiss stage, the court only considers facts as pleaded in the complaint. *See Beedle*, 422 F.3d at 1063.  Because the SAC adequately pleads that there was no signed lease, the court may not consider Kevin's additional evidence.

officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b–5 when those senior officials were acting within the scope of their apparent authority."[131]  The court previously determined Plaintiffs adequately pleaded a strong inference of scienter with regards to the Exchange Act violations claim against Kevin.[132]  Kevin's alleged fraudulent statements fall within the scope of his authority at Millcreek, as they concern revenues from a Millcreek tenant.  Therefore, Plaintiffs adequately pleads a primary violation against Millcreek.

      iii.     Colliers

Lastly, the court considers Colliers's alleged primary violations.  Kevin argues Plaintiffs do not plead facts showing any specific misrepresentations by Colliers.[133]  However, Plaintiffs sufficiently allege misrepresentations by Colliers through its agents.  Plaintiffs allege Martinez, Cruz and Rutherford were employees or sales representatives of both Millcreek and Colliers.[134]  Therefore, the same misrepresentations by these agents discussed above establish a primary violation for Colliers in addition to Millcreek.[135]  Additionally, Kevin's scienter may be imputed to Colliers just as for Millcreek considering his senior leadership role in the company's Utah division.[136]  Accordingly, Plaintiffs adequately state a claim for control person liability against Kevin for violations by both Millcreek and Colliers.  Kevin's Motion to Dismiss is denied with respect to control person liability for Millcreek and Colliers.

---

[131] *Kinder Morgan*, 340 F.3d at 1106.

[132] *See supra* at 13.

[133] *K.L. Motion* at 16.

[134] *SAC* ¶¶ 28, 30, 40, 41.

[135] *See supra* at 18–19.

[136] *See SAC* ¶ 37.

### C. Other Claims

Because the court denies in part Kevin's Motion to Dismiss for the two federal claims, the court retains supplemental jurisdiction over the remaining state law claims against Kevin under 28 U.S.C. § 1367(a).[137]  The court therefore denies Kevin's Motion to Dismiss the additional state law claims.

## II.      Adam Long's Motion to Dismiss

The court now turns to Adam's Motion to Dismiss.  Plaintiffs proceed on two claims against Adam: (1) control person liability and (2) Utah civil conspiracy.[138]  The court therefore grants Adam's Motion to Dismiss with respect to all other claims pled against him.[139]  Adam argues the SAC fails to sufficiently plead the control and primary violation elements to establish control person liability, and that the civil conspiracy claim fails because Plaintiffs do not adequately allege their underlying fraud claims.  For the reasons discussed below, the court concludes otherwise.

### A. Control Person Liability

The court first considers whether the SAC adequately pleads control person liability against Adam.  Adam argues Plaintiffs fail to plead facts showing his control of either Millrock, Millcreek, or Colliers, nor did they sufficiently allege primary violations by the three parties.[140]  The court already concluded the allegations sufficiently plead primary violations as to the three parties.[141]  The only remaining question is whether Adam had control.  The court finds Plaintiffs

---

[137] 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

[138] *J.A.L. Opposition* at 2.

[139] *SAC* ¶¶ 94–104, 111–40.

[140] *J.A.L Motion* at 10–11.

[141] *See supra* at 17–20.

state a claim for control person liability with regards to Millcreek and Colliers, but not to Millrock.

The court considers Adam's exerted control over each of the three companies. The only allegation as to Adam's control over Millrock is being a company shareholder.[142] The court concludes this is insufficient to show Adam was in control of Millrock. While the Tenth Circuit has not spoken directly to the issue of whether status as a shareholder alone is sufficient to establish control, the Circuit has held that being "a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act."[143] A shareholder's responsibilities at a company are even more removed from the day-to-day operations than a member of the board.[144] It reasonably follows that shareholder status alone does not on its own support an allegation that the person is a control person. Accordingly, Plaintiffs fail to state a claim of control person liability with regards to Adam's control of Millrock.

The court next turns to Adam's control over Millcreek and Colliers, which Plaintiffs do sufficiently allege. With regards to Millcreek, Adam argues the SAC includes "nothing to connect the dots between any specific agent of Millcreek to Adam."[145] And for Colliers, Adam contends Plaintiffs only generally allege that Adam was "an employee or agent of Colliers" and "employed in a management role," neither of which is sufficient to establish control.[146] The

---

[142] *SAC* ¶ 39; *see also J.A.L. Motion* at 10; *J.A.L. Opposition* at 15.

[143] *Kinder-Morgan*, 340 F.3d at 1108.

[144] *See* 4 Robert Todd Lang, Robert Messineo, David Zeltner & Anne-Marie Wood, *Securities Law Techniques* § 54.03 (2026) (*"State corporation laws uniformly commit the direction of a corporation's business to its board of directors. Shareholders may not take the responsibility for managing a corporation from its board of directors . . . .").

[145] *J.A.L. Motion* at 13.

[146] *Id.* at 14.

court disagrees with both assertions.  Plaintiffs plead Adam was the Chief Operating Officer of Millcreek and that he occupied a management role at Colliers.[147]  But the SAC includes allegations beyond his positions at each company, including that Adam "conducted a recruitment and training program specifically for the purpose of enabling the Agents [of Millcreek and Colliers] to market the TIC transactions."[148]  And Plaintiffs plead Kevin previously testified that Adam "was instrumental in running" the real estate companies.[149]  Taken together, Plaintiffs sufficiently allege Adam possessed the power to direct—or at least influence—the management and policies of Millcreek and Colliers with regards to the marketing and sale of the TICs.[150]

Accordingly, Plaintiffs state a claim for control person liability against Adam for the same violations by Millcreek and Colliers, and the court denies his Motion with regards to those claims.

### B.  Civil Conspiracy

The court now turns to the claim against Adam for civil conspiracy under Utah state law. To establish liability, Plaintiffs must show "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[151]  "The claim of civil conspiracy requires, as one of its essential elements, an underlying tort."[152]  When "the underlying tort is fraud, the fraud must be pleaded with particularity, even though in this context

---

[147] *SAC* ¶¶ 27, 39.

[148] *Id.* ¶ 41; *see also id.* ¶ 47.

[149] *SAC* ¶ 46 n. 14.

[150] *See Richardson*, 451 F.2d 35 at 41–42 (control requires "only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable.").

[151] *Peterson v. Delta Air Lines, Inc.*, 2002 UT App 56, ¶ 12, 42 P.3d 1253 (quoting *Alta Indus. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993)).

[152] *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971 (citation modified).

the fraud is simply an element of the claim rather than the claim itself."[153]  Adam argues

Plaintiffs fail to sufficiently allege an underlying tort.[154]

Plaintiffs allege Defendants committed "numerous overt unlawful acts, including the

various misrepresentations that serve as the basis of Defendants' fraud liability and violations of

federal securities law."[155]  Adam argues Plaintiffs fail to establish an underlying unlawful act

because they do not plead their fraud claims with particularity.[156]  However, the court already

determined Plaintiffs do indeed adequately allege tortious conduct against Kevin, Millcreek, and

Colliers.[157]  Those claims may serve as the underlying tort for conspiracy, even though Plaintiffs

do not allege Adam himself engaged in fraud.[158]  Because Plaintiffs state a claim for civil

conspiracy, the court denies Adam's Motion to Dismiss the claim.

### CONCLUSION

For the reasons stated above, the court finds Plaintiffs have plausibly stated claims for

relief for Exchange Act violations, control person liability, and civil conspiracy.  Accordingly,

Kevin Long's Motion to Dismiss[159] is GRANTED IN PART and DENIED IN PART.  Plaintiffs'

cause of action against Kevin for violations of § 10(b) of the Exchange Act and SEC Rule 10b-5

is dismissed without prejudice for all Plaintiffs other than James Tucker.  All other claims

---

[153] *Coroles v. Sabey*, 2003 UT App 339, ¶ 36, 79 P.3d 974.

[154] *See J.A.L. Motion* at 20; *J.A.L. Reply* at 9–10.  Because Adam does not otherwise challenge the sufficiency of this claim, the court declines to consider the other elements.

[155] *SAC* ¶ 146.

[156] *J.A.L. Motion* at 20.

[157] *See supra* at 17–20.

[158] *See Lawrence v. Intermountain, Inc.*, 2010 UT App 313, 243 P.3d 508, 513 (explaining "conspiracy to defraud requires proof of the underlying fraud, it is not necessary that the underlying fraud have been actually committed by each member of the conspiracy").

[159] Dkt. 174.

against Kevin survive.[160]  Adam Long's Motion to Dismiss[161] is GRANTED IN PART and DENIED IN PART.  Plaintiffs' claims for civil conspiracy and control person liability as to Millcreek and Colliers survive dismissal, while all other causes of action against are dismissed without prejudice.[162]

SO ORDERED this 29th day of June, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[160] *SAC* ¶¶ 105–47.

[161] Dkt. 190.

[162] *SAC* ¶¶ 94–104, 111–40.